UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE FIREMAN'S FUND INSURANCE          )
COMPANY as subrogee of JULIA PAVIA    )
77 San Marin Drive Novado, California, )
    Plaintiff                     )          CIVIL ACTION
                                  )          NO. 05-cv-10827-DPW
    VS.                           )
                                  )
FALCO CONSTRUCTION CORP.,             )
P & D BUILDERS, INC. and              )
MICHAEL CARRESI d/b/a                 )
CARRESI PLUMBING & HEATING,           )
    Defendants                    )
                                  )
    VS.                           )
                                  )
HEATMASTER, INC.                      )
    Third-Party Defendant         )

**DEFENDANT, FALCO CONSTRUCTION CORP.'S
INITIAL DISCLOSURE STATEMENT PURSUANT TO FED.R.CIV.P. 26(a)(1)**

      Now comes the Defendant, Falco Construction Corp. ("Falco"), pursuant to

Fed.R.Civ.P. 26(a)(1) and makes the following initial disclosures:

**A.  INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION
    THAT FALCO MAY USE TO SUPPORT ITS CLAIMS OR DEFENSES**

      1.  The following individuals may have knowledge of discoverable information:

      Joseph Falco, Sr.
      5 Coolidge Circle
      South Easton,

      Joseph Falco, Jr.
      155 Lincoln Street
      Abington, MA

      Anthony Falco
      155 Lincoln Street
      Abington, MA

Richard J. Splaine, ME, CFI
Splaine Investigations, Inc.
14 North Hill Drive
N. Falmouth, MA

Brian Gore, PE
Brian Gore Associates
12 Holbrook Lane
Paxton, MA

Steven J. Tower
Investigative Resources
1281 Washington Street
Weymouth, MA

Newton Fire Department, Responding Personnel
31 Willow Street
Newton Centre, MA

Deputy Chief, Israel Jiminez
Newton Fire Department
31 Willow Street
Newton Centre, MA

Julia Pavia
104 Hammondswood Road
Newton, MA

Phillip Rothschild
P&D Builders
6 Water Street
East Weymouth, MA

Person Most Knowledgeable
P&D Builders
6 Water Street
East Weymouth, MA

Chares Gubbins, Jr.
P&D Builders
6 Water Street
East Weymouth, MA

Michael Carresi
Michael Carresi Plumbing and Heating
513 Bird Road
Mansfield, MA

Person Most Knowledgeable
Heatmaster, Inc.
3625 Benson Road
Angier, NC

Person Most Knowledgeable
Fireman's Fund Insurance Co.
777 San Marin Drive
Novado, CA

Michael W. Conte
61 Pond Street
Halifax, MA
Person Most Knowledgeable
City of Newton Building Department
City Hall
Newton, Massachusetts

Falco reserves the right so supplement this list as discovery is ongoing.

**B. DOCUMENTS THAT FALCO MAY USE TO SUPPORT ITS CLAIMS OR DEFENSES**

1. Newton Fire Department Report (produced);

2. City of Newton Building Department file and Inspectional Services Department file for 105 Hammondswood Road (including building permits and inspections),

3. Splaine Investigations, Inc. Report and Photographs (attached);

4. Brian Gore and Associates Report (attached).

Falco reserves the right so supplement this list as discovery is ongoing.

**C. COMPUTATION OF DAMAGES**

None at this time.

**D.  INSURANCE AGREEMENTS**

First Financial Insurance Company Commercial General Liability policy number

491F000644, effective September 23, 2003 – September 23, 2004 (attached).


Respectfully submitted,
The Defendant,
Falco Construction Corp.,
By its Attorneys,


/s/ John F. Toomey
John F. Toomey, BBO # 500160
David J. Crowley, BBO # 630169
TOOMEY & YUDYSKY LLP
99 Summer Street
Boston, MA  02110
(617) 946-0930

Dated:  September 6, 2005

<u>**CERTIFICATE OF SERVICE**</u>

I, John F. Toomey, counsel for the Defendant, Falco Construction Corp., do hereby certify that I served a copy of the foregoing **DEFENDANT, FALCO CONSTRUCTION CORP.'S INITIAL DISCLOSURE STATEMENT**, on all parties to this action by mailing a copy of same, postage prepaid, to them or their counsel of record:

Stuart G. Blackburn, Esquire
Erik Loftus, Esquire
Law Offices of Stuart G. Blackburn
Two Concorde Way
P.O. Box 608
Windsor Locks, CT 06096

William J. Flanagan, Esquire
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210

Robert P. Turner, Esquire
Law Offices of Bruce R. Fox
27B Midstate Office Park
Auburn, MA 01501

Date: <u>September 6, 2005</u>                Attorney: <u>/s/ John F. Toomey</u>

DC  63539.1  9/6/05

5

# Splaine Investigations Inc.

14 North Hill Drive
N. Falmouth, Massachusetts 02556

Office: 508-563-5845
FAX: 508-563-3875
E-mail:rdsia@aol.com

March 8, 2004

James Miele
Guilford Specialty Group
100 Pearl Street
Hartford, Connecticut 06103

      Re:  Fire Incident – 104 Hammondswood Road, Newton, Massachusetts
          Insured:  Falco Construction
          Guilford Insurance Group  Claim # 129131
          Date of Loss:  January 26, 2004

Dear Mr. Miele:

## Review of Facts

The fire incident building is a 2-story, wood frame, brick exterior, single family dwelling owned and occupied by Julie Pavla and her daughter.  The construction date has not been verified but it is believed to have been approximately three years ago that the Pavla's had a 2-story addition constructed off the back of the dwelling.   At the time the construction work was being completed the house was also occupied by Mr. Pavla.

