UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE FIREMAN'S FUND INSURANCE ) <br> COMPANY as subrogee of JULIA PAVIA ) <br> 77 San Marin Drive Novado, California, ) <br>     Plaintiff ) <br> ) <br> ) <br> VS. ) <br> ) <br> FALCO CONSTRUCTION CORP., ) <br> P & D BUILDERS, INC. and ) <br> MICHAEL CARRESI d/b/a ) <br> CARRESI PLUMBING & HEATING, ) <br>     Defendants ) <br> ) <br> VS. ) <br> ) <br> HEATMASTER, INC., ) <br>     Third-Party Defendant ) | CIVIL ACTION <br> NO. 05-cv-10827-DPW |

**DEFENDANT, FALCO CONSTRUCTION CORP.'S DISCLOSURE OF EXPERT WITNESS, BRIAN GORE, P.E. PURSUANT TO FED.R.CIV.P. 26 (a)(2)(B)**

1. **Name and Address of Witness:**

    Brian Gore, P.E., C.Eng., M.I.C.E.
    12 Holbrook Lane
    Paxton, MA 01612

2. **Subject Matter On Which Expert Is Expected To Testify:**

    Mr. Gore is expected to testify concerning his opinions as to the parties responsible for the improper construction of the gas log fireplace at issue.

3. **Substance Of The Facts And Opinion To Which The Expert Is Expected To Testify:**

    Mr. Gore is expected to testify that the general contractor for the project, P&D Builders; the licensed construction supervisor for the project, Paul Rothschild and the

plumber who installed the gas log unit, Michael Carresi, are responsible for the improper construction of the subject fireplace. Mr. Gore is further expected to testify that Joseph Falco, the masonry subcontractor for the fireplace brick work, is not responsible for the improper construction of the subject fireplace.

**4. Summary Of Grounds For Expert Opinion:**

Mr. Gore's opinions are based on his review of the parties' discovery responses, expert disclosures, initial disclosures, depositions, photographs and reports as set forth in his initial and supplemental expert reports, as well as his education, training and experience. Mr. Gore's *Curriculum Vitae*, fee schedule and testimony history are attached hereto and incorporated herein by reference.

        Respectfully submitted,
        The Defendant,
        Falco Construction Corp.,
        By its Attorneys,

        David J. Crowley
        John F. Toomey, BBO # 500160
        David J. Crowley, BBO # 630169
        TOOMEY & YUDYSKY LLP
        99 Summer Street
        Boston, MA  02110
        (617) 946-0930
        tylawyers@tyllp.com

Dated:  August 31, 2006

3

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on <u>August 31, 2006.</u>

Date:<u> August 31, 2006</u>                    Attorney: <u>David J. Crowley</u>

DC  75412.1  8/31/06

# Brian Gore, P.E., C. Eng., M.I.C.E
12 Holbrook Lane, Paxton, MA 01612                    Tel: 508-756- 3330

## Education:
| | |
|---|---|
| Bachelor of Engineering (B.Eng.- First Class Honors) | -University of Liverpool, England |
| Master of Engineering (M. Eng.) | -University of Liverpool, England |

## Professional Registrations:
| | |
|---|---|
| Registered Professional Structural Engineer | -Commonwealth of Massachusetts |
| Licensed Professional Engineer | -Connecticut |
| Chartered Engineer | -Institution of Civil Engineers Great Britain & EEC |
| Certified Building Official | -Council of American Building Officials |
| Certified Building Commissioner | -Commonwealth of Massachusetts |
| Certified Building Inspector | -Building Officials and Code Administrators International (BOCA) |

## Professional Affiliations:
| | |
|---|---|
| Institution of Civil Engineers | -Member |
| Building Official & Code Administrators International | -Member |
| International Council of Building Officials | -Member |
| American Arbitration Association: | -Arbitrator – Construction Panel |

## Professional History:

2003 to Present:
**Arbitrator** – American Arbitration Association
Appointed to Roster of Neutrals Commercial Panel Specializing in Construction related arbitration.

2000 to present:
**Principal** - Brian Gore and Associates, Paxton Ma.
Building Code analysis; plan review; structural engineering consulting; construction inspection and observation services to architectural, construction, legal and insurance professions. Projects include retail, residential and commercial. Project values up to $20 million.