Information received indicates that our insured, Falco Construction, was hired by the general contractor to build a fireplace on the second floor to accommodate a "zero-tolerance" gas operated fireplace insert.  The gas operated ceramic log system that was installed in the fireplace was not a "zero-tolerance insert.  Our insured did not install this portion of the system.

The Newton Fire Department received a 9-1-1 call at 3:24 AM on January 26, 2004 reporting smoke in the building.  First arriving fire companies reported a smoldering fire located in the ceiling space of the left front corner area of the new addition.  The fire was extinguished without incident and the cause listed as unintentional.

## Investigation

At the time of our investigation the fire scene had been cleaned and the fireplace accessories and components of the gas log were moved, packaged and labeled for removal by the homeowner's insurance fire investigator.

Fire Incident – Paleo Construction
DOL: January 26, 2004
Page 2

Based on the burn patterns and investigating the fire scene from the least affected area to the area that received the greatest fire damage, the area of fire origin was determined to be the ceiling space between the first floor and the second floor of the new addition located under the second floor fireplace.

The first floor section of the addition contains one room with a partially enclosed staircase to the second floor of the addition. The room is sunken from the original first floor of the dwelling and the egress is at the end of the front entry hall. The room was Mr. Palva's study and he had specified that it be constructed totally soundproof. The contractor used an expansion insulating/soundproofing foam that was sprayed between the ceiling joists and the second floor sub-floor. The second floor section of the addition contains one room with a fireplace located in the left front corner. Egress to the room is from Ms. Pavla's bedroom or the staircase from the first floor. This room is Ms. Pavla's study.

Information supplied by the home owner's insurance investigator reveals that at an unspecified time early Sunday, January 25, 2004 a broken water pipe within the Pavla's residence had caused the loss of the heating and telephone system. Ms. Pavla turned on the gas-fired log in the fireplace to provide a source of heat for the dwelling. The fireplace ran on high for an unspecified length of time until the heating system was restored. It has been reported that Ms. Pavla shut down the fireplace at approximately noon on Sunday, January 25, 2004. Ms. Pavla claims she smelled an odor all day that she calls "fireplace smell". At approximately 2:30 AM, Monday, January 26, 2004, Ms. Pavla woke up and the "fireplace smell" was stronger. She proceeds to search the house for the source of the odor including the basement. Returning to the first floor and entering the new addition from the hall she hears a cracking sound coming from the ceiling area under the location of the fireplace. Ms. Pavla woke her daughter and they left to go to a neighbor's house across the street to call 9-1-1, as they were leaving they heard the smoke detector sounding.

Examination of the burn patterns indicated a slow smoldering fire that was contained to two bays in the left front corner of the first floor ceiling. The end section of the center 2' X 12' joist located in this area was totally consumed. There were no available remains of the insulation that had been installed in the referenced bays available for examination. There was charred foam insulation still in place at the outer edge of the fire area. The plywood sub-floor under the fireplace located on the second floor was burned away and the remaining burn patterns indicated fire impingement from the underside. The underside of the cement non-combustible fireplace base was damage free except for a clean hole that had been made during fire suppression or the fire investigation.

Examination of the second floor and the fireplace revealed no fire damage. The fireplace accessories (grates, andirons, piece of non-combustible board, ceramic logs, etc.) were moved from their pre-fire location and tagged as evidence by the home owner's insurance investigators. The gas log was still in position and connected to the gas feed line.

Fire Incident – Falco Construction
DOL:  January 26, 2004
Page 3

## Opinion

It is our opinion, to a reasonable degree of professional certainty, that the area of fire origin was in the ceiling void between the first and second floor of the addition and at the location under the fireplace.  The ignition source was from radiated heat through the fireplace base and sub-floor causing a pyrolysis of the foam soundproofing.  The circumstances causing this fire was the inappropriate use of the fireplace to heat the dwelling, the installation of a non zero-tolerance gas operated ceramic log system and the installation of the soundproofing material did not allow for air circulation.  It is our opinion that Falco Construction applied for and was granted proper permits, installed the fireplace properly as requested and designed.  The fireplace installation was subsequently  inspected and approved by the City of Newton.

## Evidence

The home owner's insurance investigators, EFI Investigations, removed the following evidence from the fire scene:

> Gas burner with accessories
> Fireplace accessories
> Chips of burned wood removed from under the fireplace
> Section of non-combustible material installed under the fireplace (requested by Splaine Inv.)
> Plastic bag of foam soundproofing insulation sample (requested by Splaine Inv.)

Unless otherwise directed we will continue to monitor any additional information that may become available regarding this fire incident.  If you have any questions regarding this matter, please do not hesitate to call.

Very truly yours,

Richard J. Splaine, MS, CFI

cc:  Steve Tower, Investigative Resources, Inc. (without attachments)

Enclosure
    Fire Scene Sketch (not to scale)
    Newton Fire Incident Report
    Photos

Sketch – Not to Scale
104 Hammondswood Road
Newton, Massachusetts
DOL:  January 26, 2004



 NEWTON FIRE DEPARTMENT
*NEWTON, MA*

# NFIRS Incident #00400620

# Fire Form

Property Information

| B: Property Details |
| --- |
| **B1: Estimated Number of living units in building of origin** |
| 1 |
| **B2: Number of buildings involved** |
| 1 |
| **B3: Acres burned** |
| None |

| C: On-Site Materials or Products |
| --- |
| None |

| D: Ignition |
| --- |
| **D1: Area of fire origin** |
| 70  STRUCTURAL AREA, OTHER |
| **D2: Heat Source** |
| 43  HOT EMBER OR ASH |
| **D3: Item first ignited** |
| UU  UNDETERMINED |
| **D4: Type of material first ignited** |
| 63  SAWN WOOD, INCLUDING ALL FINISHED LUMBER |

| E1: Cause of Ignition |
| --- |
| 2  UNINTENTIONAL |
| **E2: Factors Contributing To Ignition** |
| None |

| E3: Human Factors Contributing to Ignition |
| --- |
| None |

| F1: Equipment Involved in Ignition |
| --- |
| None |

| G: Fire Suppression Factors |
| --- |
| None |

| H1: Mobile Property Involved |
| --- |
| None |

NEWTON FIRE DEPARTMENT
*NEWTON, MA*

# NFIRS Incident #00400620

| FDID | State | Incident Date | Status | Incident Number | Exposure | Report Status |
|---|---|---|---|---|---|---|
| 17207 | MA | 01/26/2004 | | 400620 | 0 | APPROVED |