2005 to Present
**Senior Project Manager**, University of Connecticut, Architectural and Engineering Services Responsible for Management of University Construction, renovation and Code Remediation Projects

1990 to 2005:
**Technical Director**: State Board of Building Regulations and Standards (BBRS)
Responsible for the maintenance and update of the Massachusetts Sate Building Code and the development and promulgation of the sixth and seventh editions of the Massachusetts State Building Code. Supervision of BBRS technical staff and directly responsible for providing technical assistance and building code interpretations to construction, engineering and architectural communities and to State Agencies, state and local building officials; development and presentation of technical training seminars for state and local building officials, contractors, professional engineers and architects; providing testimony before State Legislature on issues relating or impacting construction regulations.  Build Boston panelist and presenter 1994, to present. Staff liaison to Seismic, Geotechnical and Loads advisory

committees. BBRS Chairman's designee to the Fire Safety Commission and Automatic Sprinkler Appeals Board.

1994 to 2000:
**Lecturer:** Northeastern University, School of Building Design and Management: *Understanding the Massachusetts State Building Code*.

**Lecturer:** Anna Maria College, Paxton, MA. Department of Criminal Justice, (1996, 1997). School of Criminal Justice, Fire Science Program - Building Codes for Fire Services.

1986 to 1990:
**Project Engineer:** Goodman Associates, Inc., Shrewsbury, MA.
Structural and civil design and construction management and supervision of industrial, commercial and retail projects. Responsibilities included site evaluation and feasibility studies; preparation of civil and structural designs, working drawings and specifications; construction inspection; direct supervision of in-house engineering, architectural and CADD staff; coordination of attendant consultants and sub-contractors; client representation at public hearings. Projects included retail stores and warehouses for Christmas Tree Shops at Hyannis, Avon and Pembroke, MA. and Warwick, RI. Construction types included reinforced masonry, reinforced concrete structural steel and wood framed. Structural damage assessment and remedial design to fire damaged split ring connector timber roof trusses in a retail building.

1984 to 1986:
**Structural Engineer:** Louis Berger and Associates, Wellesley, MA.
Highway bridge inspection and live load capacity rating. Design of a two span prestressed concrete box beam bridge (total span 160') in Holyoke, MA. Design of a temporary detour bridge connecting I-93 with Route 1 (Boston Central Artery Project, North Area). Design of reinforced concrete hammerhead piers and foundation for a three span bridge on Route 102 (Bristol - New Hampton, NH).

1983 to 1984:
**Engineer's Representative:** Scott, Wilson, Kirkpatrick & Partners, Baghdad Office Manager, Baghdad, Iraq
Responsible for project co-ordination, management and liaison between Iraqi government and UK based airport design team during the design phase for an international airport. Provided technical assistance to the Iraqi State Organization of Roads and Bridges.

1982 to 1983:
**Chartered Engineer:** Scott, Wilson, Kirkpatrick & Partners, Muscat, Sultanate of Oman
Structural design of retail commercial and military facilities including structural steel, reinforced masonry and reinforced concrete buildings. Resident Engineer responsible for the construction inspection and contract administration of major expansions to residential recreational and operational facilities of a military base, including structural steel and reinforced concrete framed buildings, reinforced masonry buildings and associated infrastructure.

1981 to 1982:
**Chartered Engineer:** Scott, Wilson, Kirkpatrick & Partners, Basingstoke, England
Project engineer responsible for the supervision of hydrological studies and detailed drainage design for two international airports. Developed computer interactive design program for the design of open channel drainage systems.

Brian Gore, P.E.

1980 to 1981:
**Resident Engineer**: Scott, Wilson, Kirkpatrick & Partners, Aberconwy Coast Protection Scheme, Wales
Responsible for construction supervision, contract management and administration of a coastal protection project involving beach stabilization and replenishment by the construction of reinforced concrete groynes, driven timber pile groynes and timber pile revetment structures.

1977 to 1980:
**Project Engineer**: Scott, Wilson, Kirkpatrick & Partners, Basingstoke, England
Detailed structural design of reinforced concrete framed buildings; airport site selection and feasibility studies; utility co-ordination for Lilongwe International Airport, Malawi, South Africa; Design of Reinforced Concrete underground reservoir, Kota Kinabalu International Airport, Malaysia.