## Address

| Location Type | STREET ADDRESS | | Census Tract | 3737 |
|---|---|---|---|---|

| St. Prefix | St. Number | St. Name | St. Type | St. Suffix |
|---|---|---|---|---|
| | 104 | HAMMONDSWOOD RD | STREET | |

| Apt. Number | Cross Street or Directions |
|---|---|
| | |

| | City | State | Zip |
|---|---|---|---|
| | NEWTON | MASSACHUSETTS | 02459 |

## Incident Details

| C: Incident Type | E1: Dates & Times | | E2: Shifts & Alarms | | |
|---|---|---|---|---|---|
| 111  BUILDING FIRE | Date/Time | | Shift/Platoon | Alarms | District |
| D: Aid Given/Received | (mm/dd/yyyy hh:mm:ss) | | 1 | 1 | 3 |
| | Alarm | 01/26/2004 03:24:00 | Special Study ID# | | Special Study Value |
| Mutual Aid (FDID) Agency - State | Arrival | 01/26/2004 03:31:00 | | | |
| ( ) - | Controlled | | Incident Under Investigation | N | |
| | Last Unit Cleared | 01/26/2004 08:00:00 | | | |

| F: Actions Taken | G1: Resources | | | G2: Estimated Dollar Losses & Values | |
|---|---|---|---|---|---|
| Primary Action | | Apparatus | Personnel | LOSSES: | |
| 11  EXTINGUISH | Suppression | 10 | 24 | Property $ | 50000 |
| Additional Action -1 | EMS | 0 | 0 | Contents $ | 50000 |
| 51  VENTILATE | Other | 0 | 0 | PRE-INCIDENT VALUE: | |
| | | | | Property $ | |
| | | | | Contents $ | |

| H1: Casualties | | | H3: Hazardous Materials Release |
|---|---|---|---|
| | Deaths | Injuries | |
| Fire Service | 0 | 0 | |
| Civilian | 0 | 0 | |

| H2: Detector | |
|---|---|
| | |
| **I: Mixed Use Property** | |
| | |
| **J: Property Use** | |
| 419  1 OR 2 FAMILY DWELLING | |

**K1: Person/Entity Involved**

| No Persons Involved/ Involved Person data not entered |
|---|

**K2: Owner**

| Business Name | | | Phone Number | |
|---|---|---|---|---|
| **Prefix** | **First Name** | **MI** | **Last Name** | **Suffix** |
| | JULIE | | PAVLA | |
| **St. Prefix** | **St. Num** | **St.Name** | **St. Type** | **St. Suffix** |
| | 104 | HAMMONDSWOOD RD | ST | |
| | **Apt. Number** | **P.O.Box** | | |
| | | | | |
| | **City** | | **State** | **Zip** |
| | NEWTON | | MASSACHUSETTS | 02459 |

**L: Remarks**

| fire caused by conducted heat from gas log through masonry hearth into wood joist. |
|---|

**M: Authorization**

| Approved By | Approver Name | Position | Assignment | Date |
|---|---|---|---|---|
| 11026 | CARVELLI W | | | 01/29/2004 08:01:41 |
| **Officer in-Charge** | **Officer Name** | **Position** | **Assignment** | **Date** |
| 11026 | CARVELLI W | A/C | | 01/26/2004 11:01:12 |
| **Member ID** | **Member Name** | **Position** | **Assignment** | **Date** |
| 14153 | JIMENEZ I | CAPT | | 01/26/2004 06:19:09 |

# PHOTO DESCRIPTION

1–4  EXTERIOR VIEW

5-7  OPEN CEILING AREA IN FIRST FLOOR HALL

8-16  AREA OF FIRE ORIGIN – LEFT FRONT CORNER 1ST FLOOR CEILING ADDITION

17-19 FIREPLACE 2ND FLOOR LEFT FRONT CORNER ADDITION

20    CERAMIC LOGS FIREPLACE

21-24 GAS FED FLAME HEATER UNIT IN FIREPLACE –TAKEN BY EFI

25-28 TAGGED EVIDENCE IN FRONT OF FIREPLACE – TAKEN BY EFI

29    GAS FEED PIPE IN FIREPLACE

30    GAS FEED LINE IN ATTIC

31    FIREPLACE CHIMNEY IN ATTIC

32-34 EXEMPLAR FIREPLACE SYSTEM IN USE FIRST FLOOR PIANO ROOM













































































































# BRIAN GORE
## & Associates

BUILDING, FIRE & LIFE SAFETY
CODE CONSULTING

Mr. Steven J. Tower
Investigative Resources Inc.
1281 Washington Street
Weymouth, MA 02189-2316

MAR 1 1 2005

March 9, 2005

**First Financial Insurance File Number: 129131**
**Investigative Resources File Number:  V02015**
**Insured:**                          **Falco Construction**
**Property Location:**                **104 Hammondswood Road, Newton, Ma**

Dear Mr. Tower;

I have reviewed the information provided at our meeting of February 25th, 2005 which include;

- A cause and origin report prepared by Bures' Consultants, dated March 2004, (hereafter the Bures' Report)
- City of Newton Building Department records
- Witness interviews and;
- Manufacturer's instructions for the installation of the gas burning log used at the premises,

A fire at the above referenced property on January 26th 2004, approximately three years or so after the construction of an addition (including the construction of a fireplace), was attributed (in the Bures' report) to the use of a gas burning log installed in the fireplace. The Bures' report concludes that the fireplace construction violated the building code and the installation of the gas burning logs, gas piping and venting was in violation of the fuel gas code. The Bures' report cites violations of NFPA 211 and NFFA 54. In point of fact, and to correct the record, the codes in effect in Massachusetts at the time of construction were 780 CMR the Massachusetts State Building Code – 6th Edition and 248 CMR the Massachusetts State Plumbing and Fuel Gas Code. These codes are substantially equivalent to the standards cited in the Bures' report and are also partly incorporated by reference into the relevant Massachusetts Codes.