## Awards:
W. G. Curtin and Partners Prize for Structural Design - 1975
Taylor Woodrow Prize for Civil Engineering - 1976

## Appointments:
B.O.C.A. National Building Code Formal Interpretations Committee - 1993, 1994
Joint Committee of Architects and Engineers on Professional Practice -1994 to present
New England Building Code Association, Inc. - President, 1997 to 1998
Fire Safety Commission - 1994 to 2002
Fire Safety Commission - Automatic Sprinkler Appeals Board - 1994 to Present:
President – New England Building Code Association, Inc. 1996
"Build Boston" Speaker and Panelist - 1994 to 1999, 2001, 2002.
Lecturer - Boston Society of Architects - 6th Edition of the Massachusetts State Building Code, 1998.
Guest Speaker – City Solicitors and Town Counsel Association of Massachusetts - Annual Conference 2000 – "Legislation and the Adoption and of the Massachusetts State Building Code"
Lorman Education Associates – Building Codes in Massachusetts 2003, 2005

Chair of Egress Subcommittee – Governors Special Commission on Fire and Building Safety in the aftermath of the Station Nightclub Fire, West Warwick, RI

Court Appointed Expert Neutral – Worcester Superior Court - 2004

# Brian Gore & Associates

Building, Fire and Life Safety Code Consulting

**Billing Rates:**

Compensation for professional services is billed at a rate of $175.00 per hour.

**Minimum Fees:**

A minimum of 4 hours is billed for attendance at depositions, construction site inspections and site and governmental meetings.

A minimum of 8 hours per day is billed for court appearances.

All other work is billed in accordance with the actual time spent on the project including research and travel time when applicable.

**Billing Cycles:**

Invoices are prepared on the first day of each calendar month. Payment is required in full for the work completed in each billing cycle within thirty days of billing.

**BRIAN GORE & Associates**

BUILDING, FIRE & LIFE SAFETY
CODE CONSULTING

Attorney David Crowley Esq.
Toomey and Yudysky, LLP
Attorneys at Law
99 Summer Street
Boston, MA 02110

August 28, 2006

Via e mail and First Class Mail

Re   Firemans Fund Insurance Co. v. Falco Construction Corp.v. Heatmaster Inc.
     United States District Court
     Civil Action Number 1:05-cv-10827-DPW

Dear Attorney Crowley;

I have reviewed the information and depositions which you forwarded under cover of your letter of August 7th 2006, including:

1. Plaintiff's expert disclosures;

2. Craig IS' file notes;

3. Splaine Investigations, Inc.'s report and photographs;

4. Newton Fire Department's photographs;

5. Steven Tower's photographs;

6. Joseph Falco, Jr.'s deposition;

7. Julie Pavia's deposition;

8. Phillip Rothschild's deposition;

9. Michael Carresi's deposition;

10. Charles Gubbins' deposition;

11. Michael Roach's deposition;

12. Michael Conte's deposition;

13. James Dussault's deposition (with attached deposition exhibits); and

14. Third-Party Defendant, Heatmaster, Inc.'s expert disclosure.

The following information is presented as a supplement to my initial report addressed to Mr. Stephen Tower of Investigative Resources Incorporated dated March 9th 2005, which is incorporated herein by reference.

This supplemental letter report focuses on the responsibilities for code compliance of the various parties with respect to the Massachusetts State Building Code (780 CMR) and the Massachusetts Plumbing and Fuel Gas Code (248 CMR) the codes which regulate the construction of the fireplaces, and the installation of gas appliances including decorative gas logs.

Relevant Parties to the construction are:

    Philip Rothschild - Licensed Construction Supervisor

    P and D Builders - General Contractor

    Michael Carresi - Licensed Plumber/Gas Fitter - Installed gas log appliance

    Joseph Falco - Masonry Sub Contractor-Constructed Masonry Fireplace

    James Dussault-Heating Ventilation and Air Conditioning Subcontractor - Installed vent for gas logs

    Charles Gubbins-P and D Employee - Carpenter

    Michael Roach - Framing Sub Contractor

    Michael Conte-Framing Sub contractor

The basic facts of the case as related to the construction and venting of the fireplace and installation and venting of the gas logs are summarized as follows:

1. The homeowners, Julia and Michael Pavia contracted with P and D Builders to build an addition for an existing single family dwelling at 104 Hammondswood Road, Newton, MA and construct an addition thereto. Construction commenced in 2000 and a certificate of use and occupancy was issued by the City of Newton Building Department on August 15, 2001.