The Bures' report concludes that the fire was caused by conduction of heat from a gas burning log installed and in use in the fireplace on the second floor of the

addition, through the fireplace hearth causing ignition of the supporting wood joists located directly below the fireplace.

According to building department records obtained by Investigative Resources Inc., the building permit for the project was issued by the City of Newton on 9-27-00 and following completion of construction, a Certificate of Use and Occupancy was issued on August 24th 2001.

The General Contractor identified on the building permit application is P.D. Builders Inc., 6 Water Street, E. Weymouth, Ma. The licensed construction supervisor responsible for supervision of construction of the subject project as identified on the building permit application is Philip M. Rothschild of 6 Water Street, E. Weymouth, Ma. Mr. Rothschild's Massachusetts Construction Supervisor License Number is 024260. Building permit application documents show that P.D. Construction Inc. is also registered as a Home Improvement Contractor as required by MGL c 142A.

P.D. Construction subcontracted the construction of the masonry fireplace to Falco Construction.

This remainder of this letter to comments on the code violations identified in the Bures' report and provides references to sections of the Massachusetts State Building Code and the Massachusetts State Fuel Gas Code which serve to identify which party or parties are responsible for code compliance. My comments and observations are based wholly on a review of the documentation provided and are as follows;

After reviewing the cause and origin report by Bures' Consultants Inc., it appears that there is no question that the fireplace and hearth extension did not meet the minimum construction requirements for a conventional fireplace and chimney as provided in the Massachusetts State Building Code (780 CMR) section 3610.

In order to examine the code violations cited in the Bures' report and to determine the responsible parties for the construction of the fireplace and the installation and venting of the gas burning log it is necessary to explore the following questions;

1. Who is the responsible party in terms of the State Building Code for the construction of the fireplace and chimney?
2. Who is the responsible party in terms of the State Fuel Gas Code for the installation and venting of the gas burning logs?
3. What was the mason contractor (Falco) instructed to construct?

4.    Could the fireplace construction have been used as constructed and if so;

5.    Was the fireplace, as constructed, used in an improper manner at the time of the fire?

Construction documents obtained to date provide much information on individuals responsible for construction oversight but little in terms of actual construction details. Absent more detailed construction documentation and/or contracts between the general contractor and sub contractors it may not be possible to conclusively answer question 3 above. However, questions 1, 2, 4 and 5 can to be answered by examination of the applicable administrative and technical provisions of the Massachusetts State Building Code and the Massachusetts State Fuel Gas Code; the construction documentation for the project obtained to date and; the witness interview statements provided by Investigative Resources, Inc. (IRI).

**Responsibility for the Construction of the Fireplace.**

The Massachusetts State Building Code (*780 CMR*) 6th edition was the governing code for the construction of the subject addition and the fireplace and chimney construction at the project.

*780 CMR* section *110.1* requires that a building permit be obtained prior to commencement of work regulated by the Massachusetts State Building Code. 780 CMR sections 110.7 and 110.8 require that the applicant file plans which depict the extent and description of work for which a building permit is sought. Plans for the construction of this project were filed by P. D. construction and were, at best, rudimentary and can more accurately be described as sketches. There are three sketches in the building department file comprising a cross section; elevation and plan. Neither the permit application nor the sketches show that a fireplace was planned to be constructed as part of the construction of the addition. There are no amendments to the building permit application which depict, or otherwise alert the building department that a fireplace was intended to be constructed as part of the addition. To date no field change orders or specific directions have been obtained. A narrative description of the proposed work identified on the building permit application states that the extent of the work is to;

*"Build an addition on top of existing porch 23' x 11', reuse two windows that will be taken out – remodel three baths on second floor".*

As the construction of a fireplace and chimney are not specifically shown on either the plans or the description of the work, the fireplace and chimney are beyond the scope of work authorized by the original building permit. In accordance with *780 CMR* section 110.13, in order to amend the scope of work for which the original

3

building permit was issued, the building permit was required to have been amended and approval to construct the fireplace was required to have been obtained from the building department prior to its construction. Mr. Rothschild, as the licensed construction supervisor, is responsible for amending the application and securing permission from the building department prior to commencement of construction of the fireplace and chimney. No such amendments exist in the building department records obtained to date.

Amending the building permit application is a significant code requirement and especially so in this case. Amending the permit would have necessitated the submission of revised plans or sketches to depict the requested changes to the scope of the project. Consequently this would have afforded the building department the opportunity to review and approve or disapprove the proposed fireplace construction prior to its actual construction. Failure to amend the building permit application and obtaining permission prior to making changes in the field is a violation of *780 CMR* section 110.13.