2. The Building Permit applicant was P and D Builders and Mr. Philip Rothschild is identified as the licensed construction supervisor responsible for building code compliance.

3. P and D Builders was general contractor and subcontracted portions of the work

2

   to other trades, including Joseph Falco, an unlicensed mason and Michael Carresi, a licensed plumber.

4. During the project, P and D Builders instructed Mr. Falco to construct a fireplace in a second floor office in the addition. Mr. Falco understood that the fireplace was to be decorative or used for a zero clearance insert. It was not intended to act as a conventional fireplace where solid materials could be burned. No plans were filed for the construction of the fireplace. The approval of the construction of the fireplace will be shown, herein, to be the responsibility of the licensee, Mr. Rothschild.

5. Before the issuance of the certificate of use and occupancy, Mr. Carresi installed a gas burning log unit in the fireplace. Mr. Carresi, as the licensed plumber was responsible for ensuring code compliance with regards to 248 CMR for the installation and venting of the gas logs.

The construction of solid fuel burning fireplaces is regulated by the Massachusetts State Building Code (780 CMR 3610) while the installation and venting of gas logs referred to as decorative gas logs is regulated by the State Fuel Gas Code (248 CMR). Both of these codes require that licensed individuals be responsible for compliance with the respective code requirements in their areas of their respective licensure.

Fireplace Construction - Responsibilities for Code Compliance

780 CMR 108.3.5 identifies which individuals are permitted to supervise persons engaged in construction activities regulated by 780 CMR. Specifically 780 CMR 108.3,5 requires that individuals who supervise persons engage in construction possess a <u>construction supervisor license</u> issued by the Commonwealth of Massachusetts.

Furthermore, 780 CMR R5 establishes the rules and regulations for licensed construction supervisors relative to the duties and responsibilities of the licensee. Specifically, with regard to the required presence of the licensee during specific areas of construction, 780 CMR R 5.2.12 states:

> "*780 CMR R 52.12 On Site Presence of Supervisor: A licensed individual or licensed designee shall be present on the site at some point to approve construction reconstruction, alterations, removal or demolition involving the following work:*
> .......
>
> *6. Chimneys*
> *a. Excavation*
> *b. At the top of the smoke chamber and support of the flue liner.*
> *c. When the erection of the chimney is completed.* "

Furthermore 780 CMR R 5.2.15.1 and R 5.2.15.2 are unambiguous on who is responsible for code compliance for work regulated by 780 CMR, to wit:

3

> "780 CMR R 5.2.15.1 Responsibility for Work: The <u>license holder</u> shall be fully and <u>completely responsible</u> for all work which he is supervising. He shall be responsible for seeing that all work is done pursuant to 780 CMR and the drawings approved by the building official" {emphasis added}.
>
> "780 CMR R 5.2.15.2 Responsibility to Supervise Work: The <u>license holder</u> shall be <u>responsible to supervise</u> the construction, reconstruction, alteration. repair, removal or demolition involving any activity regulated by any provisions of 780 CMR only and all other applicable laws of the Commonwealth even though he, the license holder, is not the permit holder but only a subcontractor or contractor to the permit holder". {emphasis added}

The construction requirements for solid fuel burning fireplaces are found in the Massachusetts State Building Code at 780 CMR 3610 and are partially summarized below:

> 3610.4.3 Fireplaces walls are required to be constructed of solid masonry units, stone or concrete and shall contain firebrick such that the fireplace wall thickness is not less than 8 inches. If firebrick is not used the wall thickness is required to be 12 inches.
>
> 3610.4.5; 3610.4.6 A hearth extension is required to extend in from of the fireplace opening and this hearth is required to be supported on a concrete slab at least 4 inches in thickness and be supported by noncombustible materials. Any combustible forms used to support the concrete during construction are required to be removed after construction is complete
>
> 3610.4.7 The fireplace walls are required to be at least 4 inches clear of any combustibles including wood framing.
>
> 3610.4.1 Foundations for masonry fireplaces and chimneys are required to be constructed of concrete or solid masonry at least 12 inches thick and are required to extend at least six inches beyond the face of the fireplace or supporting wall on all sides.