780 CMR 108.3.5 identifies who is permitted to supervise construction activities regulated by the code. 780 CMR 108.3.5 requires that individuals who supervise persons engage in construction possess a construction supervisor license issued by the Commonwealth of Massachusetts. Furthermore, 780 CMR R5 establishes the rules and regulations for licensed construction supervisors. 780 CMR R 5.2.12 is very specific regarding the duties and responsibilities of a licensed construction supervisor in approving the construction of fireplaces and chimneys and states;

> *"780 CMR R 5.2.12 On Site Presence of Supervisor: A licensed individual or licensed designee shall be present on the site at some point to approve construction reconstruction, alterations, removal or demolition involving the following work:..................*
> 6. *Chimneys*
> a. *Excavation*
> b. *At the top of the smoke chamber and support of the flue liner.*
> c. *When the erection of the chimney is completed."*

Notwithstanding the physical construction of the fireplace and chimney, the responsibility for approving construction of the fireplace and chimney (on behalf of the builder) clearly rests with the licensed construction supervisor as provided in *780 CMR 108.3.5* and *780 CMR R5.2.12*. Mr. Rothschild, as the licensed construction supervisor on this project, as identified on the permit application, is responsible for ensuring building code compliance including the fireplace. Absent any site

corrections ordered by the licensee, it must be concluded therefore that the licensee discharged this responsibility and approved the fireplace as constructed.

Although witness statements appear to vary, the IRI interview with Mrs. Pavia on June 2, 2004 suggests that a layer of "duraboard" was placed on the floor by the general contractor to indicate the area and location of the fireplace and hearth. These actions serve to support a conclusion that the licensee was preparing for (and had approved) the construction of a fireplace which was decorative in nature and was being constructed to house a factory built fireplace as these types of fireplaces often benefit from reduced distances to combustible materials and reduced hearth extension protections as provided by *780 CMR* section 3610.5. It would therefore have been possible to utilize the fireplace as constructed in conjunction with an appropriate factory built fireplace.

### Responsibility for the installation and venting of the gas burning log.

The Massachusetts State Fuel Gas Code (248 CMR) is the governing code for the installation, gas supply and venting of the gas burning logs.

Review of the building department files as obtained by IRI shows that the extent of the gas fitting permit application was to replace a gas heater in the basement. The applicant was Michael Carresi Plumbing, 513 Bird Road, Mansfield, Ma (license number 11157).

248 CMR 5 section 2.1 prohibits the installation of gas piping systems until a permit has been issued by the Inspector of Gas Fitting. The code requires that the work be performed by a licensed gas fitter. In accordance with 248 CMR 2.1 the permit application is required to contain a statement of the work performed. The installation of gas burning logs is regulated by 248 CMR 6.7.2, however the gas fitting permit application obtained by IRI does not address the installation of a gas burning log nor the associated venting and gas piping. In fact the gas permit application simply indicates that the permit application is for replacement of a gas heater in the basement.

It can be concluded therefore, unless other documentation exists, that the gas burning log was installed without benefit of the required permit. This is confirmed by the statement made by the gas fitting inspector during an interview with IRI on May 13th, 2004 where he indicates that he was unaware that a gas burning log was being installed.

Additionally, the Bures' report identified numerous violations of the Fuel Gas Code Relative to the installation and venting of the gas burning logs all of which are attributable to the licensed gas fitter who installed the equipment.

Examination of the manufacturer's installation documentation for the installation of the gas burning log (provided by IRI) requires that the system be fully vented in a conventional chimney system. This apparatus was vented via a class B vent system, identified as in violation of the Fuel Gas Code by the Bures' report.

**Could the fireplace have been used as constructed?**

In accordance with the provisions of 780 CMR 3610.5, the fireplace, as constructed, could have been acceptable as a surrounding enclosure for a factory built fireplace and as such would serve as a decorative, non-functional (in terms of conventional solid fuel burning) fireplace. The factory built fireplace would then have been vented in accordance with manufacturers listing requirements which could include a "matched" factory built chimney, thereby negating the need for both the conventional fireplace and the conventional chimney. The clearance of the factory built fireplace from combustible materials depends upon the manufacturer's tested and listed values. It is possible to obtain so called "zero clearance" units, meaning that the fireplace may be placed directly adjacent to combustible. In point of fact a zero clearance factory built fireplace can be surrounded by and in direct contact with combustible framing. In other words it could be surrounded by wood. Such a factory built fireplace could also obviously therefore be placed in contact with masonry.

In order to have been approved for use as a solid fuel burning fireplace or to house a gas burning log however, the fireplace hearth and firebox would have required to been constructed as a conventional fireplace in accordance with 780 CMR 3610.4 and the appliance would be required to be vented in accordance with the State Fuel Gas Code or through a conventional masonry fireplace depending on the manufacturers instructions. The fireplace as constructed does not meet the requirements of 780 CMR for conventional masonry fireplaces and chimneys.

Construction of such a conventional fireplace would have required major structural changes to the existing floor framing on both the first and second floors and to the roof structure. The second floor framing would have required to have been substantially modified and a floor opening constructed to accept the construction of a concrete and masonry hearth and hearth extension. Masonry support walls would also have had to be constructed from the first floor to the second floor to support the fireplace, hearth and chimney and a foundation would have needed to be constructed below the first floor to support the entire assembly. Fireplace and chimney assembly. Finally a roof opening would have had to be cut in the roof structure to allow the chimney to pass through the roof, and the roof would have to be reconstructed and appropriately flashed in order to prevent ingress of rain water. In view of the fact that the licensee was required to approve the fireplace construction, to suggest that the fireplace, as constructed, was intended

to be used for anything other than a decorative surround for a factory built fireplace would be to suggest that the licensee was ignorant of the code requirements for conventional fireplace and chimney construction and of the substantial structural modifications which would have been necessary.

In conclusion, the fireplace as constructed could not have been used as a conventional solid fuel burning fireplace, nor could it have been used with a gas burning log system without major structural modifications to the existing construction of the fireplace, chimney and the addition to the home itself. However, the fireplace could have been used to provide a decorative surround for a factory built fireplace provided that adequate venting was constructed in accordance with manufacturer's instructions. The type of venting and any additional floor protection would depend upon the actual factory built fireplace selected.