In essence the fireplace is required to be independently constructed and supported such that it passes through the combustible framing while maintaining a clearance of 4 inches from any combustible material. In the case of the subject property if a solid fuel burning fireplace were to have been constructed on the second floor provision would have had to have been made to construct masonry or concrete walls to support the fireplace and these walls would have needed to be extended through the second and first floors and a foundation for the walls constructed at the basement level. This would have necessitated cutting holes in the first and second floors, the second floor ceiling and the roof in order to accommodate the fireplace and hearth extension and the chimney. These openings would then have to be re framed. In order to support the fireplace and chimney, the basement floor slab would have to be saw cut and a concrete foundation constructed. Cutting a hole in the roof to accommodate the masonry chimney would also require reframing of the

4

roof and the application of flashing and then restoration of the portion of the roof impacted by the chimney construction.

In addition to the extensive structural modifications and reinstatement of finish materials such as ceilings, carpet, tile and wood flooring the area taken up by the fireplace support walls as they pass through the first floor and basement would most likely have a detrimental effect on the architecture and use of the spaces on floors below the fireplace level which may need to be redesigned. It is also possible that other utilities such as existing electrical wiring, electrical fixtures, plumbing lines and, heating and air conditioning ducts, pipes and equipment may also be effected.

Although there is contradictory evidence as to which parties knew that a gas log unit was to be installed in the fireplace, there is consistent evidence that Mr. Rothschild was aware that a fireplace was to be constructed. Indeed, Mr. Rothschild arranged for and supervised its construction by subcontracting the construction of a brick facade to Mr. Falco and the installation of the gas log appliance to Mr. Carresi. With respect to Mr. Falco's work, Mr. Rothschild billed the homeowner, Ms. Pavia, for the work, adding 20 percent overhead and profit as is customary for a general contractor who is managing sub contract work.

Also, Mr. Rothschild applied for the building permit for the project. He was the licensed construction supervisor responsible for the project. Mr. Rothschild inspected the work at the project daily. Regardless of the final form and use of the fireplace it was incumbent upon Mr. Rothschild as the construction supervisor and Mr. Carresi as the licensed plumber to coordinate their review of the gas log unit and the venting of the unit prior to placing this unit in service.

The evidence indicates that the form of the fireplace was never established until a point in construction when framing had been completed and major structural and architectural changes would have been necessary in order to accommodate a working fireplace. Specifically, the evidence indicates that P and D's framing Subcontractors constructed the wood framing for the addition, including the plywood sub flooring. The framing Subcontractors did not frame the addition to allow for the construction of a solid fuel burning fireplace. Subsequently, Joseph Falco was hired to a construct a brick box with no top, and a brick hearth, which were constructed directly on top of the plywood sub floor.

After Mr. Falco completed the construction of the brick work and left the project, Mr. Dussault was hired by P and D Builders to install a vent from the fireplace through the roof. Also, Mr. Dussault fabricated a steel cap which had a hole for a flue vent and placed the steel cap plate on top of the open fireplace. This steel cap was custom fabricated to specifications provided by Mr. Rothschild. The brick fireplace facade constructed by Mr. Falco was further modified in an attempt to seal the top of the fireplace (left open by Mr. Falco) with the obvious intention to channel the flue gasses to a flue installed by Mr. Dussault. Thereafter, Mr. Carresi installed a gas log unit in the fireplace. The gas log's manufacturer's instructions warn that the gas log unit must be installed only in a solid-fuel burning fireplace with a working flue and constructed of non-combustible materials.

The construction of the fireplace and installation of the gas log unit was inspected and approved by Mr. Rothschild.