**Was the fireplace, as constructed, used in an improper manner at the time of the fire?**

A gas burning log requires that the unit be placed in a conventionally constructed fireplace and vented by a conventional chimney or a chimney of a type approved and listed by the appliance manufacturer. As the subject fireplace did not meet the building code requirements for conventional construction (780 CMR 3610) the use of the gas log in this fireplace was inappropriate and a violation of the State Building Code. Additionally the Bures' report identifies that the venting, as constructed, was in violation of the venting requirements of the Fuel Gas code. Therefore the use of a gas burning log system in this fireplace was not permitted and constituted violations of both the building and fuel gas codes.

I trust that the foregoing is sufficient for your needs at this point. Please do not hesitate to contact me should you have any questions. In the interim, I await your further instructions.

Very truly yours,
**BRIAN GORE & ASSOCIATES**

Brian Gore, PE.
Principal

cc James Miele - First Financial Insurance Company

7





POLICY NUMBER: 491F000644

POLICY PERIOD:     09/23/2003                    09/23/2004
                   Effective Date                Expiration Date

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## LISTING OF FORMS AND ENDORSEMENTS

This listing forms a part of the following:

| NUMBER | TITLE |
|--------|-------|
| **INTERLINE** | |
| IFG-I-0001 (11-00) | COVER PAGE |
| IFG-I-0100 (03-03) | COMM DEC |
| IL0003 (04-98) | CALCULATION OF PREMIUM |
| IL0017 (11-98) | COMMON POLICY CONDITIONS |
| **INTERLINE-MA** | |
| BG-I-015 (08-00) | MIN EARNED PREM |
| BG-I-441 (01-03) | SCHEDULE OF TERRORISM PREMIUMS |
| IFG-I-0402 (11-00) | SERVICE OF SUIT |
| IL0021 (04-98) | NUCLEAR ENERGY |
| **GENERAL LIABILITY-MA** | |
| IFG-G-0002-DL (03-03) | GL DECLARATIONS |
| IFG-G-0036 (08-01) | EXCL-FUNGUS, DRY-ROT OR DECAY |
| IFG-G-0060 (01-03) | AMEND-AIRCRAFT, AUTO OR WATEERCR |
| BG-G-005 (02-94) | EXCL-PUNITIVE DAMAGE |
| BG-G-007 (09-99) | EXCL-ASBESTOS, SILICA DUST |
| BG-G-064 (09-99) | CONT LIAB AMENDMENT |
| BG-G-119 (08-02) | DEFINITION-EMPLOYEE |
| BG-G-179 (03-03) | PREMIUM AUDIT CONDITION |
| BG-G-190 (12-95) | EXCL-PD CLAIMS |
| BG-G-345 (03-00) | EXCL CONDO,TRACT & OTHER PROJ |
| BG-G-437 (04-03) | AMEND LIMITS OF INSURANCE |
| BG-G-439 (03-03) | EXCL-MOBILE EQUIPMENT |
| CG0001 (07-98) | GL COV FORM |

IFG-I-0150 0303                    Issue Date: 10/14/2003                    Page 1 of 2

POLICY NUMBER:491F000644

Forms List (Continued)

| NUMBER | TITLE |
|---|---|
| CG0062 (12-02) | EXCL-WAR LIABILITY |
| CG2147 (07-98) | EMPLOYMENT-RELATED PRACTICES |
| CG2149 (09-99) | TOTAL POLLUTION EXCL |
| CG2175 (12-02) | EXCL-CERTIFIED ACTS OF TERRORISM |

## Additional Forms

| NUMBER | TITLE |
|---|---|



IFG Companies

IFG Companies ™

# COMMON POLICY DECLARATIONS

**Policy Number** 491F000644

**Renewal of:** NEW

## FIRST FINANCIAL INSURANCE COMPANY
### Home Office: Springfield, Illinois
Administrative Office: 238 International Road, Burlington, NC 27215   Claims Office:  238 International Road, Burlington, NC 27215

**Item 1.** Named Insured and Mailing Address

| | |
|---|---|
| FALCO CONSTRUCTION<br>JOSEPH FALCO D/B/A<br>5 COOLIDGE CIRCLE<br>SOUTH EASTON<br>MA    02375 | SOVEREIGN EXCESS, INC<br>800 FALMOUTH ROAD<br><br>MASHPEE<br>MA    02649<br>Code:    491 |

**Item 2.** Policy Period        Effective Date: 09/23/2003        Expiration Date: 09/23/2004
at 12:01 A.M., Standard Time at your mailing address shown above.

**Item 3.** In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated, Where no premium is shown, there is no coverage.

| Coverage Part(s) | Premium | |
|---|---|---|
| Commercial General Liability | $ | 884.00 |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |

| | | |
|---|---|---|
| **Total Policy Premium or Deposit Premium** | $ | 884.00 |
| **Other Charges (if applicable)** | | |
| **Total Other Charges** | $ | |
| **Total Amount Due*** | $ | 884.00 |

*Premium is: ☐ Flat  ☒ Adjustable          Policy Minimum Premium  $    884.00
In the event you cancel this policy, we will retain  25 %

**Item 4.**  Forms and Endorsements applicable to this policy:  See "Listing of Forms and Endorsements"   (IFG-I-0150)

**Item 5.** Form of Business.    ☒ Individual              ☐ Partnership        ☐ Joint Venture

☐ Limited Liability Company    ☐ Other Organization, including a Corporation

☐ Trust

Business Description: MASONRY
SEI - 19067

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.