Before Mr. Falco constructed the subject fireplace, he had constructed numerous fireplaces and chimneys. and was cognizant of the State Building Code requirements for construction and inspection of fireplaces and chimneys. In the present matter, Mr. Falco was instructed by Mr. Rothschild to build decorative fireplace to dimensions which would match a mantel that the Pavia's owned and wished to use as the fireplace surround. This necessitated that the fireplace opening be constructed too small to be used as a conventional fireplace. Mr. Falco understood that this fireplace would not be used as a conventional fireplace. Rather, Mr. Falco understood that it would be used as a decorative unit or with a zero clearance insert.

<u>Responsibility for the Installation and Venting of the Gas Burning Log.</u>

The Massachusetts State Fuel Gas Code (248 CMR) is the governing code for the installation, gas supply and venting of the gas burning logs.

Review of the building department files shows that the extent of the gas fitting permit application was to replace a gas heater in the basement. The applicant was Michael Carresi Plumbing, 513 Bird Road, Mansfield, Ma (license number 11157).

248 CMR 5 section 2.1 prohibits the installation of gas piping systems until a permit has been issued by the Inspector of Gas Fitting. The code requires that the work be performed by a licensed gas fitter. In accordance with 248 CMR 2.1 the permit application is required to contain a statement of the work performed. The installation of gas burning logs is regulated by 248 CMR 6.7.2. However, the gas fitting permit application does not address the installation of a gas burning log nor the associated venting and gas piping. In fact the gas permit application simply indicates that the permit application is for replacement of a gas heater in the basement. Therefore, the gas burning log was installed without the required permit.

With regards to the physical installation itself, both the Massachusetts Fuel Gas Code (248 CMR) and page 1 of the manufacturers printed instructions requires that the gas unit be installed "...*only in a fully vented, solid fuel burning fireplace with a working flue*"

Prior to the installation of the gas burning decorative unit, this language requires that the licensed plumber/gas fitter verify that the fireplace is constructed as required by 248 CMR code and the manufacturer's instructions. In this case it is clear that Mr. Carresi did not comply with these requirements and should have not installed the gas logs at this location without modifications to the fireplace and installation of the appropriate venting system.

Additionally, Mr. Rothschild being the licensed construction supervisor and general contractor, was required to ensure that the fireplace was constructed in accordance with 780 CMR 3610 or alerted Mr. Carresi that the installation of gas logs in the fireplace as constructed was prohibited.

In conclusion, the responsibility for supervising and approving the construction of the gas log fireplace construction rests with the licensed construction supervisor as provided in 780 CMR 108.3.5, 780 CMR RS.2.12 and 780 CMR RS.2.15.1 and R5.2.15.2. Mr. Rothschild, as the licensed construction supervisor on this project, is responsible for ensuring building code compliance for all construction work, including the fireplace. He failed to do so in this matter.

With regard to the installation of the gas logs, both the plumbing and fuel gas code and the manufacturer's installation instructions are clear that the gas logs can only be installed in a fully vented, solid fuel burning fireplace with a working flue. It is incumbent on the gasfitter license holder, Mr. Carresi to ensure that the gas log unit was installed in such a fireplace. He failed to do so in this matter.

It is, therefore, my opinion, to a reasonable degree of engineering certainty, that Mr. Rothschild is responsible for the improper construction of the fireplace, as he failed to coordinate the work of P and D' Subcontractors and permitted the installation of a gas log unit in a fireplace that did not meet the requirements of the Massachusetts Building Code.

Further, it is my opinion, to a reasonable degree of engineering certainty, that Mr. Carresi is responsible for the improper construction of the fireplace, as he installed a gas log unit in a fireplace that obviously did not meet the requirements of the Massachusetts Building Code.

Lastly, it is my opinion, to a reasonable degree of engineering certainty, that Mr. Falco is not responsible for the improper construction of the fireplace, as he built a brick fireplace brick work pursuant to the general contractor's specifications. He was not instructed to build a solid fuel burning fireplace for the installation of a gas log appliance.

Very truly yours,
**BRIAN GORE & ASSOCIATES**

*[signature: Brian G]*

Brian Gore, PE.
Principal

# FOUR YEAR TESTIMONY HISTORY OF BRIAN GORE, P.E.

1. Ocean Spray Condominium Owners Association v. Barbara J. Monopoli, Essex Superior Court, Civil Action No. 03-00143.  Date of Testimony 2/17/06.

DC  75419.1  8/31/06