Countersigned:
Date: _____        By: _____
Issue Date: 10/14/2003                                    Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## 25% MINIMUM EARNED PREMIUM

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**
**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**CONTRACTORS MACHINERY AND EQUIPMENT COVERAGE FORM**
**FARM MACHINERY AND EQUIPMENT COVERAGE FORM**
**GARAGE COVERAGE FORM**
**LIQUOR LIABILITY COVERAGE FORM**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Attached to and forming a part of Policy Number | Endorsement Effective (Standard Time) | | | | | Endorsement Number |
|---|---|---|---|---|---|---|
| | mm | dd | yy | 12:01 | A.M. | |
| 491F000644 | | 09/23/2003 | | | | 1 |

(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)

_____    _____
Authorized Representative                Date

If the first "named insured" or anyone with his, her, its or their power of attorney cancels this policy, then the minimum earned premium shall be 25% of the annual premium or $100.00, whichever is greater.

BG-I-015 0800



**IFG Companies**

| POLICY NUMBER: 491F000644 | EFFECTIVE DATE: 09/23/2003 |
|---|---|

## SCHEDULE OF TERRORISM PREMIUMS

| If item is checked below, the portion of your policy premium for Terrorism coverage is shown at right. | Terrorism premium |
|---|---|
| ☒  Terrorism coverage is excluded as per form(s) attached to the policy. | $0. |
| ☐  Terrorism coverage applies as per form(s) attached to the policy. | |
| ☐  Commercial Property - Monoline | |
| ☐  Commercial Package - Non-Liability Part | |
| ☐  Commercial Package - Liability Part | |
| ☐  Commercial Inland Marine - Monoline | |
| ☐  Commercial General Liability - Monoline | |
| ☐  Garage Liability | |
| ☐  Garage Dealers Physical Damage | |
| Total Terrorism coverage premium | |

Per Terrorism Risk Insurance Act of 2002, the portion of your premium that applies to Terrorism coverage provided by the insurance company is shown in the schedule above. This amount is part of and not in addition to your policy premium.

### DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurer. Should a covered event of foreign terrorism occur, all policyholders may be surcharged an additional amount of no greater than 3% of the policy's earned premium by order of the Secretary of the Treasury to reimburse the federal government for its portion of a terrorism loss.

BG-I-441 0103



Policy Number: 491F000644

**IFG Companies**

# COMMERCIAL GENERAL LIABILITY
## DECLARATIONS

| Named Insured: | Effective Date: |
|---|---|
| FALCO CONSTRUCTION | 09/23/2003 |

**Item 1.**   LIMITS OF INSURANCE

| $2,000,000 | General Aggregate Limit (Other Than Products - Completed Operations) |
|---|---|
| $2,000,000 | Products - Completed Operations Aggregate Limit |
| $1,000,000 | Personal and Advertising Injury Limit |
| $1,000,000 | Each Occurrence Limit |
| $100,000 | Damage To Premises Rented To You Limit (Any One Premises) |
| $5,000 | Medical Expense Limit (Any One Person) |

Refer to individual policy forms and/or endorsements for various coverage sublimits, if applicable.

**Item 2.**   AUDIT PERIOD  (If Applicable):

[X] Annually          [ ] Semi-Annually          [ ] Quarterly          [ ] Monthly

**Item 3.**   FORM(S) AND ENDORSEMENT(S) made a part of this policy at time of issue:

See Listing of Forms and Endorsements (IFG-I-0150)

**Item 4.**   COMPOSITE RATE

[ ] If box is checked, see Composite Rate Endorsement (IFG-I-0152) for applicable classification, rates and premiums. If box is not checked, see page 2 of these Declarations for applicable classifications, rates and premiums.

**Item 5.**   RETROACTIVE DATE (CG 00 02 only) :

Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here:          (Enter Date or "None" If no Retroactive Date applies.)

**Item 6.**   PREMIUMS

| $ | 884.00 | Total Coverage Part Advance Premium |
|---|---|---|
| $ | 884.00 | Coverage Part Minimum Premium (if applicable) |

These Declarations are part of the Policy Declarations containing the name of the insured and the policy period.

**Policy Number:** 491F000644

# COMMERCIAL GENERAL LIABILITY
## SCHEDULE OF CLASSIFICATIONS AND RATES

| Named Insured:<br>FALCO CONSTRUCTION | | | | **Effective Date:** 09/23/2003 | |
|---|---|---|---|---|---|

| Loc. No.<br>1 | Location Address (Premises you own, rent or occupy):<br>5 COOLIDGE CIRCLE<br>SOUTH EASTON          MA 02375 | County,<br>Borough or<br>Parish | Rating Terr. |
|---|---|---|---|
| Bldg. No.<br>1 | | BRISTOL | 017 |

| Code No.<br>97447 | Classification<br>Masonry | | |
|---|---|---|---|

| | Premium is: | Premium Base | | All Other | ProdC.Ops |
|---|---|---|---|---|---|
| ☒ | Adjustable (See Premium Audit Conditions) | | Rate Per $1,000 | $ 25.160 | $ 5.759 |
| ☐ | Flat (Not Adjustable) | 28,600 Payroll | | | |
| ☐ | Fully Earned When Written | | Advance Premium: | $ 720.00 | $ 164.00 |

| Loc. No. | Location Address (Premises you own, rent or occupy): | County,<br>Borough or<br>Parish | Rating Terr. |
|---|---|---|---|
| Bldg. No. | | | |

| Code No. | Classification | | |
|---|---|---|---|

| | Premium is: | Premium Base | | All Other | ProdC.Ops |
|---|---|---|---|---|---|
| ☐ | Fully Adjustable (See Premium Audit Conditions) | | Rate | $ | $ |
| ☐ | Flat (Not Adjustable) | | | | |
| ☐ | Fully Earned When Written | | Advance Premium: | $ | $ |

| Loc. No. | Location Address (Premises you own, rent or occupy): | County,<br>Borough or<br>Parish | Rating Terr. |
|---|---|---|---|
| Bldg. No. | | | |

| Code No. | Classification | | |
|---|---|---|---|

| | Premium is: | Premium Base | | All Other | ProdC.Ops |
|---|---|---|---|---|---|
| ☐ | Adjustable (See Premium Audit Conditions) | | Rate | $ | $ |
| ☐ | Flat (Not Adjustable) | | | | |
| ☐ | Fully Earned When Written | | Advance Premium: | $ | $ |

| ☐ | See Schedule of Classifications and Rates (IFG-G-0003) for additional locations you own, rent or occupy and applicable classifications and rates and premiums. |
|---|---|

POLICY NUMBER: 491F000644

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PREMIUM AUDIT CONDITION - CONSTRUCTION OR SERVICE TRADES
## AUDIT AND DEPOSIT PREMIUM

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** Paragraph 5. of COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV) is replaced by the following:

5.  Premium Audit.

   a.  We will compute the premiums for this Coverage Part in accordance with our rules and rates.

   b.  You must obtain valid Certificates of Insurance, certifying Commercial General Liability with limits of liability and coverage equal to or greater than than provided by this policy, from all "independent contractors" prior to commencement of any work performed by them for you or in your behalf. If you do not obtain valid Certificates of Insurance as stipulated then such "independent contractors" will be deemed to be uninsured for Commercial General Liability Insurance and any liability arising out of their employment by or for you will be subject to reduced limits of liability. The rate for these reduced limits for "uninsured" "independent contractors" is the same reduced rate charged insured "independent contractors". Refer to form *Amendment of Limits of Insurance - Construction or Service Trades,* or *Amendment of Limits of insurance - Uninsured Independent Contractors* that is made a part of this policy.

   c.  Premium shown in this Coverage Part Declarations as advance premium is a minimum and deposit premium. It shall be determined based upon an estimate of exposures for the current policy period. 100% (one hundred percent) of this advance premium shall be payable at policy inception.

   d.  This policy is issued subject to an audit as stated in the Coverage Part Declarations. At the close of each audit period we will compute the earned premium for that period. Audit premiums are made due and payable on notice to the first Named Insured.

    (1) We may either ask to audit your records at the location of your premises, or those of your accountant, or ask you to send us copies of your records. We will compute the actual earned premium based upon this audit. We shall apply the premium paid at policy inception to the final audit premium. We will send you a notice of premium due and payable for any premium due in excess of the premium paid at inception.

    (2) However, if the total earned premium for the policy period is less than the Total Advance Premium, then the advance premium is the minimum premium and is not subject to further adjustment.

   e.  The first Named Insured must keep records of the information we need for premium computation and permit us to audit these records or, at our option, send us copies at such times as we may request.

   f.  Should you not cooperate with the terms of this condition, including failure to return any questionnaires or self-audit worksheets, we may, at our discretion, nonrenew the policy due to our inability to establish a proper premium. Should you fail to pay premiums when due we will cancel the policy for nonpayment of premium in accordance with A. CANCELLATION condition of the Common Policy Conditions. The premium that you paid at inception will be applied against the total earned premium as of the cancellation effective

BG-G-179 0303

Page 1 of 2

date. Any refund will be less than pro rata. The cancelation will be effective even if we have not made or offered a refund.

B. The following definition is added to **SECTION V - DEFINITIONS:**

"Independent contractor" means a person or organization that, in the exercise of an independent employment, contracts to do work or perform a service for another, retaining control over the means or methods used in doing the work or performing the service.

"Independent contractor" includes any person or organization that you call, or you refer to as, or you treat in your business dealing as, or you intend to be, or you tell us is, an "independent contractor".

"Uninsured" means not insured by Commercial General Liability Insurance for legal liability arising out of business operations or "completed operations", including premises owned, maintained, rented, leased or used.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - CONDOMINIUM, TOWNHOUSE, ROW HOUSE, OR TRACT HOME CONSTRUCTION PROJECTS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Attached to and forming a part of Policy Number | Endorsement Effective (Standard Time) | | | | | Endorsement Number |
|---|---|---|---|---|---|---|
| | mm | dd | yy | 12:01 | A.M. | |
| 491F000644 | | 09/23/2003 | | | | 1 |

(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)

_____        _____
Authorized Representative                         Date

In consideration of the Company's underwriting the coverage provided by this insurance, it is agreed that this policy does not apply to, nor shall the Company have any duty to defend any claim or "suit" seeking damages for, "bodily injury," "property damage" or "personal and advertising injury" arising from, or related to or in any way connected with "your work" or "your product" within the "products - completed operations hazard" when such work or products are part of or incorporated into a "condominium project," "townhouse project," "row house project," or "tract home project."

This endorsement does not apply if "your work" occurs or "your products" are supplied or incorporated after such residential structure was certified for occupancy except for such work if performed to repair or replace "your work" or "your product" that was completed or incorporated prior to the certificate of occupancy.

These definitions are added:

"Condominium project" is a system of separate ownership of individual units in a multiple-unit building. A single real property parcel with all the unit owners having a right in common to use the common elements with separate ownership confined to the individual units which are serially designated.

"Row house project" is a series of houses connected by common sidewalls and forming a continuous group.

"Town house project" is a group of dwelling units normally having two, but sometimes three, stories; each unit usually connected to a similar structure by a common wall, and commonly (particularly in planned unit developments) sharing and owning in common the surrounding grounds.

"Tract home project" is a large piece or parcel of land subdivided into two or more lots, tracts, parcels or other divisions of land for the development and sale of freestanding one, two, three or four family dwellings.

These exclusions and definitions apply in addition to those contained in the Coverage Form.

All other terms and conditions of this policy remain unchanged.

BG-G-345 0300