IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

-----------------------------------------------------------------X

FIREMAN'S FUND INSURANCE  COMPANY as
subrogee of JULIA PAVIA                                          CIVIL ACTION NO.
77 San Marin Drive                                              05-10827 (DPW)
Novado, California

                        Plaintiff,

      vs

FALCO CONSTRUCTION CORP.;
P & D BUILDERS, INC.;
and
MICHAEL CARRESI d/b/a CARRESI
PLUMBING & HEATING                                              OCTOBER 3, 2006

                      Defendants.

-----------------------------------------------------------X

## PLAINTIFF'S MOTION TO PRECLUDE DEFENDANT P&D BUILDERS, INC.'S EXPERT WITNESS – SEBASTIAN J. BONGIORNO

Pursuant to F.R.C.P. 37(c)(1) and Local Rule 7.1, Plaintiff Fireman's Fund Insurance

Company, by and through its attorneys, submits this Memorandum in Support of its Motion to

Preclude Defendant P&D Builders, Inc.'s expert Sebastiano Bongiorno and his report.

Defendant P&D has not complied with the Rule 26 expert disclosure requirements

regarding Mr. Bongiorno.  As such, the Court should exclude his testimony, as well as his report,

in order to address the Defendant P&D's failure to adhere to Rule 26 and the Court's Modified

Scheduling Order, entered June 5, 2006.

## BACKGROUND

The operative Modified Scheduling Order, entered June 5, 2006, sets the deadline of September 1, 2006 as the date for Defendants disclosures of expert witnesses. On September 29, 2006, four weeks beyond the due date for Defendant P&D's expert disclosures, P&D's counsel filed its expert disclosure for Sebastiano Bongiorno and attached his report, curriculum vitae and testimony history. (See Disclosure, attached as Exhibit A.)

The expert disclosure for Mr. Bongiorno, as well as his accompanying report, is the subject of this motion. The expert disclosure is neither in compliance with the court's scheduling order nor the requirements of F.R.C.P. 26. Under F.R.C.P. 37(c)(1), this expert and his report should be stricken and Defendant P&D should not be permitted to use his testimony or report as evidence at trial or otherwise.

## LEGAL ARGUMENT

Defendant P&D has failed to comply with the Court's Scheduling Order and F.R.C.P. 26. The Defendant P&D has yet to offer any justification, let alone "substantial justification", to escape the mandatory language of F.R.C.P. 37(c)(1). As such, Mr. Bongiorno's testimony and report should be stricken and Defendant P&D should not be permitted to use either at trial or otherwise. Preclusion is the appropriate remedy under these circumstances.

**A. Expert Disclosure Requirements of Rule 26(a)(2) of the Federal Rules of Civil Procedure.**

Rule 26(a)(2) requires each party to disclose to other parties, without awaiting a discovery request the following information:

> 1) the identity of any person who may be sued at trial to present evidence under Rules 702, 703 or 705 of the Federal Rules of Evidence; and

2) with respect to a witness who is retained or specially employed to provide expert testimony in the case, the disclosure shall be accompanied by a written report prepared and signed by the witness.

F.R.C.P. 26(a)(2)(A), (B). Among other requirements, an expert's written report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions. F.R.C.P. 26(a)(2)(B). Under Rule 26(a)(2)(C), "[t]hese disclosures shall be made at the time and in the sequence directed by the court." "These directives are mandatory and selfexecuting." Lohnnes v. Level 3 Communications, Inc., 272 F.3d 49, 59 (1st Cir. 2001) (excluding a belatedly offered expert affidavit on a motion for summary judgment). "A party does not waive its entitlement to Rule 26(a)(2)(B) disclosures merely by filing interrogatories or deposing an expert." Sullivan v. Glock, Inc., 175 F.R.D. 497, 502 n.8 (D.Md. 1997) (internal citations omitted) (attached as Ex. B).

As previously noted, the Scheduling Order required Defendant P&D to make its expert disclosures by September 1, 2006. Defendant P&D did not make this disclosure for Mr. Bongiorno as required. Defendant P&D has not offered any justification as to why it failed to make this disclosure.

Further, the disclosed expert report is woefully inadequate under the requirements of F.R.C.P. 26(a)(2)(B). The five paragraph "report" fails to sufficiently detail the basis for Mr. Bongiorno's opinions. In fact, the report does not provide any of the other parties with sufficient information to determine the facts and evidence relied on by Mr. Bongiorno in reaching his conclusions. As such, the disclosure is not in compliance with F.R.C.P. 26.

**B.  Federal Rule of Civil Procedure 37(c)(1) Mandates Exclusion for a Party's Failure to Make the Required Expert Disclosures.**

The 1993 Amendments to the Federal Rules added Rule 37(c)(1) which provides:

> (1) A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use evidence at trial, at a hearing, or on a motion any witness or information not  so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

F.R.C.P. 37(c)(1).  This rule is mandatory: a party that fails to make the required disclosures "shall not, unless such failure is harmless, be permitted to use [undisclosed] evidence." Id.; see Klonoski v. Mahlab, 156 F.3d 255, 269 (1st Cir. 1998).  As the First Circuit noted in Klonoski, "the rule somewhat tempers this mandate by permitting courts to excuse failures to disclose to some degree (i.e., to impose other sanctions 'in lieu of this sanction')." Id.  But Rule 37(c)(1) "clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is a mandatory preclusion." Id. (emphasis added).  Courts across the country acknowledge that "expert disclosure requirements are not merely aspirational, and courts must deal decisively with a party's failure to adhere to them." See Lohnnes, supra, 272 F.3d at 60.  More particularly, courts have consistently recognized the need to abide by deadlines and exclude evidence that was untimely disclosed. See Baker v. Indian Prairie Community Unit, School District No. 204, 1999 WL 988799, *1-3 (N.D. Ill. 1999) (attached as Ex. C).

**C. There are only Two Exceptions to Mandatory Exclusion.**

In Lohnnes, the First Circuit noted only two exceptions to the general rule excluding

evidence that a party seeks to rely upon but has failed to disclose: 1) when the failure to disclose

is "substantially justified" or 2) when the nondisclosure is "harmless." See <u>Lohnes</u>, *supra,* 272

F.3d at 60. Defendant P&D's failure to disclose this expert is not substantially justified. The

untimely disclosed expert was never identified in Defendant's Responses to Plaintiff's

Interrogatories. In fact, Defendant P&D acknowledged that such disclosures would be made in

accordance with the Court's scheduling order:

> "Interrogatory No. 5:
>
> State the name and address of each person whom you expect to call as an expert witness
> at trial and state the subject matter on which the expert is expected to testify. Please
> attach any expert reports for the experts you intend to have testify at trial on your behalf.
> ANSWER:
>
> No determination has been made as to whom the defendant will call as an expert at the
> trial of this matter. The defendant will seasonably supplement its answer in accordance
> with the Scheduling Order."

(Def. Responses to Pl. Interrog. No. 5, attached as Ex. D). Despite its pledge to the contrary,

Defendant P&D failed to identify Mr. Bongiorno in compliance with this Court's Scheduling

Order that required expert disclosures and reports by September 1, 2006.

Defendant P&D's counsel had all necessary information well before the close of the

expert disclosure deadline to have disclosed Mr. Bongiorno in a timely fashion. In fact, there is

not a single fact mentioned in Mr. Bongiorno's report that was not known to the Defendant P&D

for over two years. Still, Defendant P&D chose to disclose this expert four weeks after the

Court's deadline. Defendant P&D's failure to disclose this expert should not work to the

detriment of the Plaintiff. Since Defendant P&D has offered no reason for the delay in

identifying this expert, let alone "substantial justification," Mr. Bongiorno and his accompanying

report should be excluded from all hearings, motions and trial. See F.R.C.P. 37(c)(1).

Defendant P&D's untimely disclosure is not harmless.  In reliance upon Defendant P&D's response to interrogatory #5, Plaintiff justifiably believed that Defendant P&D would designate experts, if any, by the expert disclosure deadline.  Based on Defendant P&D's pledge to designate experts in accordance with the scheduling order and Defendant P&D's failure to designate any such experts by September 1, 2006, the Plaintiff was surprised when it received Defendant P&D's expert designations four weeks after the deadline.  Indeed, Defendant P&D disclosed a damages witness, Farish Hemeon, on September 6, 2006.  At that time, P&D's counsel telephoned undersigned counsel to inquire as to whether the Plaintiff would be filing an objection.  The Plaintiff chose to allow the untimely expert disclosure at that time based on excusable neglect.  Still, P&D's counsel never mentioned at that time that they anticipated disclosing another expert.  Further, with five separate counsel involved in this matter, it has been incredibly difficult to schedule expert depositions before the expiration of the deadline to do so – November 1, 2006.  An extension of that deadline would further prejudice the Plaintiff as there is a mediation scheduled for November 9, 2006, and the Plaintiff needs the expert depositions completed by that time.

Defendant P&D violated the Court's scheduling order.  The factors involving docket control planning are sufficiently important alone to justify the exclusion of an untimely disclosed expert witness even in absence of prejudice to the opposing party.  See Akeva v. Mizuno Corp., 212 F.R.D. 306, 311 (M.D.N.C. 2002) (attached as Ex. E) (applying Rules 26 and 37 to expert disclosures).

Here, just as in Akeva, "[a]t this state, the question is not whether the defendants have been prejudiced, but whether the plaintiff has shown good cause for its failure to timely disclose."  Id. at 309.  Since Defendant P&D has not even attempted to show any cause for its

failure to timely disclose this expert, exclusion of Mr. Bongiorno, as well as his report, is appropriate.

Other curative measures, short of exclusion, would be an inadequate remedy because of the policy concerns and incentives for parties to comply with discovery rules. See Klonoski, supra, 156 F.3d at 274. Less harsh sanctions "would create greater incentives" for attorneys to violate Rule 26. Id., at 273. "Such conduct should not be rewarded." Licciardi v. TIC Ins. Group, 140 F.3d 357, 367 (1st Cir. 1998). If less harsh sanctions, such as a continuance, were granted as a matter of course for violations of Rule 26, "the rule could always be disregarded with impunity." Thibeault v. Square D. Co., 960 F.2d 239, 246 (1st Cir. 1992). If this Court were to condone the procedure followed by Defendant P&D in this case, then any party could flout Rule 26's expert disclosure requirements and disclose experts at a time convenient for the designating party rather than at the time ordered by the Court. Such behavior would circumvent the purpose underlying the designation of experts. Neither exception to the mandatory directive of Rule 37(c)(1) applies here. Exclusion of Mr. Bongiorno, as well as his report, is appropriate and warranted.

## CONCLUSION

Based upon the forgoing reasoning, citation to authority and attached exhibits, Plaintiff respectfully requests this Court for an Order that strikes or excludes Defendant P&D's expert Sebastiano Bongiorno and his report, and prevents Defendant P&D from using this expert and his report at trial, at a hearing, or on a motion in accordance with F.R.C.P. 37(c)(1).

**FIREMAN'S FUND INSURANCE COMPANY**
By its attorneys,


/s/ Erik Loftus
Erik Loftus, Esquire (BBO# 656315)
Law Offices of Stuart G. Blackburn
Two Concorde Way
P.O. Box 608
Windsor Locks, CT 06096
(860) 292-1116
(860) 292-1221 facsimile
eloftus@sbcglobal.net

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------X

FIREMAN'S FUND INSURANCE  COMPANY as
subrogee of JULIA PAVIA                                    CIVIL ACTION NO.
77 San Marin Drive                                        05-10827 (DPW)
Novado, California

                           Plaintiff,

       vs

FALCO CONSTRUCTION CORP.;
P & D BUILDERS, INC.;
and
MICHAEL CARRESI d/b/a CARRESI
PLUMBING & HEATING                                    OCTOBER 3, 2006

                         Defendants.

---------------------------------------------------------X

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1(A)(2)

       I, Erik Loftus, hereby certify that I have conferred with counsel for the Defendant P&D

Builders, Inc., Curtis L. Carpenter, in an attempt to resolve and narrow the issues addressed in

Plaintiff's Motion to Preclude Defendant P&D Builder's Expert Witness on October 2, 2006.

                                **FIREMAN'S FUND INSURANCE COMPANY**
                                By its attorneys,

                                /s/ Erik Loftus
                                Erik Loftus, Esquire (BBO# 656315)
                                Law Offices of Stuart G. Blackburn
                                Two Concorde Way
                                P.O. Box 608
                                Windsor Locks, CT 06096
                                (860) 292-1116
                                (860) 292-1221 facsimile
                                eloftus@sbcglobal.net

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

## CERTIFICATE OF SERVICE

-------------------------------------------------------------X

FIREMAN'S FUND INSURANCE  COMPANY
as subrogee of JULIA PAVIA
77 San Marin Drive
Novado, California

CIVIL ACTION NO.
05-10827 (DPW)

Plaintiff,

vs

FALCO CONSTRUCTION CORP.;
P & D BUILDERS, INC.;
and
MICHAEL CARRESI d/b/a CARRESI
PLUMBING & HEATING

OCTOBER 3, 2006

Defendants.

-------------------------------------------------------------X

I hereby certify that on **OCTOBER 3, 2006** a copy of foregoing **[PLAINTIFF'S MOTION TO PRECLUDE DEFENDANT P&D BUILDERS, INC'S EXPERT WITNESS-SEBASTIAN J. BONGIORNO** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Erik Loftus
Erik Loftus, Esquire (BBO# 656315)
Law Offices of Stuart G. Blackburn
Two Concorde Way
P.O. Box 608
Windsor Locks, CT 06096
(860) 292-1116
(860) 292-1221 facsimile
eloftus@sbcglobal.net

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------X

FIREMAN'S FUND INSURANCE  COMPANY as
subrogee of JULIA PAVIA
77 San Marin Drive
Novado, California

       Plaintiff,

   vs

FALCO CONSTRUCTION CORP.;
P & D BUILDERS, INC.;
and
MICHAEL CARRESI d/b/a CARRESI
PLUMBING & HEATING

       Defendants.

-------------------------------------------------------------X

CIVIL ACTION NO.
 05-10827 (DPW)

EXHIBIT A to Plaintiff's Motion
To Preclude Defendant's Expert
Witness

OCTOBER 3, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THE FIREMAN'S FUND INSURANCE COMPANY as subrogee of JULIA PAVIA, Plaintiff, | ) ) ) ) ) | |
| v. FALCO CONSTRUCTION CORP., P&D BUILDERS, INC., and MICHAEL CARRESI d/b/a CARRESI PLUMBING & HEATING. Defendants, | ) ) ) ) ) ) ) | CIVIL ACTION NO.: 05-10827DPW |
| v. HEATMASTER, INC. Third-Party-Defendant. | ) ) ) ) | |

**DEFENDANT, P & D BUILDERS, INC.'S DISCLOSURE OF EXPERT WITNESS, S.J. BONGIORNO, CFI, PURSUANT TO FED.R.CIV.P. 26(a)(2)(B)**

1.   **Name and Address of Witness:**

Sebastian J. Bongiorno, CFI
Gallagher Mahoney & Associates
P.O. Box 645
Scituate, MA 02066-0645

2.   **Subject Matter on Which Expert is Expected to Testify:**

Mr. Bongiorno is expected to testify concerning his opinions as to the cause and origin of

the subject fire, as well as the identity of the party responsible for its growth and development,

and resulting property damage.

3.   **Substance of the Facts and Opinions to Which the Expert is Expected to Testify:**

Mr. Bongiorno is expected to testify that the subject fire had its origin in the wooden sub-

flooring beneath the fireplace hearth and appeared to be the result of conducted heat from the gas

fire log set down through the one layer of brick and layer of cement board.

999932v1

He is further expected to testify that the plaintiff's insured's extended delay in reporting the fire to the Newton Fire Department allowed for the fire to smolder for an extended period of time. According to Mr. Bongiorno, if the fire department had been notified when the odor of smoke was first noticed it is more than likely that the fire would have been contained to the immediate area of origin. Mr. Bongiorno is expected to testify that Ms. Pavia's failure to notify the fire department at the first indications of an order of smoke was a significant factor effecting the growth and development of the fire and subsequent damage to the house.

4.    **Summary of Grounds for Expert Opinion:**

Mr. Bongiorno's opinions are based on his review of the parties' document responses, expert disclosures, answers to interrogatories, photographs, as well has his education, training and experience. Mr. Bongiorno's opinions are further based on his review of records from an inspection of the Pavia residence conducted by the late Kevin Ord, CFI. Mr. Bongiorno's curriculum vitae and testimony history are attached hereto and incorporated herein by reference.

Respectfully submitted,
The Defendant/Third-Party plaintiff,
P&D Builders, Inc.,
By its attorneys,

/s/ *Curtis L.S. Carpenter*

William Joseph Flanagan, BBO #556598
Curtis L.S. Carpenter, BBO #657358
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
(617) 439-7500

2

999932v1

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 29, 2006.

/s/ *Curtis L.S. Carpenter*

_____

Name, BBO No. 657358



**GALLAGHER**
**MAHONEY &**
**ASSOCIATES**

PROFESSIONAL
INVESTIGATIONS

September 28, 2006

Mr. Curtis Carpenter, Esq.
Morrison Mahoney, LLP
250 Summer Street
Boston, MA 02110

| Re: | CARRIER: | Essex Insurance/Norfield Associates, Inc. |
|---|---|---|
| | CLAIM NUMBER: | 5-563-204-1 |
| | INSURED: | P. & D. Builders, Inc. |
| | CLAIMANT: | Julia Pavia |
| | LOSS LOCATION: | 104 Hammonds Wood Rd., Newton, MA |
| | DATE OF LOSS: | January 26, 2004 |
| | TYPE OF LOSS: | Fire |
| | OUR FILE NUMBER: | 04-0420 |

Dear Mr. Carpenter:

As directed we have supplemented the origin and cause report regarding the captioned fire loss. This supplement is provided based upon additional information obtained since our initial investigation into this claim.

Information obtained from Craig Insurance Services indicates that the homeowner Julia Pavia detected the odor of smoke several hours earlier than the approximate time of 3:20 AM when she notified the Newton Fire Department. Her failure to notify the fire department when she first noticed the odor of smoke was a significant factor regarding the development and spread of the fire and subsequent property damage.

In January 2004 the Newton Fire Department possessed thermal imaging devices. These devices were available on the three ladder trucks used by the fire department as well as in the deputy chiefs' vehicles. The devices could have been used at the time of an earlier response to locate the origin of this fire. This early detection would have limited the damage done by the smoldering fire.

POST OFFICE BOX 645 • SCITUATE, MA 02066-0645
*voice* 781.545.1121 • *fax* 781.544.3736 • *email* INFO@GMAINVESTIGATIONS.COM

**Origin and Cause**

The fire at 104 Hammonds Wood Road, Newton, Massachusetts on January 26, 2004 had its origin at the wooden sub flooring beneath the fireplace hearth and appears to be the result of conducted heat from the gas fire log set down through the one layer of brick and layer of cement board.

Information from the homeowner Julia Pavia regarding the events leading up to the discovery of the fire indicates that the fire smoldered for an extended period of time. If the fire department had been notified when the odor of smoke was first noticed it is more than likely that the fire would have been contained to the immediate area of origin. The failure to notify the fire department at the first indications of an odor of smoke was a significant factor effecting the growth and development of the fire and subsequent damage to the house.

**S.J. Bongiorno, CFI**

# PRESENTATION OF QUALIFICATIONS

## SEBASTIAN J. BONGIORNO CFI

**PO Box 1192**
**Lawrence MA  01842**
**Telephone 978-685-6917**
**Email  Bongi@SJBongi.com**

**EXPERIENCE:**

5/64-9/67- Gibson's Motor and Machine
7 Broadway Avenue
Lawrence, Massachusetts
Heavy equipment diesel mechanic: Performed preventive maintenance, component replacement and repair, engine overhaul and electrical systems maintenance.

9/67-5/72- United States Navy-Seabees
Mobile Construction Battalion 74
Heavy equipment diesel mechanic: Performed field maintenance and service on construction equipment.
Guantanamo Bay Naval Base
Public Works Division
Supervisor of light equipment shop performing preventive maintenance, component replacement and repair and electrical systems repair. Responsible for a fleet of 85 vehicles and a crew of 8

5/72-9/76- Lawrence Fire Department
65 Lowell Street
Lawrence, Massachusetts
Assistant Supervisor of Fire Apparatus: Perform preventive maintenance, component replacement and repair and electrical system repairs. Maintenance and repair of fire apparatus and all collateral fire-fighting and rescue equipment.

9/76- 12/04- Lawrence Fire Department
65 Lowell Street
Lawrence, Massachusetts
Fire Lieutenant

9/93-12/04 Assigned to the Lawrence Arson Task Force. Senior Fire Investigator responsible for fire origin and cause investigations, all follow up investigations and pursuing cases through the judicial system as needed.

9/94- To present- Fire origin and cause investigations and mechanical evaluations for insurance industry private investigators.

> Phoenix Investigations
> c/o Dan Cronin
> POB 3233
> Bourne, MA. 025632

> Gallagher, Mahoney & Associates
> c/o Paul Mahoney
> POB 645
> Scituate, MA  02066

11/98-Massachusetts Certified Fire Investigator

11/00-National Certified Fire Investigator
> International Association of Arson Investigators

11/04-MA Coalition –Juvenile Fire Setters Intervention Program
> "Jeff Ness Memorial Award"
> For work with Juvenile Fire Setters Intervention Program

2004 Greater Lawrence Exchange Club 'Firefighter of the Year':
> As lead investigator of Lawrence Arson Task Force for the arrest
> and Federal prosecution of an individual for setting a fire that
> resulted in two fatalities.

O&C Expert Testimony in Massachusetts Criminal & Civil Courts
> Expert Testimony in Vermont Civil Court

Car Fire Investigations [Basic] -Lecturer- Massachusetts Fire Academy

Car Fire Investigations & The Law–Lecturer-Middlesex Comm. College

Car Fire Investigations & The Law–Lecturer-MA Chapter IAAI

Car Fire Investigations & NFPA 921-Lecturer-
Massachusetts State Fire Marshal - Fire Investigation Unit

Advanced Car Fire Investigations- Lecturer-Massachusetts Fire Academy

Digital Photography & NFPA-921-Lecturer-Massachusetts Fire Academy

Car Fire Investigations–Lecturer-New England Association
> of Insurance Fraud Investigators

**EDUCATION:**    Franklin Institute of Technology -1965-67
Boston, Massachusetts
Automotive Technology

United States Navy -1967
Heavy Equipment Diesel School
Davisville, Rhode Island

North Shore Community College -1979
Beverly, Massachusetts
Associates Degree- Fire Science

Boston State College -1982
Boston, Massachusetts
Bachelor of Science Degree- Fire Science/ Public Administration

**PERSONAL:**    Sebastian J. Bongiorno
4 Glen Forest Lane
Methuen, Massachusetts
Born; Lawrence, Massachusetts
Date; October 10, 1947

Member:
International Association of Arson Investigators
International Association of Auto Theft Investigators
International Association of Fire Photographers
National Association of Fire Investigators

**REFERENCES:**    Furnished upon request.

# SEBASTIAN J BONGIORNO CFI
## Box 1192
### Lawrence Massachusetts
### 01842
## Summary of Expert Testimony

INCIDENT TYPE / DATE: Multi-Family Residential Fire:  October 1997

TYPE OF PROCEEDING: Criminal

PARTIES: Commonwealth of Massachusetts v. Sophie Rodriguez

DOCKET #:  Essex County 98-77CR1208

DATE / LOCATION OF TESTIMONY: Lawrence Superior Court  June 1998

TYPE OF TESTIMONY: Fire Origin and Cause

═══════════════════

INCIDENT TYPE / DATE: Hi-Rise Condominium Fire:  June 1999

TYPE OF PROCEEDING: Civil Deposition- August 2001
                    Civil Bench Trial- March-2001

PARTIES: Plantiff, Arbella Insurance Company for James Tolland  v. Paul and Debra Smith

DOCKET #: Norfolk County CA-00-1356

DATE / LOCATION OF TESTIMONY: August 2001
                              Offices of Haverty & Feeney, Plymouth, MA

                              March-2002
                              Dedham Superior Court

TYPE OF TESTIMONY: Fire Origin and Cause

═══════════════════

1

INCIDENT TYPE / DATE: Residential Fire: September 1999

TYPE OF PROCEEDING: Criminal

PARTIES: Commonwealth of Massachusetts v. Manuel Sanchez

DOCKET #: Essex County 00-77CR-0295

DATE / LOCATION OF TESTIMONY: February 2000 Lawrence Superior Court

TYPE OF TESTIMONY: Fire Origin and Cause

_____

INCIDENT TYPE / DATE: Multi-Family Residential Fire: July 2000

TYPE OF PROCEEDING: Criminal

PARTIES: Commonwealth of Massachusetts v.  Minor Juvenile

DOCKET #: Essex County DL00W0932

DATE / LOCATION OF TESTIMONY: July 2000 Lawrence Juvenile Court

TYPE OF TESTIMONY: Fire Origin and Cause

_____

INCIDENT TYPE / DATE: Multi-Family Residential Fire: Janurary 2001

TYPE OF PROCEEDING: Criminal Jury Trial- March 2002
                    Civil Deposition- February-2003

PARTIES: Criminal- Commonwealth of Massachusetts v. Minor Juvenile
          Civil- Plantiff Belkis Rueda v. parents of Minor Juvenile

DOCKET #: Criminal-Essex County DL01W0110
          Civil- Essex County ESCV-2002-356D

DATE / LOCATION OF TESTIMONY:
          Criminal-March 2002 Lawrence Juvenile Court
          Civil-February-2003- Offices of Copani & Keily, Methuen, MA

TYPE OF TESTIMONY: Fire Origin and Cause

INCIDENT TYPE / DATE: Mill Fire: May 2002

TYPE OF PROCEEDING: Civil Deposition

PARTIES: Plantiff Pawtuckett Mutual Insurance a/s/o I.C.T. Inc.
         Defendant Jaybird Maise Inc. & Atlantic Millwrights Inc.

DOCKET #: Essex County ESCV-03-02101-B

DATE / LOCATION OF TESTIMONY: April 2004-Offices of Clark,Hunt & Embry
                              Cambridge, MA

TYPE OF TESTIMONY: Fire Origin and Cause

---

INCIDENT TYPE / DATE: Residential Group Home- October 2002

TYPE OF PROCEEDING: Criminal

PARTIES: Commonwealth of Massachusetts v. Minor Juvenile

DOCKET #: DL-02-WJDL001578

DATE / LOCATION OF TESTIMONY: June 2003, Lawrence Juvenile Court

TYPE OF TESTIMONY: Fire Origin and Cause

---

INCIDENT TYPE / DATE: Multi-Family Residential Fire- June 2003

TYPE OF PROCEEDING: Criminal

PARTIES: Commonwealth of Massachusetts v. Minor Juvenile

DOCKET #: Essex County DL03W1051

DATE / LOCATION OF TESTIMONY: August 2003 Lawrence Juvenile Court

TYPE OF TESTIMONY: Fire Origin And Cause

---

3

INCIDENT TYPE / DATE: Multi-Family Residential Fire- June 2003

TYPE OF PROCEEDING: Criminal

PARTIES: Commonwealth of Massachusetts v. Minor Juvenile

DOCKET #: Essex County DL03W0955

DATE / LOCATION OF TESTIMONY: August 2003 Lawrence Juvenile Court

TYPE OF TESTIMONY: Fire Origin And Cause

---

INCIDENT TYPE / DATE: Multi-Family Residential Fire- June 2003

TYPE OF PROCEEDING: Criminal

PARTIES: Commonwealth of Massachusetts v. Minor Juvenile

DOCKET #: Essex County DL03W0958

DATE / LOCATION OF TESTIMONY: August 2003 Lawrence Juvenile Court

TYPE OF TESTIMONY: Fire Origin And Cause

---

INCIDENT TYPE / DATE: School Fire- February 2004

TYPE OF PROCEEDING: Criminal

PARTIES: Commonwealth of Massachusetts v. Minor Juvenile

DOCKET #: Essex County MH04W0092

DATE / LOCATION OF TESTIMONY: March 2004 Lawrence Juvenile Court

TYPE OF TESTIMONY: Fire Origin And Cause

---

INCIDENT TYPE / DATE: School Fire- February 2004

TYPE OF PROCEEDING: Criminal

PARTIES: Commonwealth of Massachusetts v. Minor Juvenile

DOCKET #: Essex County MH04W0091

DATE / LOCATION OF TESTIMONY: March 2004 Lawrence Juvenile Court

TYPE OF TESTIMONY: Fire Origin And Cause

========================================

INCIDENT TYPE / DATE: Vehicle Fire / Residential Fire: Janurary 2001

TYPE OF PROCEEDING: Civil Deposition
                    Jury Trail- Janurary 31, 2006

PARTIES: Plantiff: MacDonald
         Defendant: Dettman

DOCKET #: 623-11-03 Wncv

DATE / LOCATION OF TESTIMONY:
                    Deposition-July-2005-McCarthy Law Offices-Brattleboro VT
                    Jury Trail-Janurary 31, 2006-Superior Court-Montpelier, VT

TYPE OF TESTIMONY: Fire Origin and Cause- Vehicle & Structure

========================================

INCIDENT TYPE / DATE: Vehicle Fire: March 2001

TYPE OF PROCEEDING: Civil Deposition

PARTIES: Plantiff: Verizon Communications
         Defendant: Fleet Services

DOCKET #: Cumberland County [ME] Superior Court- CV-04-646

DATE / LOCATION OF TESTIMONY:
                    Deposition- February 9, 2006-Nixon-Peabody Law Offices
                    Providence, RI

TYPE OF TESTIMONY: Fire Origin and Cause- Vehicle Fire

========================================

5

INCIDENT TYPE / DATE: Fatal Residential Fire/April 3, 2003

TYPE OF PROCEEDING: Criminal

PARTIES: Plantiff: US
            Defendant: Harry Guzman

DOCKET #: Federal Court-Boston-CR-04-10186-JLT

DATE / LOCATION OF TESTIMONY:
            Daubert Hearing-June 7&8, 2006
            Federal Court Boston


TYPE OF TESTIMONY: Fire Origin and Cause

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

------------------------------------------------------------X

FIREMAN'S FUND INSURANCE  COMPANY as
subrogee of JULIA PAVIA
77 San Marin Drive
Novado, California

                        Plaintiff,

      vs

FALCO CONSTRUCTION CORP.;
P & D BUILDERS, INC.;
and
MICHAEL CARRESI d/b/a CARRESI
PLUMBING & HEATING

                        Defendants.

------------------------------------------------------------X

CIVIL ACTION NO.
05-10827 (DPW)

EXHIBIT B to Plaintiff's Motion
To Preclude Defendant's Expert
Witness

OCTOBER 3, 2006

Westlaw.

175 F.R.D. 497                                                                 Page 1

175 F.R.D. 497, 39 Fed.R.Serv.3d 1351

**(Cite as: 175 F.R.D. 497)**

**Motions, Pleadings and Filings**

United States District Court,
D. Maryland.
Lisa SULLIVAN
v.
GLOCK, INC.
**No. CIV. A. WMN-95-2652.**

Sept. 29, 1997.

Former police officer brought action against manufacturer of semiautomatic pistol, alleging that she sustained serious injuries as a result of defective design of carrying case for pistol. Manufacturer moved to exclude testimony of officer's expert witnesses. The District Court, Grimm, United States Magistrate Judge, held that to extent that source of facts which formed basis for treating physicians' opinions derived from information learned during actual treatment of officer, no comprehensive written report from physicians was required.

Motion to exclude testimony denied.

West Headnotes

**[1] Federal Civil Procedure** ☜1274
170Ak1274 Most Cited Cases
To extent that source of facts which form basis for treating physician's opinions derive from information learned during actual treatment of patient, as opposed to being subsequently supplied by attorney involved in litigating case involving condition or injury, no comprehensive written report signed by witness is required. Fed.Rules Civ.Proc.Rule 26(a)(2), 28 U.S.C.A.

**[2] Federal Civil Procedure** ☜1274
170Ak1274 Most Cited Cases

Party does not waive its entitlement to disclosure of report prepared by expert witness merely by filing interrogatories or deposing expert. Fed.Rules Civ.Proc.Rule 26(a)(2)(B), 28 U.S.C.A.

**[3] Federal Civil Procedure** ☜1278
170Ak1278 Most Cited Cases
If failure to comply with required disclosure involves material aspect of expert's testimony, and if opposing party can show prejudice in connection with lack of disclosure, then opinion of expert should be excluded, in whole or in part, at trial. Fed.Rules Civ.Proc.Rules 26(a)(2)(B), 37(c)(1), 28 U.S.C.A.

**[4] Federal Civil Procedure** ☜1278
170Ak1278 Most Cited Cases
Trial court has enormous discretion in deciding whether party's violation of expert report rules is justified or harmless, and result will be determined by facts peculiar to each. Fed.Rules Civ.Proc.Rule 26(a)(2), 28 U.S.C.A.

**[5] Federal Civil Procedure** ☜1274
170Ak1274 Most Cited Cases

**[5] Federal Civil Procedure** ☜1278
170Ak1278 Most Cited Cases

**[5] Federal Civil Procedure** ☜1532.1
170Ak1532.1 Most Cited Cases
It is incumbent upon counsel to make full and timely disclosures of information regarding their retained experts, supplement them promptly when required,
responsively answer interrogatories directed towards experts, and supplement these answers if warranted; failure to do so may well result in exclusion of testimony of expert at trial, in whole or in part. Fed.Rules Civ.Proc.Rules 26(a)(2), 37(c)(1), 28 U.S.C.A.

**[6] Federal Civil Procedure** ☜1278

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 497

175 F.R.D. 497, 39 Fed.R.Serv.3d 1351

**(Cite as: 175 F.R.D. 497)**

170Ak1278 Most Cited Cases
Counsel's failure to pursue interrogatories and/or depositions to discover expected opinion testimony of "hybrid" fact/expert witnesses is not a basis for excluding that testimony at trial. Fed.Rules Civ.Proc.Rule 26(a)(2), 28 U.S.C.A.

**[7] Federal Civil Procedure ⬡⟍1278**
170Ak1278 Most Cited Cases
In determining whether or not automatic exclusion provisions of rule governing discovery sanctions should be applied to exclude expert testimony, court should consider four factors in assessing whether there was substantial justification for failure to disclose or harmlessness to opposing party: importance of excluded testimony, explanation of party for its failure to comply with required disclosure, potential prejudice that would arise from allowing testimony, and availability of a continuance to cure such prejudice. Fed.Rules Civ.Proc.Rules 26(a)(2), 37(c)(1), 28 U.S.C.A.
***498** Marlon Steve Charles, Washington, DC, for plaintiff.

John P. Sweeney, Gregory L. Lockwood, Susan Durbin Kinter and Miles & Stockbridge, Baltimore, MD, and John F. Renzulli, Christopher P. Orlando and Renzulli, Gainey & Rutherford, New York City, for defendant.

*MEMORANDUM AND ORDER*

GRIMM, United States Magistrate Judge.

This case has been assigned to me for the resolution of discovery disputes pursuant to 28 U.S.C. § 636(c) (1993) and Local Rule 301 (D.Md.1997). The plaintiff, a former police officer, has sued Glock, Inc., the manufacturer of the Glock 9mm semiautomatic pistol. The plaintiff alleges that she sustained serious injuries as a result of the defective design of a carrying case for the Glock pistol which, it is claimed, caused the pistol to discharge while the plaintiff was attempting to put it in its carrying case following a training session.

Presently pending is the defendant's motion to exclude testimony of plaintiff's expert witnesses, the plaintiff's opposition and the defendant's reply. Paper Nos. 41, 42 and 43. [FN1] The essence of the defendant's motion is that the plaintiff failed to provide complete expert disclosures as required by Fed.R.Civ.P. 26(a)(2) with respect to all experts except Mr. Roane (hereinafter the "health care experts") and, therefore, pursuant to Fed.R.Civ.P. 37(c)(1), those experts should not be permitted to testify at trial, which counsel advises is presently scheduled for early 1998. For the reasons set forth below, the defendant's motion is denied, but the defendant will be permitted to pursue discovery of these experts, and to designate rebuttal experts.

> FN1. The defendant also has sought to exclude the trial testimony of another of the plaintiff's experts, Mr. Roane, as part of the relief requested in its motion for summary judgment. Paper No. 38. This issue will be addressed in a separate Order.

**BACKGROUND**
In its motion to exclude the plaintiff's expert testimony, the defendant concedes that the plaintiff disclosed the identity of her health care experts, but asserts that these disclosures were inadequate. The disclosure identified the following health care experts: Yomi Fakunle, M.D.; Lesley Wong, M.D.; Jerome F. Kowaleski, Ph.D., a psychologist; Lois Bethea-Thompson, a physical therapist; and Diane Doyle, an occupational therapist. During a telephone conference with counsel on September 17, 1997, counsel for the plaintiff stated that each of these health care experts provided services for, and treatment of, the plaintiff. According to plaintiff's counsel, none of the health care experts were retained for the purpose of providing testimony at trial.

The Rule 26(a)(2) disclosure statement filed by the plaintiff, [FN2] contains a very brief description of the role of each of the foregoing health care providers in connection with ***499** their treatment and/or evaluation of the plaintiff. Unquestionably, these descriptions fall far short of the detailed information required by Rule 26(a)(2)(B). As will be discussed more fully, however, each of the health

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 497

175 F.R.D. 497, 39 Fed.R.Serv.3d 1351

(Cite as: 175 F.R.D. 497)

care experts disclosed by the plaintiff falls into the category of expert witnesses commonly described as "hybrid witnesses," for whom no Fed.R.Civ.P. 26(a)(2)(B) disclosures are required. Accordingly, I will deny the defendant's motion to exclude the testimony of these witnesses at trial. However, because there continues to be substantial uncertainty regarding the nature of the disclosures required by Rule 26(a)(2) with respect to hybrid witnesses--as displayed by the practice of counsel in this case--I also decline to penalize the defendant in resolving the pending motion. I therefore will also order that the defendant be permitted to discover the opinions of the health care experts who are expected to offer testimony at trial, and if requested, to designate rebuttal experts.

> FN2. The disclosure statement is attached as Exhibit A to the defendant's motion. Paper No. 41.

## DISCUSSION

Since the adoption of the Federal Rules of Evidence in 1975, the use of expert witnesses in civil and criminal trials has exploded. One commentator has observed:

> In modern trials, the expert is as common as the lawyer. Case after case, civil or criminal, state or federal, turns on the testimony of one or more of many kinds of experts. Expert inflation is on the rise. The causes are many. The growth of complex litigation, the explosion of technology and science, the increasing creativity of advocates--all play a role. But the main reason is the liberality with which modern evidence doctrine embraces courtroom experts.

Faust F. Rossi, *Modern Evidence and the Expert Witness*, in *The Litigation Manual: A Primer for Trial Lawyers* 254 (2d ed.1989).

The Federal Rules of Civil Procedure regarding discovery of expert witness opinions have had to change to keep pace with the increasing use of expert testimony. Prior to the 1993 amendments to the Rules, there was no right to take the deposition of an expert retained to testify at trial, without leave of the court. [FN3] Expert opinions were to be discovered through interrogatories--a practice

which proved to be almost useless in terms of obtaining meaningful disclosure of opinions and supporting factual bases. Indeed, the commentary to the 1993 changes to Fed.R.Civ.P. 26(a) specifically noted this problem, stating "[t]he information disclosed under the former rule in answering interrogatories about the 'substance' of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness." Commentary to Fed.R.Civ.P. 26(a) (1993), 146 F.R.D. 401, 634 (1993).

> FN3. Prior to the 1993 amendments, Rule 26(b)(4) limited discovery of testifying experts to interrogatories, but provided that, upon motion, "the court may order further discovery by other means...." Fed.R.Civ.P. 26(b)(4)(A)(i) (superseded). In practice, this was one of the most ignored rules of civil procedure. Recognizing the hardship that strict adherence to the rule would impose upon efficient pretrial preparation, this Court accordingly adopted a Local Rule stating that it was "[t]he general practice in this District to permit experts designated by one party to be deposed by an opposing party." Local Rule 104.10 (D.Md.1989) (superseded).

In recognition of the need for lawyers to have an effective means of discovering expert testimony, the 1993 changes to the Rules of Civil Procedure adopted a carefully considered series of procedures designed to facilitate meaningful, and less expensive, discovery of expert opinions. The "expert disclosures" required by Fed.R.Civ.P. 26(a)(2) are the cornerstone of these changes. The Rule provides, relevantly:

(2) Disclosure of Expert Testimony.

(A) In addition to the disclosures required by paragraph (1), a party will disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

(B) Except as otherwise stipulated or directed by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 497                                                                                    Page 4

175 F.R.D. 497, 39 Fed.R.Serv.3d 1351

**(Cite as: 175 F.R.D. 497)**

the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as *500 an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.
Fed.R.Civ.P. 26(a)(2).

It is noteworthy that Rule 26(a)(2) creates two distinct types of disclosures: (1) disclosure of the identity of *any* witness who may provide opinion testimony at trial in accordance with Fed. R. Evid. 702, 703, and 705; and (2) the far more comprehensive written and signed report which Rule 26(a)(2)(B) requires for "a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony" (hereinafter, "retained experts").
This distinction, often overlooked in practice, is of critical importance. Rule 26(a)(2)(A) is colloquially said to apply to "hybrid" fact/expert witnesses, the most frequent example being a treating physician in a personal injury case. [FN4] As to these witnesses, the comprehensive disclosures of the written report set forth in Fed.R.Civ.P. 26(a)(2)(B) are not required. The commentary to Rule 26 provides in pertinent part:

> FN4. See Local Rule 104.10.b (D.Md.1997) (indicating that "hybrid fact/expert witnesses" include treating physicians).

The requirement of a written report in paragraph

[26(a) ](2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.
Commentary to Fed.R.Civ.P. 26(a) (1993), 146 F.R.D. 401, 635 (1993). *See also* Local Rule 104.10.b (D.Md.1997) (stating that Rule 26(a)(2)(B) disclosures "need not be provided as to hybrid fact/expert witnesses such as treating physicians," and that "an adverse party may obtain the opinions of such witnesses. through interrogatories, document production requests and depositions"). [FN5]

> FN5. Although the treating physician is the most frequent example of a hybrid witness, it is clear from a review of Fed.R.Evid. 702 that any witness with expertise in an area of scientific, technical or specialized knowledge which would be helpful to the fact finder would fit into this category as well. It is very common in modern litigation to find fact witnesses who also possess the requisite expertise required by Fed.R.Evid. 702 to permit them to give expert opinion testimony. While Rule 26(a)(2)(A) does not require disclosure of anything more than their identity, lawyers still need to discover their opinions in order to effectively prepare for trial.

[1] Although it is clear that a treating physician is the quintessential example of a hybrid witness for whom no Rule 26(a)(2)(B) disclosures are required, it is a mistake to focus solely on the status of the expert, instead of the nature of the testimony which will be offered at trial. A witness can be a hybrid witness as to certain opinions, but a retained expert as to others, and with regard to treating physicians, there is a debate over where the line should be drawn. *Compare Shapardon v. West Beach Estates,* 172 F.R.D. 415, 416-17 (D.Haw. 1997) ("[T]reating physicians commonly consider the cause of any medical condition presented in a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 497, 39 Fed.R.Serv.3d 1351

**(Cite as: 175 F.R.D. 497)**

patient, the diagnosis, the prognosis and the extent of disability, if any, caused by the condition or injury. Opinions as to these matters are encompassed in the ordinary care of a patient and do not subject the treating physician to the report requirement of Rule 26(a)(2)(B)."); *Lauria v. National R.R. Passenger Corp.,* No. Civ. A. 95-1561, 1997 WL 138906, at *2 (E.D.Pa. March 24, 1997) ("[A] court must inquire whether the treating physician acquired his opinion as to the cause of the plaintiff's injuries directly through his treatment of the plaintiff.... If *501 so, then even though the treating physician may be deposed, he is not required to file the written report required by Rule 26(a)(2)(B). In this situation, testimony as to whether the injuries for which the physician treated the patient are causally related to the accident are within the scope of the patient's care and treatment."); *Hall v. Sykes,* 164 F.R.D. 46, 48 (E.D.Va.1995) ("If a treating physician forms an opinion of the causation of an injury to a patient and the prognosis of the patient's condition during the treatment then such opinion may be expressed by the treating physician without the necessity of a report under Fed.R.Civ.P. 26(a)(2)(B).... However, if a physician, even though he may be a treating physician, is specially retained or employed to render a medical opinion based upon factors that were not learned in the course of the treatment of the patient, then such a doctor would be required to present an expert written report."); *Piper v. Harnischfeger Corp.,* 170 F.R.D. 173 (D.Nev.1997) (same); and *Garza v. Abbott Lab.,* No. 95 C 3560, 1996 WL 494266 (N.D.Ill. Aug. 27, 1996) (same) *with Thomas v. Consolidated Rail Corp.,* 169 F.R.D. 1, 2 (D.Mass.1996) ("Many courts, however, have recognized the unfairness of permitting a party to employ a physician who treated an injured party to provide testimony beyond simply the care of the plaintiff to classic expert opinion regarding causation and prognosis."); and *Brown v. Best Foods,* 169 F.R.D. 385, 388 (N.D.Ala.1996) ("To the extent the treating physician testifies only as to care and treatment of his/her patient, the physician is not considered a specially retained expert [for whom Rule 26(a)(2)(B) disclosures are required].").  In my opinion, the approach taken by the court in *Shapardon, supra,* is most helpful, and most

consistent with the stated purpose of Rule 26(a)(2)(A). To the extent that the source of the facts which form the basis for a treating physician's opinions derive from information learned during the actual treatment of the patient--as opposed to being subsequently supplied by an attorney involved in litigating a case involving the condition or injury--then no Rule 26(a)(2)(B) statement should be required.

The failure to appreciate the distinction between a hybrid witness and retained expert can be a trap for the unwary. In this case, for example, the plaintiff disclosed the identity of a number of experts who were also her treating health care providers, and hence, hybrid witnesses, but did not provide--and was not required to provide--the detailed disclosures mandated by Fed.R.Civ.P. 26(a)(2)(B). Not appreciating the distinction between hybrid witnesses and retained experts, defendant's counsel repeatedly demanded complete Rule 26(a)(2)(B) disclosures, when she was not entitled to receive them. [FN6] Apparently operating under the misconception that the failure to provide these more detailed responses would result in automatic exclusion under Rule 37(c)(1), discussed below, defendant's counsel did not depose the hybrid witnesses. Instead, after the expiration of the discovery cutoff, she filed the instant motion in limine in an effort to exclude the testimony of these witnesses at trial.

> FN6. From a review of the papers submitted in connection with this dispute it does not appear that counsel for the plaintiff was aware of the distinction between hybrid witnesses and retained experts either. His failure to provide more detailed information about his experts in response to counsel for the defendant's many demands appears to be more a function of inattention to her requests, rather than an understanding of the rules of procedure.

As noted above, however, the plaintiff was not required to disclose any more than the identity of the hybrid witnesses under Rule 26(a)(2)(A), which

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 497                                                                                    Page 6

175 F.R.D. 497, 39 Fed.R.Serv.3d 1351

**(Cite as: 175 F.R.D. 497)**

she did. Thus, the automatic exclusion provision of Rule 37(c)(1) is inapplicable. Under an overly rigid reading of the rules of procedure, which I decline to do, the trap for the defendant would be that it would now be required to go to trial without any knowledge of the plaintiff's hybrid witnesses' opinions, because the discovery deadline has passed, and, without leave of the Court, the defendant would be unable to depose them. [FN7] In addition to the confusion *502 regarding what disclosures are required for hybrid witnesses and retained experts, there is also confusion associated with other methods of discovering expert opinion testimony, as will next be seen.

> FN7. From the papers filed in connection with this dispute, I do not know whether counsel for the defendant propounded an interrogatory question to the plaintiff asking for the opinions and factual bases of all witnesses who would provide opinion testimony pursuant to Fed.R.Evid. 702, 703 and 705. This would be an independent method of requiring the plaintiff to disclose this information for hybrid witnesses, and the failure to answer such an interrogatory may be separate grounds to support a motion to exclude the opinion testimony of a hybrid witness. Accordingly, prudent counsel would be wise to include in their interrogatories two separate "expert" interrogatories. The first should solicit the opinions of hybrid witnesses. For example, "for each witness identified by you in connection with the disclosures required by Fed.R.Civ.P. 26(a)(2)(A), provide a complete statement of the opinions to be expressed and basis and reasons therefor." The second should request disclosure of the opinions of retained experts covered by Rule 26(a)(2)(B). For example, "for each witness which you have retained or specially employed to provide expert testimony in this case, or employed by you whose duties regularly involve giving expert testimony and who you expect to testify at trial, provide a complete

statement of the opinions to be expressed and the basis and reasons therefor."

[2] Discovery of expert opinion testimony may also be obtained by interrogatories under Rule 26(b)(4)(B), and by deposition under Rules 26(b)(4)(A) and 26(b)(4)(B). [FN8] Rule 26(e)(1), moreover, imposes a duty on a party to supplement disclosures required by Rule 26(a). Similarly, Rule 26(e)(2) states that a party is "under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect." Supplementation, however, is not required if the corrective information already has been made known to the other parties during the discovery process or in writing. Fed.R.Civ.P. 26(e). This scheme is often confusing as reasonable minds can disagree about whether supplementing information has been provided "during the discovery process," which includes document production, written discovery responses and deposition testimony. Significant "corrective" information relating to an expert's opinion could, for example, be buried within a mass of documents produced to, but overlooked by, the receiving attorney.

> FN8. A party does not waive its entitlement to Rule 26(a)(2)(B) disclosures merely by filing interrogatories or deposing an expert. *Brand v. Mazda Motor Inc.,* No. 95-4139-SAC, 1996 WL 707018, at *2 (D.Kan. Nov. 18, 1996); *St. Paul Fire & Marine Insurance Co. v. Heath Fielding Insurance Broking, Ltd.,* No. 91 CIV. 0748, 1996 WL 19028, at *12 (S.D.N.Y. Jan. 17, 1996). Indeed, the deposition of an expert for whom a report is required by Rule 26(a)(2)(B) may not be taken until after those disclosures have been made. Fed.R.Civ.P. 26(b)(4)(A).

Another reason for potential confusion regarding the sufficiency of disclosure of expert opinion testimony is that Rule 26(e)(1) requires that, with respect to the retained expert, there is a duty to supplement the expert's opinion if there is a material

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 497

175 F.R.D. 497, 39 Fed.R.Serv.3d 1351

(Cite as: 175 F.R.D. 497)

change in the opinion. This obligation extends to both the report required by Rule 26(a)(2)(B), as well as the expert's deposition testimony. This supplementation must occur not later than the date of the pretrial disclosures required by Rule 26(a)(3). [FN9] Part of the potential confusion here stems from the fact that the supplementation of deposition testimony is not required for hybrid witnesses, for whom no Rule 26(a)(2)(B) disclosures are required. Once again, the failure to appreciate the distinction between hybrid witnesses and retained experts can either lead to sanctionable violations of the rules of civil procedure, or a failure to obtain sufficient discovery of the opinions of hybrid witnesses through other discovery devices.

> FN9. Rule 26(a)(3) requires that pretrial disclosures be made not later than 30 days before trial, unless otherwise required by the court. Local Rule 106.4, which governs pretrial orders, provides that disclosure of the information required by the pretrial order satisfies the requirements of Rule 26(a)(3). Thus, in this jurisdiction, if supplementation of an expert's deposition testimony is required by Rule 26(e)(1), it must be done not later than the time designated in the scheduling order for filing the joint pretrial order.

Another issue which frequently arises in connection with discovery of expert opinions is the sufficiency of the disclosures required by Rule 26(a)(2)(B). *See, e.g., 1st Source Bank v. First Resource Federal Credit Union*, 167 F.R.D. 61, 66-67 (N.D.Ind.1996) (noting that "courts and counsel are still learning the specificity required of expert reports under Rule 26(a)(2)(B)," and that "no *503 mechanism exists for a disclosing party to test the sufficiency of its disclosure," prior to the opposing party filing of a motion in limine or objecting at trial); *see also Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J.1996) (noting that "[t]he test of a report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced"). The Rule itself is quite detailed, and, when coupled with Rule 37(a)(3), [FN10] would

seem to require exact compliance in all particulars with the disclosures required by Rule 26(a)(2)(B), even though this is often very difficult to do. Moreover, a literal reading of Rules 37(a)(3) and 37(c)(1) would result in the application of the automatic exclusion of an expert's trial testimony if there was not complete compliance with the requirements of Rule 26(a)(2)(B), unless the court finds that there was substantial justification for the failure to make complete disclosure or that the failure to disclose is harmless. *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir.1996).

> FN10. "[A]n *evasive or incomplete disclosure*, answer, or response is to be treated as a *failure* to disclose, answer or respond." Fed.R.Civ.P. 37(a)(3) (emphasis added).

[3] Thus, given the severity of the automatic exclusion sanction of Rule 37(c)(1), prudence dictates that counsel be as complete and thorough as possible in making and supplementing Rule 26(a)(2)(B) disclosures. *Accord 1st Source Bank*, 167 F.R.D. at 67 (suggesting that until Rule 26(a)(2)(b) is modified to include a safe harbor provision or a meet and confer provision as a prerequisite to exclusion for an inadequate disclosure, "counsel would seem well advised to err on the side of overinclusiveness"). As a rule of thumb, if the failure to comply with the required disclosure involves a material aspect of the expert's testimony, [FN11] and if the opposing party can show prejudice in connection with the lack of disclosure, then the opinion of the expert should be excluded, in whole or in part, at trial.

> FN11. When one understands the purpose of the Rule 26(a)(2)(B) disclosures, it is easier to appreciate why complete disclosures are required. The purpose of these disclosures is to provide "information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective *cross examination* and perhaps arrange for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 497

Page 8

175 F.R.D. 497, 39 Fed.R.Serv.3d 1351

**(Cite as: 175 F.R.D. 497)**

expert testimony from other witnesses." Commentary to Rule 26(a), 146 F.R.D. 401, 633 (1993) (emphasis added). Cross examination of an expert generally involves three components. During the court's preliminary assessment of whether the expert will be permitted to offer opinion testimony, pursuant to Fed.R.Evid. 104(a), the focus is whether the expert meets the requirements of evidence rule 702 to give such testimony. If so qualified, then, pursuant to Fed.R.Evid. 611(b), the focus shifts to the opinions expressed and the support therefor, as well as matters affecting the credibility of the expert. When one keeps these three functions of cross examination of experts in mind it is easier to appreciate why all of the information required by the Rule 26(a)(2)(B) disclosure is important. All too often lawyers focus almost exclusively on disclosing the expert's opinions, the supporting facts, data, and bases, and neglect their additional obligation to disclose the witness's qualifications, publications, compensation, and listing of prior testimony. This information, however, bears directly on whether the expert is qualified under Fed.R.Evid. 702, and commonly provides a factual basis to attack the credibility of the expert. Thus, a Rule 26(a)(2)(B) disclosure which does not completely address each of these elements may be lacking in a material respect.

Pursuant to Fed.R.Civ.P. 37(a)(2), a party who is not provided a Rule 26(a)(2)(B) disclosure, or receives one which he or she thinks is incomplete, may file a "motion to compel disclosure and for appropriate sanctions." [FN12] When deciding whether or not to file such a motion, however, a party must make an important tactical decision, as the facts in this case illustrate. Central to this decision is the automatic exclusion provision of Fed.R.Civ.P. 37(c)(1), which provides "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e) shall

not, *unless such failure is harmless,* be permitted to use as evidence at a trial, at a hearing or on a motion any witness or information not so disclosed." Rule 37(c)(1) is "a self executing sanction for failure to make a disclosure required by Rule 26(a), without further need for a motion under ...    *504    [37](a)(2)(A)."    Commentary    to Fed.R.Civ.P. 37, 146 F.R.D. 401, 691 (1993). The commentary further provides that "[p]ursuant to new subdivision [37](a)(2)(A), a party dissatisfied with the disclosure made by an opposing party *may* under this rule move for an order to compel disclosure," but that "[u]nder revised paragraph [37](3), evasive or incomplete disclosures and responses to interrogatories and production requests are treated as *failures* to disclose or respond." *Id.* at 690.

> FN12. Of course, counsel must first make a good faith attempt to confer with opposing counsel to obtain the disclosures before filing a motion to compel. Fed.R.Civ.P. 37(a)(2)(A); Local Rule 104.7 (D.Md.1997).

A party who receives incomplete or evasive Rule 26(a)(2) disclosures consequently faces a dilemma of sorts. Because the failure to completely and nonevasively respond operates as a refusal to answer, the "self-executing" exclusion of the expert's opinion is mandated, without further motion by the party, unless the court determines that the defective disclosure was substantially justified or harmless. Attorneys who wish to exclude the expert's testimony at trial, then, may be disinclined to file the motion to compel, because, if granted, the party which supplied the defective disclosures may be given another opportunity to get them right, and the expert will then be permitted to testify at trial. Furthermore, as a practical matter, filing a motion to compel can have the effect of educating an opponent as to what corrective measures must be taken in order to secure admission at trial of some of the potentially most damaging evidence which can be offered. On the other side of the coin, if the attorney does not file a motion to compel, he or she does so at the risk of the judge permitting the expert to testify, finding that the failure to properly provide

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 497

Page 9

175 F.R.D. 497, 39 Fed.R.Serv.3d 1351

(Cite as: 175 F.R.D. 497)

the Rule 26(a)(2) disclosures was substantially justified or harmless. *See, e.g., Marek v. Moore,* 171 F.R.D. 298, 299-300 (D.Kan.1997) (finding that party was not prejudiced by expert's failure to sign Rule 26(a)(2)(B) report). The stakes are high, for if the expert's opinion is allowed, the result is one of the worst imaginable--an expert testifying as to opinions about which opposing counsel has no notice or knowledge. The conundrum, therefore, is whether to file a motion to compel and obtain the information prior to trial, or, alternately, not file the motion to compel and hope that the court will exclude the testimony under Rule 37(c)(1) at trial. The answer to this dilemma often depends, to borrow from Inspector "Dirty Harry" Callahan, on whether or not counsel feels lucky. [FN13]

> FN13. *See* Inspector "Dirty Harry" Callahan, *Dirty Harry* (Warner Bros. Co./ Malpaso Co.1971) "There's just one question you've got to ask yourself--'Do I feel lucky?' ".

When counsel foregoes filing a motion to compel, anticipating that the trial judge will exclude the expert testimony on the basis of inadequate 26(a)(2) disclosures, and files a motion in limine to block the testimony at trial, the court must decide whether to impose what has traditionally been considered a severe sanction, appropriate only for willful and substantial abuse of the discovery process. *See McNerney v. Archer Daniels Midland Co.,* 164 F.R.D. 584, 586 (W.D.N.Y.1995) (noting that "[p]recluding testimony from an expert under [Rule 37(c)(1) ] is a drastic remedy and should only be applied in cases where the party's conduct represents flagrant bad faith and callous disregard of the federal rules"); *see also Reed v. Binder,* 165 F.R.D. 424, 431 (D.N.J.1996) (finding that barring expert's testimony as sanction for inadequate Rule 26(a)(2)(B) disclosure was unduly harsh where expert testimony will dominate the proceedings); *Itar-Tass Russian News Agency v. Russian Kurier, Inc.,* No. 95 CIV. 2144, 1996 WL 337289, at *2 (S.D.N.Y. June 18, 1996) (same). This decision is commonly made at trial or on the eve of trial, when there is little opportunity for appropriate briefing and deliberation. Often the court is faced with

conflicting representations and a mixture of information with respect to the status of discovery of the opinions and bases of the expert which is the subject of the motion in limine. An incomplete Rule 26(a)(2)(B) disclosure may have been made providing some, but not all, of the required information. Counsel opposing exclusion may argue that the incomplete or untimely disclosure was harmless as other discovery provided the requisite 26(a)(2)(B) information. Conversely, the party challenging the testimony may not have deposed the proposed expert, arguing that it relied upon the court enforcing the automatic exclusion provisions of Rule 37(c)(1).

*505 If the court determines that substantial justification exists for the incomplete expert disclosures, or that the opposing party will not be prejudiced by allowing the expert to testify as to hitherto undisclosed opinions, then it is difficult to not also rule that the party opposing the expert will be permitted to depose the expert, so as not to be unfairly surprised. This is usually the case because, as already noted, a party is not required to file a motion to compel complete disclosures under Rule 37(a)(2), [FN14] and is well within its rights to rely on the automatic exclusion provision contained in Rule 37(c)(1). If the court allows the deposition, however, it tacitly condones last minute discovery and undermines compliance with the rules of procedure. Moreover, when the court determines that a challenged expert may testify, it may then have to allow the challenging party to counter-designate a rebuttal expert, also immediately before trial, who must also be deposed. This undercuts the very purpose of the pretrial scheduling order--including the important goal of setting a specific and limited period for discovery--and rewards dilatory practices by the party which failed to make proper Rule 26(a)(2) disclosures.

> FN14. That rule states, relevantly, "[i]f a party fails to make a disclosure required by Rule 26(a), any other party *may* move to compel disclosure and for appropriate sanctions" (emphasis added).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 497                                                                                        Page 10

175 F.R.D. 497, 39 Fed.R.Serv.3d 1351

**(Cite as: 175 F.R.D. 497)**

Contrastingly, if the court decides to grant the motion in limine and exclude the challenged expert's testimony as to undisclosed opinions, it may seriously weaken the case of the party sponsoring the witness under circumstances where the opposing party had actual knowledge before the discovery cutoff that the expert would be offered at trial, yet received incomplete disclosures about the full nature of the opinions. It is tempting, under such circumstances, to wonder why the opposing party didn't file a motion to compel adequate disclosure under Rule 37(a)(2)(a), or simply take the deposition of the expert, even though that party was well within its rights not to do so, and to elect to take the position that Rule 37(c)(1) bars the testimony at trial.

[4] In attempting to decide whether or not the court can, in the exercise of its discretion, allow the challenged expert to testify at trial despite incomplete disclosures under Rule 26(a)(2), the court may look for guidance to the many reported decisions on this issue. However, when it does so, it will quickly discover that, as at "Alice's Restaurant," one can find what one wants. [FN15] *See, e.g., Metal Processing Co., Inc. v. Amoco Oil Co.,* 173 F.R.D. 244, 248 (E.D.Wis.1997) (refusing to exclude experts disclosed 20 days before trial, where court extends discovery deadline to permit party to depose experts who did not file timely reports); *Hester v. CSX Transportation, Inc.,* 61 F.3d 382, 388 n. 11 (5th Cir.1995) (trial court's decision refusing to exclude expert's rebuttal testimony was not an abuse of discretion even though opinion was not disclosed until day of trial where court finds no intent to withhold opinion in effort to obtain unfair advantage); *Starforth v. Western Resources, Inc.,* 96-2049-EEO, 1996 WL 677084 (D.Kan. Oct. 29, 1996) (refusing to strike expert for missing Rule 26(a)(2)(B) disclosure deadline where several months remained before trial); *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.,* 79 F.3d 182 (1st Cir.1996) (exclusion of expert testimony was not an abuse of discretion where experts' identities were disclosed three days before trial); *Fund Commission Service, II, Inc. v. Westpac Banking Co.,* No. 93 Civ. 8298, 1996 WL 469660, at *4

(S.D.N.Y. Aug. 16, 1996) (excluding party from using "any expert evidence at any stage in [the case]" where the party's "dilatory tactics have flouted the [Rule 26(a) ] Advisory Committee's policy of promoting full pretrial disclosure of expert information."). The net result of the analysis of these cases is that the trial court has enormous discretion in deciding whether a party's violation of the expert report rules is justified or harmless, and the result will be determined by the facts peculiar to each **\*506** case. *Metal Processing Co., Inc.,* 173 F.R.D. at 248. It is possible, however, to identify rules of reason which should be applied in analyzing this issue.

> FN15. See Arlo Guthrie, "Alice's Restaurant" (Reprise Records, 1967) ("You can get anything you want at Alice's Restaurant."). To date, however, neither the Fourth Circuit nor this Court appears to have interpreted in a published opinion the appropriateness of excluding expert testimony for the failure to comply with Rule 26(a)(2).

The first rule of reason is that the entire structure of the rules of procedure governing pretrial preparation, expert disclosures under Rule 26(a)(2) and discovery in general, underscore the need for a fixed period of discovery which ends at a date certain well before trial. Thus, last minute discovery should be strongly discouraged, absent truly exigent circumstances.

[5] Second, there is an important interrelationship between the expert disclosures required by Rule 26(a)(2) and the other forms of discovery which must be recognized by counsel, who are obligated to comply with all of the requirements for each component, or risk the adverse consequences of failing to do so. Therefore, it is incumbent upon counsel to make full and timely disclosures of information regarding their retained experts, supplement them promptly when required, [FN16] responsively answer interrogatories directed towards experts, and supplement these answers if warranted. Failure to do so may well result in the exclusion of the testimony of the expert at trial, in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 497                                                                     Page 11

175 F.R.D. 497, 39 Fed.R.Serv.3d 1351

(Cite as: 175 F.R.D. 497)

whole or in part. The days when counsel may "hide the ball" regarding expert disclosure, and intentionally provide a little, but by no means complete, information about the expected expert testimony are over, and those who continue to do this should not be rewarded for doing so. Moreover, it is no longer acceptable to wait until the last minute to retain and prepare experts. Counsel must be prepared to provide full and meaningful disclosure and discovery at the times required by the rules of procedure and the pretrial scheduling order.

> FN16. To avoid disputes about whether Rule 26(a)(2) disclosures were supplemented as required, this should be done in a writing which clearly reflects that the disclosures are being supplemented.

[6] Third, counsel must be familiar with the distinction between hybrid witnesses and expert witnesses, and the significance of this difference with respect to the required disclosures of Rule 26(a)(2). The written report required by Rule 26(a)(2)(B) is inapplicable to hybrid witnesses, and counsel must be prepared to obtain information about the opinions and bases of their testimony by interrogatories and/or depositions. The failure to pursue these alternative means of discovering the expected opinion testimony of hybrid witnesses is not a basis for excluding that testimony at trial.

Fourth, when faced with a situation where no required expert disclosures have been made, or materially incomplete disclosures have been made, counsel must make a tactical decision. If the most important goal is to avoid surprise at trial or last minute discovery about expert testimony on the eve of trial, then counsel should consider filing a motion to compel adequate disclosures or in the alternative to exclude expert testimony as soon as possible following the discovery cutoff, so that if the court declines to exclude the expert's testimony, the opinions of that expert may be discovered, and a rebuttal expert engaged as far as possible ahead of trial. Alternatively, if the most important goal of the attorney is to preclude the expert from testifying at trial by evoking the automatic exclusion

provisions of Rule 37(c)(1), he or she should remember that this course is not risk free, and that the exclusion of evidence is a severe sanction which the court may be reluctant to impose despite Rule 37(c)(1). At least one court, for example, has recently refused to strike an expert's testimony for failing to comply with Rule 26(a)(2)(B) disclosures where the party moving for exclusion waited until the day before the discovery cut-off to challenge the adequacy of the report. *See Harvey v. District of Columbia,* 949 F.Supp. 874, 877 (D.D.C.1996) (noting that had the moving party "promptly communicated with the plaintiff, they could have met and conferred about the report and still would have had time to file a motion to compel production of a supplemental report.").

[7] Fifth, in determining whether or not the automatic exclusion provisions of Rule 37(c)(1) should be applied to exclude expert testimony, the court should consider four factors in assessing whether there was substantial justification for the failure to disclose or harmlessness to the opposing party: (1) *507 the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *Trilogy Communications, Inc. v. Times Fiber Communications, Inc.,* 109 F.3d 739, 744 (Fed.Cir.1997). With respect to the first factor, the court should evaluate whether the expert whose testimony would be excluded is central to the sponsoring party's case, or merely one of several experts who will testify to the same point. If exclusion of the testimony would be fatal to the sponsoring party's case, there is authority which suggests that it would be abuse of discretion to exclude the evidence. *Orjias v. Stevenson,* 31 F.3d 995, 1005 (10th Cir.1994) ("Notwithstanding Rule 37(c), the district court may be found to have abused its discretion if the exclusion of testimony results in fundamental unfairness in the trial of the case"); *Newman v. GHS Osteopathic Inc.,* 60 F.3d 153, 157 (3rd Cir.1995) (same).

With respect to the second factor, the court should

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 497

Page 12

175 F.R.D. 497, 39 Fed.R.Serv.3d 1351

**(Cite as: 175 F.R.D. 497)**

take into consideration the reason for the failure to make the disclosure. The court may consider, for example, the experience of counsel, and whether the failure to provide appropriate disclosures was willful or in bad faith as opposed to inadvertent or the result of inexperience. The court might consider whether any of the confusing circumstances discussed above were involved; whether opposing counsel wrote to request the required disclosure or protest the adequacy of the disclosure given; whether the failure was total as opposed to an incomplete disclosure or failure to timely supplement; and whether the information required by the disclosure was provided to opposing counsel by some other discovery method. In this regard, at least one court has recently also taken into consideration the fact that Rule 26(a)(2) disclosures are relatively new. *See Reed v. Binder,* 165 F.R.D. 424, 431 (D.N.J.1996) (declining to bar expert's testimony as sanction for inadequate Rule 26(b)(2)(B) disclosure in part because voluntary disclosure has not been the rule, and "the court perceives that attorneys practicing before this court have not become completely accustomed to the substantial changes in practice caused by the 1993 amendments to the rules"). In any event, when making its determination, the court should not overlook the fact that Rule 37(c)(1) requires that the reason for nondisclosure constitute *substantial* justification. *See Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 678-82 (D.Kan.1995) ("Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact."). *See, e.g., Salgado v. General Motors Co.,* No. 93 C 1427, 1996 WL 535333, at *2 (N.D.Ill. Sept. 19, 1996) (finding that experts' busy trial and travel schedules did not provide substantial justification for party's failure to comply with Rule 26(a)(2)(B)).

The third factor requires the court to consider the potential prejudice to the opposing party if the expert is allowed to testify. Perhaps the most important consideration in this regard is the amount of time remaining before trial. If the issue surfaces

months before trial, the court has great latitude to require the disclosure, permit the opposing party to take additional discovery and designate rebuttal experts, and to balance the scales by imposing a lesser sanction, such as awarding costs. *See McNerney v. Archer Daniels Midland Co.,* 164 F.R.D. 584, 586 (W.D.N.Y.1995) ("Now that plaintiff has submitted most of the components of the required report, any prejudice to defendant can be remedied by granting leave to defendant to depose the expert outside the discovery period [and costs] associated with obtaining compliance with that rule."). Where, however, the issue surfaces on the eve of trial, or worse yet, during the trial, the court's options are far more restricted. In this regard, it must be acknowledged that injecting expert discovery into the final stages of pretrial preparation, or during trial itself, is extremely disruptive as well as expensive. Whether the court is willing to allow this to happen may well be influenced by whether the dispute centers around a complete failure to provide disclosure of the identity or opinions of an expert, as opposed to a claim that the *508 disclosures were incomplete, or that disclosures which were once complete were not supplemented to cover an additional opinion the expert is now being asked to give. Another factor which should be considered is whether the proposed expert testimony will be the subject of a *Daubert* challenge. [FN17] *See Reed,* 165 F.R.D. at 429 n. 9 (noting that "[t]he disclosure requirements of the Rules are also particularly helpful to the court in making rulings limiting or restricting expert testimony pursuant to Evidence Rules 104(a) and 702 and *Daubert* "). If so, then the court will have to consider the disruptive impact which this may have on the trial, because it may have to conduct evidentiary hearings outside the presence of the jury pursuant to Fed.R.Evid. 104(a) to determine whether the proposed expert testimony may be presented to the jury.

FN17. *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

The final factor the court should consider is whether a continuance may be granted to cure the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 497

175 F.R.D. 497, 39 Fed.R.Serv.3d 1351

**(Cite as: 175 F.R.D. 497)**

effects of prejudice caused by a failure to disclose, or a late disclosure. Needless to say, if the issue arises months before a scheduled trial date, this remedy is far more palatable than if it arises on the eve of trial. Courts should be mindful that granting a continuance just before a scheduled trial inconveniences not only the attorneys and parties, but also non-party witnesses. Additionally, a court must be careful not to reward the party who failed to make proper disclosures by granting a continuance, a practice which invites abuse.

**CONCLUSION**

In light of the above discussion, it is apparent that, to the extent that the health care experts identified by the plaintiff in her Rule 26(a)(2)(A) disclosures are intended to testify at trial regarding their treatment of the plaintiff, any opinions regarding the existence of her medical condition, its causation, her treatment and prognosis, then they are hybrid witnesses and the plaintiff was not obliged to provide the defendant with the comprehensive disclosures required under Rule 26(a)(2)(B). Accordingly, the disclosure of their identities complies with the federal rules. For this reason, the defendant's motion is DENIED. However, to the extent that the plaintiff intends for these witnesses to offer opinion testimony based on facts not obtained from their actual treatment of the plaintiff, they may not do so unless complete Rule 26(a)(2)(B) disclosures have been made. Because trial is some months away, there remains time to permit the reopening of discovery for the limited purpose of permitting the defendant to depose the plaintiff's health care experts. To insure that this is accomplished effectively, the following schedule will apply: Within 30 days of this Order, the defendant shall take the deposition of the plaintiff's health care experts. Within 21 days thereafter, the defendant shall designate any rebuttal experts. Within 30 days thereafter, the plaintiff may take the deposition of such rebuttal experts.

SO ORDERED.

175 F.R.D. 497, 39 Fed.R.Serv.3d 1351

**Motions, Pleadings and Filings (Back to top)**

• 1:95cv02652 (Docket) (Sep. 08, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

-----------------------------------------------------------X

FIREMAN'S FUND INSURANCE  COMPANY as
subrogee of JULIA PAVIA
77 San Marin Drive
Novado, California

                    Plaintiff,

    vs

FALCO CONSTRUCTION CORP.;
P & D BUILDERS, INC.;
and
MICHAEL CARRESI d/b/a CARRESI
PLUMBING & HEATING

                    Defendants.

-----------------------------------------------------------X

CIVIL ACTION NO.
05-10827 (DPW)

EXHIBIT C to Plaintiff's Motion
To Preclude Defendant's Expert
Witness

OCTOBER 3, 2006

Westlaw.

Not Reported in F.Supp.2d                                         Page 1

Not Reported in F.Supp.2d, 1999 WL 988799 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
Edwin R. BAKER, individually, and as father and
next of friend of Howard Ross Baker, a minor,
Plaintiffs,
v.
INDIAN PRAIRIE COMMUNITY UNIT,
SCHOOL DISTRICT NO. 204, et al., Defendants.
No. 96 C 3927.

Oct. 27, 1999.

*MEMORANDUM OPINION AND ORDER*

NOLAN, Magistrate J.

### I. INTRODUCTION

**\*1** This case arises from injuries Howard Ross
Baker sustained to his right hip and femur when he
was twelve years old and involved in a sledding
accident at May Watts School, which is located in
Naperville, Illinois and is part of Indian Prairie
Community Unit School District No. 204. Howard
Ross Baker, and his father, Edwin Baker, now
allege negligence and wilful and wanton conduct
against Indian Prairie Community Unit School
District No. 204 and numerous other defendants and
seek to recover damages and medical expenses
attributable to minor Baker's injuries. Defendants
maintain that they owed no duty to minor Baker
because the dangers associated with his sled run
were "open and obvious." All Defendants have
moved summary judgment on the issue of whether
the conditions encountered by minor Baker were "
open and obvious."

After the Bakers responded to Defendants' motions
for summary judgment, Defendants ServiceMaster
Management Services Limited Partnership and the

ServiceMaster Company ("ServiceMaster") and
Peter Vlamis moved to strike the affidavits of the
Bakers' experts and of minor Baker. Defendants
Indian Prairie Community Unit School District No.
204, Naperville Park District, W.E. Mundy
Landscaping & Garden Center, Inc., Intech
Consultants, Inc., Naperville Excavating, Inc., L.J.
Dodd Construction, Inc., and Phillips Swager
Associates, Inc. join ServiceMaster and Vlamis'
Motion to Strike. The Court stayed the filing of
Defendants' reply briefs in support of summary
judgment pending a ruling on the current Motion to
Strike. The Motion to Strike is now ripe for
determination. For the reasons set forth below,
ServiceMaster and Vlamis' Motion to Strike (# 222)
is GRANTED IN PART and DENIED IN PART.

### II. DISCUSSION

ServiceMaster and Vlamis request that the Court
strike the affidavits of the Bakers' experts, Harold
Wakeley and Eugene Holland, because, among
other reasons, certain of Wakeley's and Holland's
opinions are new and rendered after the expert
disclosure deadline. The Court agrees and will
address the timeliness of the expert opinions first
and then the remaining arguments related to each
affidavit in turn.

#### A. *Timeliness of Expert Witness Disclosures*

ServiceMaster and Vlamis contend that numerous
opinions and data contained in Wakeley's and
Holland's affidavits are untimely and should be
stricken. Rule 26(a)(2)(B) requires expert witnesses
to prepare a written report containing a complete
statement of all opinions to be expressed, the basis
and reasons therefore, and the data or other
information considered by the expert in forming the
opinions as well as a list of exhibits to be used, the
expert's qualifications, the expert's compensation,
and a list of other cases in which the expert testified

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 1999 WL 988799 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

in the last four years. A party's failure to comply with Rule 26(a) results in an "automatic and mandatory" exclusion of expert testimony "unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless." *Finley v. Marathon Oil Co.,* 75 F.3d 1225, 1230 (7th Cir.1996); Fed.R.Civ.P. 37(c)(1). A district court's decision to exclude evidence under Rule 37 is reviewed for abuse of discretion. *Doe, By and Through G.S. v. Johnson,* 52 F.2d 1448, 1446 (7th Cir.1995). The Bakers have not shown that their failure to timely disclose all of Wakeley's and Holland's opinions was either justified or harmless, and the arguments raised by the Bakers in response to the timeliness issue are without merit.

**\*2** The Bakers first claim, without any citation to authority, that it is "patently unfair and prejudicial to the plaintiff to prevent him from consulting with his experts and obtaining from them updated, modified or even new opinions and data in response to Motions for Summary Judgment filed after the expert disclosure date." The Bakers' Response, pp. 4-5. The expert disclosure deadlines do not prohibit the Bakers from thereafter consulting with their experts but do establish firm dates for disclosure of experts and expert opinions. The Bakers' assertion that expert disclosure deadlines do not prevent them from later offering new expert opinions is frivolous. Deadlines play an important role in the Court's ability to manage and control its docket, and the Court has the ability to establish and enforce its deadlines. *Parker v. Freightliner Corp.,* 940 F.2d 1019, 1024-1025 (7th Cir.1991) (holding courts have the power to establish and enforce deadlines concerning expert testimony and are not required to fire a warning shot prior to imposing sanctions).

The Bakers also maintain that the affidavits of Wakeley and Holland merely supplement their prior reports. Although Rule 26(e) provides that a party has a duty to "supplement or correct" its prior disclosures if it learns that the prior information "is incomplete or incorrect," the statements at issue are new conclusions which do not merely correct or complete prior opinions of Wakeley or Holland. For example, Wakeley's report contained one opinion: minor Baker demonstrated a level of hazard perception and risk awareness entirely consistent

with his age and level of development. In his affidavit, Wakeley concludes not only that Baker acted reasonably and rationally for his age but also that the dangers associated with sledding down the hill and over the snow pile were not obvious to a twelve year old boy and that the risk involved is not similar to the risk involved in a fall. Wakeley's opinions concerning the obviousness of the risk and whether the risk encountered by minor Baker were similar to a fall are new and offered for the first time after Defendants' summary judgment arguments on the exact same issues.

Finally, the Bakers contend that Defendants cannot show any prejudice as a result of the new expert opinions because: (1) "[t]his is a summary judgment proceeding;" (2) if summary judgment is denied, Defendants "will have ample opportunity to obtain appropriate expert opinions;" and (3) Defendants chose not to take depositions of the Bakers' experts. The Bakers appear to misunderstand the Federal Rules of Civil Procedure and the role of expert reports.

The sanction of exclusion applies at summary judgment as well as at trial. Rule 37(c)(1) explicitly provides that untimely disclosures may not be used " at a trial, at a hearing, *or on a motion."* Moreover, Defendants need not wait until after a ruling on summary judgment to discover all of Wakeley's and Holland's opinions and data where the Court set an expert opinion disclosure deadline prior to the dispositive motion deadline. Rule 26(a) requires expert reports to be "detailed and complete" and " not sketchy, vague or preliminary in nature." *Salgado By Salgado v. General Motors Corp.,* 150 F.3d 735, 741 n. 6 (7th Cir.1998) (citing Fed.R.Civ.P. 26 Advisory Committee's note). A complete expert report includes "the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefor." *Id.* The requirement of a complete expert report minimizes the need for expert depositions. " The report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 3

Not Reported in F.Supp.2d, 1999 WL 988799 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

**\*3** Although correct, the Bakers' argument that Defendants chose to stay expert depositions until after the Court rules on summary judgment misses the point. Defendants did not move to stay expert depositions until after the Bakers' expert opinion disclosure deadline. After reviewing Wakeley's and Holland's reports, Defendants concluded it was unnecessary to engage in expensive expert depositions prior to moving for summary judgment on certain issues, including the issue of whether the risks encountered by minor Baker were "open and obvious." Defendants were entitled to assume that Wakeley's and Holland's reports were complete. Defendants are now unfairly prejudiced by the Bakers' reliance on new and untimely expert opinions in response to summary judgment. The Bakers' failure to inform Defendants of their experts' latest opinions denied Defendants the opportunity to depose Wakeley and Holland prior to moving for summary judgment. One of the primary goals of the federal civil discovery rules and Rule 26(a) is to "eliminate surprise." The Court will not allow the Bakers to ambush Defendants with new expert opinions after the expert opinion disclosure deadline and after they filed for summary judgment. *Salgado*, 150 F.3d at 742 n. 6. [FN1]

FN1. The Court additionally notes that it granted the Bakers numerous extensions in this matter, including extensions of the discovery deadlines. If the Bakers needed more time to work with their experts and obtain expert opinions, they should have filed an appropriate motion before the expert opinion disclosure deadline rather than wait until after Defendants filed for summary judgment to come forward with new opinions in their experts' affidavits.

The following untimely expert opinions and data are stricken from the Bakers' experts' affidavits: (1) Harold Wakeley's Affidavit-paragraphs 6(b), 6(c), and subparts (b) and (c) in the sentence below 6(c) and (2) Eugene Holland's Affidavit-paragraphs 4-27, first paragraph and last sentence in 29, and paragraph 35. While ServiceMaster and Vlamis have moved to strike the entire affidavits of Wakeley and Holland, the Court believes it more

appropriate to strike only the untimely portions of the affidavits. *Prudential Ins. Co. of America v. Curt Bullock Builders, Inc.,* 626 F.Supp. 159, 164 (N.D.Ill.1985) (stating "[w]hen admissible facts and inadmissible statements occur in the same affidavit, the court need not strike the entire affidavit but rather may rely on the facts and disregard the rest.").

## B. *Harold Wakeley's Affidavit*

ServiceMaster and Vlamis also request that the Court strike Wakeley's remaining opinion that Baker acted reasonably and rationally for his age because it is a legal conclusion contrary to Illinois law, does not assist the trier of fact, and is not " scientifically valid" under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). The Court finds that the Bakers have not made a sufficient showing that Wakeley's testimony meets the criteria of *Daubert.*

To be considered on a motion for summary judgment, expert testimony must be admissible. *See* Fed.R.Civ.P. 56(e) (stating "Supporting and opposing affidavits shall ... set forth such facts as would be admissible in evidence and show affirmatively that the affiant is competent to testify to the matters stated therein."). *Daubert* held that under Federal Rule of Evidence 702, trial courts must ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert,* 509 U .S. at 597. When considering the admissibility of expert testimony, trial courts may consider the following factors: (1) whether theories or techniques can and have been tested; (2) whether it is generally accepted by the scientific community; (3) whether it has been the subject of publication or peer review; and (4) whether it has an acceptable known or potential error rate. *Id.* at 592-594. The inquiry is "flexible" and should be based "solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594-595. *Daubert* applies to all expert testimony. *Kumho v. Tire Co., Ltd. v. Carmichael,* 119 S.Ct. 1167, 1174 (1999).

**\*4** Trial courts must employ a two-step analysis when determining the admissibility of expert

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 4

Not Reported in F.Supp.2d, 1999 WL 988799 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

testimony. *Cummins v. Lyle Industries,* 93 F.3d 362, 367 (7th Cir.1996). First, the court must determine whether the expert's testimony is reliable. *Id.* Conclusions in expert reports must be based on scientific methods and procedures, rather than subjective belief and unsupported speculation. *Daubert,* 509 U.S. at 590. Second, the court must decide "whether evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue." *Cummins,* 93 F.3d at 368. "An expert's affidavit must be sufficiently complete to satisfy the criteria of the *Daubert* decision...." *Navarro v. Fuji Heavy Industries, Ltd.,* 117 F.3d 1027, 1032 (7th Cir.1997), *cert. denied,* 118 S.Ct. 600 (1997). "[T]here is no duty to cross-examine or depose your opponent's witnesses so that they can supplement the testimony they failed to give on direct examination or in their affidavit." *Id.* The proponent of expert testimony bears the burden of establishing its admissibility. *Bradley v. Brown,* 852 F.Supp. 690, 697 (N.D.Ind.), *aff'd,* 42 F.3d 434 (7th Cir.1994).

The Court has reviewed Wakeley's report and affidavit. Wakeley is an engineering psychologist with M.S. and Ph.D. degrees in experimental psychology. Since 1990, he has been employed by the Human Factors Research Group as a Human Factors Scientist/Engineer. Between 1955 and 1990, he worked as a scientist/engineer at Illinois Institute of Technology (IIT) Research Institute. Wakeley also served as adjunct associate professor of engineering psychology at IIT between 1970 and 1985. Wakeley describes his professional experience as involving the determination of:
[T]he range and limits of human performance. The objective of these studies is to produce machines and systems that are cost-effective, productive, and safe in operation without endangering life and the environment. The approach used is the application of engineering and scientific knowledge about materials and human behavior to the design of things people use, methods for their use, and the environment in which people function.

Wakeley Aff. ¶ 4. With respect to the present case, Wakeley opines that "Howard Ross Baker demonstrated a level of hazard perception and risk awareness entirely consistent with his age and level

of development" because Baker was taken to an area specially prepared to be used by children for sledding purposes, the area showed evidence that others had recently used it, he observed a peer using the area, there was no information to indicate that the contemplated slide was hazardous, and there was no barrier to use of the slide area. *Id.* ¶ 6(a). Wakeley states that the bases for his opinion is as follows:People can perceive physical "hazards" but recognizing and accepting or rejecting a "risk" depends upon the subjects use of relevant skills, rul es, and knowledge to predict whether an action will have a safe outcome. Children, including 12 year olds, because they lack skills, familiarity with rules, and specialized knowledge, are far less able to reliably discern dangerous situations.

\*5 Wakeley Aff. ¶ 7.

Wakeley's affidavit fails to specifically explain how he arrived at his conclusion that minor Baker " demonstrated a level of hazard perception and risk awareness entirely consistent with his age and level of development." What level of hazard perception and risk awareness does a twelve year old boy possess? How does Wakeley know what level of hazard perception and risk awareness a twelve year old boy possesses? What particular skills, experience, and capabilities possessed by minor Baker made his behavior reasonable for a twelve year old boy and made him not able to successfully predict whether the sled run would have a safe outcome? What is the reasoning behind Wakeley's conclusion? Did he recreate the accident or do any testing to support his opinion? [FN2] These questions remain unanswered by Wakeley's affidavit.

> FN2. The Court is not holding that a finding of reliability necessarily requires that Wakeley recreate the accident or do any other testing. Wakeley need only show that his testimony is consistent with the " same standards of intellectual rigor that are demanded in [his] professional work." *Cummins,* 93 F.3d at 369. Wakeley's affidavit does not specifically explain how experts in the field of human factors

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 5

Not Reported in F.Supp.2d, 1999 WL 988799 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

investigate and analyze accidents. Thus, the Court is unable to determine whether the methodology used by Wakeley to reach his conclusion in this case meets the standards of his profession.

Wakeley claims that in his research he applies " engineering and scientific knowledge" to human behavior, materials, and the environment. How did Wakeley apply "engineering and scientific knowledge" to Baker's accident? Wakeley also states in his affidavit that he "reviewed the human factors aspects of children's recreational behavior, in particular risk perception and cognition/decision-making of children, both as to minor Baker and as to 12-year-olds generally." Wakeley Aff.¶ 5. What are the "human factors aspects of children's recreational behavior" and how is Wakeley an expert in the area of child perception and cognition/decision-making? The generalized and unsupported nature of Wakeley's conclusion makes its difficult tell what analyses and methodology he used to reach his conclusion. Moreover, although Wakeley has impressive credentials, it is not evident from his curriculum vitae that he has any particular expertise in children's recreational behavior.

Rather than provide the Court with any indicia of reliability for Wakeley's conclusion, the Bakers' Response states only the following regarding Wakeley's qualifications as an expert and the admissibility of his opinion: "Dr. Wakeley is an expert on human factors. His qualifications are as disclosed in his curriculum vitae attached to his Affidavit. By virtue of his education, training and experience, he possesses knowledge that would be helpful to the trier of fact in understanding the various factors that go into perception and recognition of the conditions involved in this case from the point of view of a 12 year old, as the law requires." Bakers' Resp., pp. 5-6. Impressive credentials do not guarantee the admissibility of expert testimony.

Wakeley's opinion provides nothing more than a " bottom line" conclusion and fails to demonstrate that it is supported by scientific rigor. *McMahon v. Bunn-O-Matic Corp.,* 150 F.3d 651, 658 (7th

Cir.1998) (stating "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.") (quoting *Mid-State Fertilizer Co. v. Exchange National Bank,* 877 F.2d 1333, 1339 (7th Cir.1989)); *Navarro,* 117 F.3d at 1031 (holding expert's affidavit contained no support for conclusion and "a conclusion without any support is not one based on expert knowledge and entitled to the dignity of evidence."). As the Seventh Circuit explained in *Navarro,* an expert must explain how his conclusion is based on expert analysis:

*6 An expert's affidavit must be sufficiently complete to satisfy the criteria of the Daubert decision, and one of those criteria, as we have been at pains to emphasize, is that the expert show how his conclusion ... is grounded in-follows from-an expert study of the problem.

*Navarro,* 117 F.3d at 1032.

The Bakers have also failed to provide the Court with any information concerning the four indices of reliability identified by the Supreme Court in *Daubert. Daubert,* 590 U.S. at 592-594. The Court recognizes that those factors are "flexible" and " neither necessarily nor exclusively appl[y] to all experts or in every case." *Kumho Tire Co.,* 119 S.Ct. at 1171. Because the Bakers failed to address *Daubert,* the Court is unable to evaluate whether the four *Daubert* factors are relevant to determining the admissibility of a human factors expert's testimony. The absence of evidence supporting the four *Daubert* factors does not automatically foreclose a finding of reliability, but the Bakers must provide some basis for a finding of reliability. This record fails to disclose Wakeley's methodology and reasoning, and the Court cannot evaluate the reliability of an undisclosed methodology. Thus, given the current record, Wakeley's affidavit is inadmissible under *Daubert.*

The Court grants ServiceMaster and Vlamis' Motion to Strike the remaining conclusion of Harold Wakeley for purposes of ruling on summary judgment. The Court expresses no opinion on whether Wakeley can demonstrate the necessary reliability for trial, if the Bakers' claims survive summary judgment. Having found that Wakeley's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 6

Not Reported in F.Supp.2d, 1999 WL 988799 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

opinion fails to meet the *Daubert* criteria, the Court need not address the remainder of ServiceMaster and Vlamis' arguments regarding Wakeley's affidavit.

### C. *Eugene P. Holland's Affidavit*

Defendants additionally argue that the remaining portions of Eugene Holland's affidavit should be stricken because many of Holland's opinions are legal conclusions contrary to Illinois law on the issue of an "open and obvious" condition and do not assist the trier of fact.

ServiceMaster and Vlamis contend that the following opinions by Holland are inadmissible legal conclusions contrary to Illinois law: (1) a dangerous condition existed; (2) certain of Defendants' actions constituted negligence; and (3) Defendants knew or should have known that the sledders would use the snow pile. According to ServiceMaster and Vlamis, Illinois law dictates that Baker was expected to appreciate and avoid the obvious risk inherent in his sled down the hill and over the snow pile. Whether the risks associated with the sledding jump were "open and obvious" is the ultimate issue to be decided on summary judgment. The Court declines to rule on the merits of the open and obvious issue until the motion for summary judgment is fully briefed and thus, refuses to strike Holland's opinions on this ground.

Defendants correctly contend that Holland's opinion in paragraph 32(a) of his affidavit that the contract between District No. 204 and ServiceMaster required ServiceMaster to supervise the snow removal work of Mundy usurps the Court's role as the interpreter of the contract between ServiceMaster and the School District. An expert may not ordinarily interpret the meaning of a contract. *Delta Mining Corp. v. Big Rivers Electric Corp.,* 18 F.3d 1398, 1402 (7th Cir.1994) (stating " [a]bsent any need to clarify or define terms of art, science or trade, expert opinion testimony to interpret contract language is inadmissible."). The Court strikes that portion of paragraph 32(a) of Holland's affidavit. [FN3]

FN3. In their reply brief, ServiceMaster/Vlamis, W.E. Mundy Landscaping, and Indian Prairie Community School District # 204 request that the Court strike paragraphs 24, 25, 26, 31, 32, and 34 of Holland's affidavit. Intech Consultants and Phillips Swager Associates contend that Holland is not qualified to opine as to the standard of care applicable to civil engineers or architects and that Holland's opinions fail to establish with appropriate foundation what the standard of care is or the manner in which it may have been breached. The Court has previously stricken paragraphs 24-26 as untimely. The Court is unwilling to strike paragraphs 31, 32, and 34 of Holland's affidavit or his opinions regarding Intech Consultants and Phillips Swager Associates where Defendants' arguments regarding these matters were first raised in their reply brief and the Bakers have not had an opportunity to respond. The Court denies Defendants request to strike these matters from Holland's affidavit without prejudice. If Defendants wish to pursue these arguments for purposes of summary judgment, they may file an additional motion to strike containing these arguments at the same time they file their reply briefs in support of summary judgment. The Bakers' response to an additional motion to strike is due within seven days thereafter. Defendants may file a reply within seven days after the Bakers' response.

### D. *Harold Ross Baker's Affidavit*

**\*7** ServiceMaster and Vlamis lastly contend that minor Baker's affidavit should be stricken because it conflicts with his prior deposition testimony. Specifically, ServiceMaster and Vlamis argue that through his affidavit, minor Baker improperly implies that he was not aware that he would land on pavement after his sled run. "[A] plaintiff cannot create an issue of material fact merely by manufacturing a conflict in his own testimony by submitting an affidavit that contradicts an earlier

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 7

Not Reported in F.Supp.2d, 1999 WL 988799 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

deposition and, in turn, defeat a defendant's motion for summary judgment." *Ernst & Young, L.L.P.,* 171 F.3d 527, 532 (7th Cir.1999) (internal citations omitted). "[W]hen a conflict arises between a plaintiff's own sworn deposition and his sworn affidavit, the deposition testimony overrides statements made in the affidavit." *Id.*

At his deposition, Baker testified as follows:
Q: So the parking lot on the day of the accident is or was similar to that depicted in photograph 7-1; is that right?
A: Correct.
Q: So there's some icy patches but, most of it you could see the paved surface below it?
A: Yes.

Baker dep., p. 47.Q: And whereabouts where you when you saw him coming down the hill? Were you on the hill? In the parking lot?
A: I believe I was standing on the concrete just going up-beginning up the hill when I saw him go over the bottom.

Baker dep., p. 51.Q: And [Jasper] landed in the parking lot?
A: Yes.

Baker dep., p. 54.Q: I'm sorry, I though you told me-
A. I don't remember exactly in relation to where I had landed Tim had landed. I knew he had landed on the concrete in that general vicinity, but I don't know in relation to where I landed he did.

Q: Did you land approximately on the same area of pavement, approximately five feet from the-
A: I think I was a little farther, but I don't know for sure because I was rolling after I hit the ground.
Q: Okay. Same area on the concrete, but might have rolled a little bit so it's hard to determine exactly how you landed?
A: Yes.

Baker dep., p. 64.Q: You eventually slid over a mound at the base of the hill; is that right?
A: After I went down and got to the base?
Q: Yes.

A. Yes.

Baker dep., p. 49.Q: You were the next person to go down the hill after Tim Jasper; is that correct?
A: I believe so.
Q: And Tim landed in the parking lot also, correct, on his feet?
A: Yes.
Q: So you knew that you were going to end up in the parking lot on a harder surface; correct?
A: Yes.

Baker dep., 142.

In his affidavit filed in opposition to summary judgment, minor Baker states in part:
On that date, I could not tell where the pavement of the parking lot began and the sled hill ended because of the piled snow. There were patches of ice and/or snow covering the asphalt surface of the parking lot in the area to the north of the snow pile. The path that I saw Tim Jasper take down the sled hill to the snow pile was continuos snow or ice covered, with no bar spots. The snow pile at the base of the hill was pushed to the pile so the pile began before the hill ended. There was no flat area between the sled hill and the snow pile involved. The sled hill dropped until it met the snow pile which then began to rise. The snow pile appeared to be part of the sledding experience existing at May Watts Park/School at the time.

*8 Ross' Affidavit, ¶¶ 2-6, 9.

Taken individually, the statements in minor Baker's affidavit do not necessarily contradict the assertions made in his deposition concerning his knowledge of whether he would land on concrete. On the other hand, when considered together, it may reasonably be inferred from Baker's affidavit statements that he was not aware that he would land on concrete. Such an inference would contradict his above-quoted deposition testimony. Because the Court does not know at this stage of the proceedings whether minor Baker's affidavit may be used for other permissible purposes in response to summary judgment, the Court declines to strike his affidavit. However, when ruling on summary judgment, the Court will not consider minor Baker's affidavit statements for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 1999 WL 988799 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

the proposition that he did not understand he would
land on pavement after his sled run. [FN4]

> FN4. Defendants request for the first time
> in their reply that they be allowed to
> redepose minor Baker if his affidavit is
> allowed to stand. Defendants' request is
> denied.

### III. CONCLUSION

For the reasons explained above, Defendants
ServiceMaster and Vlamis' Motion to Strike
Affidavits of Plaintiff and Plaintiff's Experts is
GRANTED IN PART and DENIED IN PART.
Defendants' reply briefs in support of summary
judgment are due by November 9, 1999.

N.D.Ill.,1999.
Baker v. Indian Prairie Community Unit, School
Dist. 204
Not Reported in F.Supp.2d, 1999 WL 988799
(N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1:96cv03927 (Docket) (Jun. 28, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------X

FIREMAN'S FUND INSURANCE  COMPANY as
subrogee of JULIA PAVIA
77 San Marin Drive
Novado, California

CIVIL ACTION NO.
05-10827 (DPW)

Plaintiff,

vs

FALCO CONSTRUCTION CORP.;
P & D BUILDERS, INC.;
and
MICHAEL CARRESI d/b/a CARRESI
PLUMBING & HEATING

EXHIBIT D to Plaintiff's Motion
To Preclude Defendant's Expert
Witness

OCTOBER 3, 2006

Defendants.

-------------------------------------------------------------X

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE FIREMAN'S FUND INSURANCE COMPANY as subrogee of JULIA PAVIA, <br> Plaintiff, <br><br> v. <br><br> FALCO CONSTRUCTION CORP., P&D BUILDERS, INC., and MICHAEL CARRESI d/b/a CARRESI PLUMBING & HEATING. <br> Defendants, <br><br> v. <br><br> HEATMASTER, INC. <br> Third-Party-Defendant. | CIVIL ACTION NO.: 05-10827DPW |

## DEFENDANT, P&D BUILDERS, INC.'S ANSWERS TO THE PLAINTIFF'S FIRST SET OF INTERROGATORIES

### Interrogatory No. 1

Please list the names and current whereabouts, including street address, city, state and zip code, of any and all persons that you are aware have knowledge related to the incident. If any persons listed are your agents, employees, officers, directors or contractors please indicate the type of relationship and position held.

### Answer No. 1

The defendant objects to Interrogatory No. 1 on grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the objection, the following individuals and/or entities are believed to possess discoverable information:

1.  Julia Pavia
    104 Hammondswood Road
    Newton, MA 02467

2.  Newton Fire Department
    1164 Centre Street
    Newton Centre, MA 02459

3.  Philip Rothschild
    P&D Builders, Inc.

1166555v1

6 Water Street
East Weymouth, MA 02189

Mr. Rothschild is the president/owner of the defendant corporation P&D Builders, Inc.

4.    Michael Caressi
      Michael Caressi Plumbing
      513 Bird Street
      Mansfield, MA

5.    Joseph Falco
      Falco Construction
      10 Willowood Drive
      Stoughton, MA

6.    Heatmaster, Inc.
      3625 Benson Road
      Angier, NC 27501

7.    City of Newton
      Inspectional Services Department
      1000 Commonwealth Avenue
      Newton, MA 02459

**Interrogatory No. 2**

Provide the name, address and social security numbers of the employees performing work at the subject premises.

**Answer No. 2**

1.    Philip Rothschild
      P&D Builders, Inc.
      6 Water Street
      East Weymouth, MA 02189

      SS No.:  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

2.    Charles Gubbins, Jr.
      71 Pine Mountain, Drive
      Plymouth, MA 02360

3.    Frank McTighe
      7 West Dale Road
      Holbrook, MA 02343

1166555v1

4.    David Petronelli
      126 East Grove Street
      Middleboro, MA 02346

5.    Jim O'Connell (deceased)

## Interrogatory No. 3

Identify all persons you expect to call as witnesses at trial, either in person or by deposition.

## Answer No. 3

No determination has been made to whom the defendant will call as a witness at trial. The defendant will seasonably supplement its answer to this interrogatory once such determination has been made.

## Interrogatory No. 4

State whether or not the claim made by plaintiff in the Complaint filed in this action is covered, either in whole or in part, by a policy or policies of liability or other insurance inuring to the benefit of defendant including the name or names of the company or companies issuing such policy or policies, the policy number(s) and claim number(s) relative to this loss, the limits of liability coverage provided thereunder, the effective date or dates of such policy or policies, the name or names of the insured or insureds as they appear in the declaration pages of such policy or policies; and the name, address and job classification of the person or persons in charge of the supervision of plaintiffs' claim for such insurance company or companies.

## Answer No. 4

| | |
|---|---|
| Company: | Essex Insurance Company |
| Policy No.: | 3CM3761 |
| Claim No. : | C004056JT |
| Limits: | $2,000,000.00 (General Aggregate)<br>$1,000,000.00 (Occurrence Limit) |
| Policy Period: | From 12/16/2003 to 12/16/2004 |
| Insured: | P&D Builders, Inc.<br>Phil Rothschild<br>6 Water Street<br>E. Weymouth, MA 02189 |

Classifications:    Contractors - Executive Contractors - Executive Supervisors or Executive
Superintendents

## Interrogatory No. 5

State the name and address of each person whom you expect to call as an expert witness at trial
and state the subject matter on which the expert is expected to testify. Please attach any expert
reports for experts you intend to have testify at trial on your behalf.

(a) For each such expert, have the expert state the substance or the facts and opinions to
which the expert is expected to testify and summarize the grounds for each such opinion;

(b) For each such expert, set forth the qualifications of each expert, listing the schools
attended, years of attendance, degrees received, and experience in any particular field of
specialization or expertise;

(c) For each, set forth all cases in which the expert was presented for trial testimony or
deposition testimony and state the party for which he/she testified and the subject matter
or opinions presented therein.

(d) State if the expert or experts listed have a curriculum vitae, and attach a copy with
your responses to these Interrogatories.

## Answer No. 5

No determination has been made as to whom the defendant will call as an expert at the trial of
this matter.   The defendant will seasonably supplement its answer in accordance with the
Scheduling Order.

## Interrogatory No. 6

Identify all records in your possession relating to the subject premises including the type of
record; the date of the record; the type of service performed; the name of the person performing
the service.

## Answer No. 6

The defendant objects to Interrogatory No. 6 on grounds that it is overly broad, unduly
burdensome and not reasonably calculated to lead to the discovery of admissible evidence.
Notwithstanding and without waiving the objection, the defendant states that, in response to the
parties' requests for documents, it has produced all non-privileged records retained by the
defendant related to the subject premises.

## Interrogatory No. 7

Identify all documents you expect to introduce as evidence at trial.

### Answer No. 7

No determination has been made to as to what documents the defendant will introduce as evidence at trial.

### Interrogatory No. 8

Have you or anyone acting on your behalf obtained from any person any statement concerning this action or its subject matter? If so, identify each such person, when, where, by whom and to whom each statement was made, whether it was reduced to writing or otherwise recorded, and any person who has custody of any such statements that were reduced to writing as otherwise recorded.

### Answer No. 8

The defendant objects to Interrogatory No. 8 on the grounds that it seeks information prepared in anticipation of litigation and/or trial.

### Interrogatory No. 9

Have you given any statement concerning this action or its subject matter? If so, identify each person to whom a statement was given, when and where each statement was given, and any person who has custody of any such statements that were reduced to writing or otherwise recorded.

### Answer No. 9

The defendant objects to Interrogatory No. 9 on the grounds that it seeks information prepared in anticipation of litigation and/or trial. Notwithstanding and without waiving the objection, I gave a statement to my insurance company.

### Interrogatory No. 10

Except for legal counsel and counsel's representatives, please furnish the name, present home address and job title or classification for each and every person who acted on your behalf in answering or assisting in the preparation of your answers to the above interrogatories.

### Answer No. 10

Other than counsel, none.

### Interrogatory No. 11

Did you create and maintain a file of documents related to this loss? If so, please state: the location and; the contents excluding attorney client privilege materials.

**Answer No. 11**

The defendant has two job files related to work performed on the subject premises. One file is for work preformed between approximately July 6, 2000 and December 14, 2001. The other is for work performed between approximately January 26, 2004 until approximately February 2, 2005. This files are kept in my home office. All non-privileged documents contained in these files have been produced in response to the parties' request for production of documents.

**Interrogatory No. 12**

Identify all reports and other documents (except reports of experts consulted but whom you do not intend to call at trial) which describe the incident, the cause thereof, giving identification of the persons who prepared the reports or documents, the dates and the persons who have custody thereof.

**Answer No. 12**

The defendant objects to Interrogatory No. 12 on the grounds that it seeks information prepared in anticipation of litigation and/or trial.

**Interrogatory No. 13**

Did you have in your possession any photographs, slides or video of the subject incident. If your answer is in the affirmative, provide copies of same as well as the date they were taken and the name of the person(s) who took them.

**Answer No. 13**

The defendant objects to Interrogatory No. 13 on grounds that it calls for documents prepared in anticipation of litigation and/or trial.

**Interrogatory No. 14**

With regard to any and all work that was performed by you at the premises, please state the following:

    (a)     The type of work was performed by you;

    (b)     The identity of the individuals performing said work;

    (c)     The identity of the individuals supervising the performance of said

    (d)     The dates that said work was performed;

    (e)     At whose request the work was performed;

(f)    Who paid for said work.

## Answer No. 14

(a)    P&D Builders was originally retained to build a two-story addition at the rear of the Pavia home and to renovate bathrooms. While construction was ongoing, the project was expanded to include the addition of a decorative/ornamental fireplace with a gas-fired log. After the subject fire, P&D Builders was again retained to perform restoration work at the Pavia home. For further detail concerning the scope and nature of the work performed by P&D Builders and its subcontractors, please refer to the documents provided by the defendant in response to the parties' requests for documents.

(b)    The defendant objects to Interrogatory No. 14(b) on grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the object, following is a non-exhaustive list individuals who worked on the subject premises:

Philip Rothschild, President
P&D Builders, Inc.
6 Water Street
East Weymouth, MA 02189

Charles Gubbins, Jr. (employee of P&D Builders)
71 Pine Mountain, Drive
Plymouth, MA 02360

Frank McTighe (employee of P&D Builders)
7 West Dale Road
Holbrook, MA 02343

David Petronelli (employee of P&D Builders)
126 East Grove Street
Middleboro, MA 02346

Jim O'Connell (employee of P&D Builders) (deceased)

Michael Caressi (plumbing subcontractor)
Michael Caressi Plumbing
513 Bird Street
Mansfield, MA

Joseph Falco (masonry subcontractor)
Falco Construction
10 Willowood Drive
Stoughton, MA

Michael Roach (carpentry subcontractor)
162 Rockland Street
North Easton, MA 02356

Pedro and Enrique (employees of subcontractor Michael Roach)

Mike Conte (carpentry subcontractor)
61 Pond Street
Halifax, MA 02338

James Lowe (carpentry subcontractor)
(508) 648-5220

Nick Ruggeri (flooring subcontractor)
172 Alder Road
Westwood, MA 02090

Graham Deconstruction (demolition subcontractor)
215 Chief Justice Cushing Hwy.
Cohasset, MA  02025

Anderson Insulation (insulation subcontractor)
706 Brockton Avenue
Abington, MA 02351

Paul Gammell (drywall and plaster subcontractor)
Delorey-Gammel Drywall, Inc.
22 East Ridge Way
Norwell, MA 02061

Frank Toste (electrical subcontractor)
Raynham, MA
(508) 400-7384

Michael C. Clery (site work subcontractor)
29 Lexington Road
Billerica, MA 01821

(c)    During construction, P&D Builders, Inc., oversaw the general progress of work
and scheduled the various sub-contractors.  The individual subcontractors
oversaw their own work, in accordance with their own experience and proficiency
in their various fields of expertise.  In addition, construction was overseen by the
homeowner.

(d)    Initial construction was preformed between approximately July 6, 2000 and December 14, 2001. Reconstruction work was preformed between approximately January 26, 2004 and February 2, 2005.

(e)    Michael and Julia Pavia

(f)    Michael and Julia Pavia

## Interrogatory No. 15

Identify all professional licenses, permits or educational degrees held by you during the time period you performed work at or for the premises.

## Answer No. 15

Massachusetts Contractor Supervisors License No.: 24260
Massachusetts Home Improvement Contractor Registration No.: 100531

## Interrogatory No. 16

With respect to the licenses and permits identified in the preceding paragraphs, please state whether they were valid and in force at the time of the subject incident and if not, why not.

## Answer No. 16

Yes.

## Interrogatory No. 17

Have you ever had your professional licenses and/or permits revoked for any reason at all and if so, state the reasons for such revocation.

## Answer No. 17

No.

## Interrogatory No. 18

State whether any applicable rules, regulations and/or codes including, but not limited to, those of the Commonwealth of Massachusetts and other regulatory bodies, applied to or governed the work performed by you related to the premises.

## Answer No. 18

The defendant objects to Interrogatory No. 18 to the extent that it calls for the mental impressions, conclusions, opinions or legal theories of an attorney or other representatives of a

party concerning the litigation. Notwithstanding and without waiving the objection, work preformed on the subject premises by P&D Builders was subject to the Massachusetts Building Code, as applicable, as well as any applicable local regulations and ordinances implemented by the City of Newton, as well as generally accepted construction practices.

**Interrogatory No. 19**

Was there any type of inspection of your work performed and if so state the following:

    (a)    what was inspected;

    (b)    by whom was it inspected;

    (c)    why was it was inspected;

    (d)    when was it was inspected

**Answer No. 19**

The defendant objects to Interrogatory No. 19 on the grounds that the information sought is equally available to the plaintiff and cannot be provided by the defendant without substantially greater facility than it could otherwise be obtained by the plaintiff. Notwithstanding and without waiving the objection, work on the subject premises was inspected by Richard O'Regan, Building Inspector for the City of Newton. Additional information concerning inspection of the premises may be obtained from the City of Newton Inspectional Services Department.

**Interrogatory No. 20**

If there were any inspections or examinations of the premises, either before or after the incident, state the purpose of such inspection(s) or examination(s), when any inspections or examinations were scheduled to be made and by whom, the dates when any inspections or examinations were made and by whom, whether there is any documentation relating to the schedule of the inspections or examinations (if so identify such documentation), and whether there were oral reports made with respect to any inspections or examinations (if so, identify such oral reports).

**Answer No. 20**

The defendant objects to Interrogatory No. 20 on the grounds that the information sought is equally available to the plaintiff and cannot be provided by the defendant without substantially greater facility than it could otherwise be obtained by the plaintiff. Notwithstanding and without waiving the objection, the plaintiff is directed to the files maintained by the City of Newton Inspectional Services Department.

**Interrogatory No. 21**

Describe in your own words how the damage to the premises occurred and state specifically and in detail what the claim or contention of the defendant will be regarding any cause or contributing cause of the incident, including a statement in detail of the facts or information upon which this contention is based.

**Answer No. 21**

The defendant objects to Interrogatory No. 21 to the extent that it calls for the mental impressions, conclusions, opinions or legal theories of an attorney or other representatives of a party concerning the litigation. In addition, said interrogatory is beyond the scope of discovery, as the defendant has no obligation to prove how the fire occurred, and the defendant has no personal knowledge of how the fire occurred. Notwithstanding and without waiving the objections, the defendant believes that the instructions and warnings that accompanied the gas log appliance installed on the subject premises, did not adequately warn of the potential hazards associated with the use of that product, and did not adequately describe the setting in which that product should be installed. Furthermore, the defendant believes that the plaintiff's subrogee, Julia Pavia, by leaving the gas log appliance on for an extended period of time, contributed the subject incident by using the product in a manner for which it was not intended. Finally, the defendant further believes that fire suppression efforts on the Newton Fire Department contributed to the damages allegedly sustained at the subject premises.

The undersigned deposes and says that he is an agent of P&D Builders, Inc., named defendant in the above-captioned action, and that he signs the answers to the interrogatories for and on behalf of P&D Builders, Inc. and is authorized to do so; that the matters stated in the foregoing answers are not all within his personal knowledge and that he is informed that there is no officer or employee of said P&D who has personal knowledge of all such matters; that such facts as are stated in said answers which are not within the personal knowledge of the deponent have been assembled by authorized agents, employees and counsel of said defendant and the deponent is informed and believes that the facts stated in said answers are true and so states under the pains and penalties of perjury.

Signed under the pains and penalties of perjury this _FIRST_ day of _FEBRUARY_ 2006.

P&D Builders, Inc.

BY: _____
    Mr. Philip Rothschild

As to Objections:

_____
William Joseph Flanagan, BBO#556598
Curtis L. S. Carpenter, BBO#657358
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
(617) 439-7500

1166955v1

# CERTIFICATE OF SERVICE

I, Curtis L. S. Carpenter, attorney for the defendants, hereby certify that I have this day served the foregoing *Defendant, P & D Builders, Inc.'s Answers to the Defendant, Falco Construction's First Set of Interrogatories* to all counsel of record in this action by mailing same, by first class mail, postage prepaid to:

Stuart G. Blackburn, Esq.
Erik Loftus, Esq.
Law Offices of Stuart G. Blackburn
Two Concorde Way
P.O. Box 608
Windsor Locks, CT 06096

Robert P. Turner, Esq.
Law Offices of Bruce R. Fox
27B Midstate Office Park
Auburn, MA 01501

John F. Toomey, Jr., Esq.
Patricia A. Larkin, Esq.
Toomey & Yudysky, LLP
99 Summer Street
Boston, MA 02110

Scott T. Ober, Esq.
Hassett & Donnelly, P.C.
484 Main Street, Suite 560
Worcester, MA 01608

Dated: 2/1/'06                    Attorney: _____

1166555v1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

--------------------------------------------------------------X

FIREMAN'S FUND INSURANCE  COMPANY as
subrogee of JULIA PAVIA
77 San Marin Drive
Novado, California

CIVIL ACTION NO.
05-10827 (DPW)

Plaintiff,

vs

FALCO CONSTRUCTION CORP.;
P & D BUILDERS, INC.;
and
MICHAEL CARRESI d/b/a CARRESI
PLUMBING & HEATING

EXHIBIT E to Plaintiff's Motion
To Preclude Defendant's Expert
Witness

OCTOBER 3, 2006

Defendants.

--------------------------------------------------------------X

Westlaw.

212 F.R.D. 306                                                                  Page 1

212 F.R.D. 306

**(Cite as: 212 F.R.D. 306)**

**Motions, Pleadings and Filings**

United States District Court,
M.D. North Carolina.
AKEVA L.L.C., a North Carolina Corporation,
Plaintiff,
v.
MIZUNO CORPORATION, a Japanese
Corporation; and Mizuno USA, Inc., a Georgia
Corporation, Defendants.
**No. 1:00CV00978.**

Dec. 20, 2002.

On defendants' motions to exclude allegedly untimely expert reports submitted by plaintiff in patent infringement suit, the District Court, Eliason, United States Magistrate Judge, held that: (1) plaintiff did not establish good cause for untimely expert disclosures in violation of discovery control order; (2) exclusion of second test and opinion by plaintiff's original expert was justified by plaintiff's untimely disclosure of second test and opinion in violation of expert disclosure order; and (3) plaintiff's untimely disclosure of second expert's report in violation of expert disclosure order did not warrant its exclusion.

Motions granted in part and denied in part.

West Headnotes

**[1] Federal Civil Procedure** ☞1278
170Ak1278 Most Cited Cases

**[1] Federal Civil Procedure** ☞1935.1
170Ak1935.1 Most Cited Cases
When a dispute arises concerning violation of expert disclosure obligations pursuant to a court approved discovery plan, a court should first look to rule governing scheduling or pretrial orders for determining both compliance and sanctions, as opposed to general sanctions rule concerning failure to disclose. Fed.Rules Civ.Proc.Rules 16(f), 37(c), 28 U.S.C.A.

**[2] Federal Civil Procedure** ☞1278
170Ak1278 Most Cited Cases

**[2] Federal Civil Procedure** ☞1938.1
170Ak1938.1 Most Cited Cases
When there is a discovery plan covering expert disclosures, the plan controls whether an expert disclosure is timely and not the explicit provisions of discovery rule. Fed.Rules Civ.Proc.Rule 26(a)(2)(C), 28 U.S.C.A.

**[3] Federal Civil Procedure** ☞1261
170Ak1261 Most Cited Cases
Discovery rule concerning supplementation of discovery disclosures and responses envisions supplementation when a party's discovery disclosures happen to be defective in some way so that the disclosure was incorrect or incomplete and, therefore, misleading; it does not cover failures of omission because the expert did an inadequate or incomplete preparation. Fed.Rules Civ.Proc.Rule 26(e), 28 U.S.C.A.

**[4] Federal Civil Procedure** ☞1278
170Ak1278 Most Cited Cases

**[4] Federal Civil Procedure** ☞1935.1
170Ak1935.1 Most Cited Cases
Plaintiff did not establish good cause for untimely expert disclosures in violation of discovery control order, where facts simply showed that plaintiff was surprised by testimony of defendant's expert, and decided to bolster its case by getting a new expert and having its first expert conduct another type of test. Fed.Rules Civ.Proc.Rule 16(f), 28 U.S.C.A.

**[5] Federal Civil Procedure** ☞1278

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.R.D. 306

212 F.R.D. 306

**(Cite as: 212 F.R.D. 306)**

170Ak1278 Most Cited Cases

**[5] Federal Civil Procedure** ☞**1935.1**
170Ak1935.1 Most Cited Cases
In determining sanction to impose for untimely expert disclosure in violation of discovery control order, factors to consider include: (1) the explanation for the failure to obey the order; (2) the importance of the expert opinion; (3) the prejudice to the opposing party by allowing the disclosures; and (4) the availability of alternative or lesser sanctions. Fed.Rules Civ.Proc.Rule 16(f), 28 U.S.C.A.

**[6] Federal Civil Procedure** ☞**1278**
170Ak1278 Most Cited Cases

**[6] Federal Civil Procedure** ☞**1935.1**
170Ak1935.1 Most Cited Cases
Relevant factors to consider in determining sanction for untimely expert disclosure in violation of discovery control order include: (1) the interest in expeditious resolution of litigation; (2) a court's need to manage its docket; and (3) public policy favoring disposition of cases on the merits. Fed.Rules Civ.Proc.Rule 16(f), 28 U.S.C.A.

**[7] Federal Civil Procedure** ☞**1278**
170Ak1278 Most Cited Cases
Docket control planning is sufficiently important factor to alone justify the exclusion of an untimely disclosed expert report or opinion even in absence of prejudice to the opposing party. Fed.Rules Civ.Proc.Rule 16(f), 28 U.S.C.A.

**[8] Federal Civil Procedure** ☞**1278**
170Ak1278 Most Cited Cases

**[8] Federal Civil Procedure** ☞**1935.1**
170Ak1935.1 Most Cited Cases
Exclusion of second test and opinion by plaintiff's original expert was justified by plaintiff's untimely disclosure of second test and opinion in violation of expert disclosure order, by plaintiff's failure to immediately request court permission for the test and opinion, and by fact that said report was not disclosed to defendants until after discovery ended, which was a second violation of court's discovery

order. Fed.Rules Civ.Proc.Rule 16(f), 28 U.S.C.A.

**[9] Federal Civil Procedure** ☞**1278**
170Ak1278 Most Cited Cases

**[9] Federal Civil Procedure** ☞**1935.1**
170Ak1935.1 Most Cited Cases
Plaintiff's untimely disclosure of expert report in violation of expert disclosure order did not warrant its exclusion, where plaintiff submitted the report prior to the end of discovery and within the thirty-day time period for rebuttal discovery that would have applied had case been operating without a discovery plan. Fed.Rules Civ.Proc.Rule 16(f), 28 U.S.C.A.

**[10] Federal Civil Procedure** ☞**1935.1**
170Ak1935.1 Most Cited Cases
When there is a substantial violation of rule governing scheduling orders, even without bad faith, deliberation or other aggravating factors, some sanctions in the form of attorney's fees and cost-shifting are appropriate in order to: (1) act as a general deterrent to violation of the court's order; (2) encourage adequate pretrial preparation; (3) ensure the party will not profit by its own failures; and (4) eliminate prejudice to the opposing party. Fed.Rules Civ.Proc.Rule 16(f), 28 U.S.C.A.

**[11] Federal Civil Procedure** ☞**1278**
170Ak1278 Most Cited Cases
In order to protect defendants against prejudice from plaintiff's untimely expert disclosure, court would require plaintiff to pay the costs and expense of the expert's deposition, including the expert fees, if any, of and the attorney's fees incurred by defendants in connection with motions to exclude expert reports, up to the amount of $3,000.00. Fed.Rules Civ.Proc.Rule 16(f), 28 U.S.C.A.
*307 William C. Connor, Scott Andrew Schaaf, Tuggle, Duggins & Meschan, P.A., Greensboro, NC, Patrick J. Flinn, Alston & Bird, Atlanta, GA, for plaintiff.

James Jason Link, John Steven Gardner, Kilpatrick Stockton, L.L.P., Winston-Salem, NC, Douglas D. Salyers, Troutman Sanders, Atlanta, GA, for defendants.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.R.D. 306

**(Cite as: 212 F.R.D. 306)**

### *ORDER*

ELIASON, United States Magistrate Judge.

This matter comes before the Court on two motions filed by the defendants, hereinafter denominated collectively as "Mizuno." Both motions seek to exclude allegedly untimely expert reports submitted by plaintiff. One concerns the expert report of a Dr. Karl B. Fields, and the other seeks to exclude the additional expert report of a Mr. Fredericksen with respect to experiments conducted by him at Michigan State University subsequent to his initial expert report. Defendants contend that both these expert reports are unauthorized and untimely and that plaintiff *308 Akeva L.L.C. ("Akeva") should be prohibited from using the expert reports at trial.

After this case was filed and the Court denied defendants' motion to dismiss, the Court, on May 29, 2002, entered a Rule 26(f) Report and Order based on the parties' stipulations. After some modifications, discovery was set to end on November 15, 2002. The trial is set for March 31, 2003.

The Rule 26(f) Report and Order specifically provides times for expert disclosure pursuant to Fed.R.Civ.P. 26(a)(2). The parties chose a bifurcated schedule wherein the party bearing the burden of proof on an issue must first disclose the expert and the expert's report on or before September 3, 2002. In the second tier, any party offering expert testimony in rebuttal had to disclose the expert and the report on or before October 3, 2002.

The expert opinions in this case concern plaintiff's claim that Mizuno produced various models of athletic footwear which infringed its patents. Plaintiff argues that defendants inserted a "wave" plate in the shoes that does not operate as defendants contend with respect to weight bearing displacement and, therefore, infringes plaintiff's patents. It appears that plaintiff's first expert witness, Mr. Fredericksen, performed an alleged industry standard test on the plate in question. He submitted his expert report and was deposed on or

about October 9, 2002. Prior to that time, and on October 7, defendants identified a Dr. Pourdeyhimi and disclosed his expert report on October 7, 2002. He performed a test different from Mr. Fredericksen and came to a conclusion that defendants' athletic shoes did not infringe plaintiff's patents.

Before discovery ended on November 15, 2002, and on November 1, 2002, plaintiff identified a new expert, Dr. Fields, who conducted a different test of the athletic shoes by inserting a lead tape into the shoes and then taking an x-ray to note the displacement when weight was applied. Plaintiff offered Dr. Fields for deposition. Later, and on November 18, 2002, plaintiff notified defendants of its intent to "supplement" Mr. Fredericksen's report with the result of an additional test supervised by Mr. Fredericksen to be conducted at Michigan State University on November 21, 2002.

Defendants argue that plaintiff's two new expert disclosures are untimely and violate Fed.R.Civ.P. 37(c)(1), along with Local Rule 16.1(e). [FN1] They assert that plaintiff was required to disclose the expert reports at the time of initial disclosure. The failure to do so allegedly violates Rule 37(c) because plaintiff did not have justification, and the failure to disclose was harmful to defendants and, therefore, the Court should exclude the experts' opinions from being used at trial.

> FN1. Fed.R.Civ.P. 37(c)(1)states:
> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.R.D. 306                                                                                                                    Page 4

212 F.R.D. 306

**(Cite as: 212 F.R.D. 306)**

under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.
Local Rule 16.1(e) reads:
The initial pretrial order, whether based upon a joint Rule 26(f)· Report or a conference following the filing of separate reports, shall provide that discovery with respect to experts be conducted within the discovery period established in the case. The order shall set the date on which disclosure of expert information under Fed.R.Civ.P. 26(a)(2) must be made.

Plaintiff responds that the disclosures were timely under Rule 26(a)(2)(C) which provides:
These disclosures shall be made at the times and in the sequence directed by the court. *In the absence of other directions from the court or stipulation by the parties,* the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party. The **\*309** parties shall supplement these disclosures when required under subdivision (e)(1). (But note, emphasis added)
It argues that under this rule, Dr. Fields' report was a rebuttal report and that under Fed.R.Civ.P. 26(a)(2)(C), plaintiff had thirty days after disclosure of the Pourdeyhimi report on October 7, 2002 to disclose the Fields' report, whose disclosure on November 1, 2002 was, thus, timely. With respect to Mr. Fredericksen's new test, plaintiff contends that it is a supplemental report and that Rule 26(e)(1) requires supplementation of expert reports as provided for in Rule 26(a)(3), which only requires disclosures at least thirty days prior to trial and, thus, the new Fredericksen test was timely disclosed.

Defendants retort that these reports are neither supplemental nor rebuttal reports, and so should have been initially disclosed. They allege harm because they relied on the Rule 26(f) Report and Order for disclosure times in order to prepare their

case. Allowing the additional expert reports will cost them the advantage they procured as a result of plaintiff being dissatisfied with Fredericksen's initial report, and will impose the extra costs of having to depose both Fredericksen and Fields, along with perhaps procuring another expert of their own.

*Discussion*

[1] The first question to be decided is what rule to apply in evaluating whether plaintiff's expert report filings were untimely and what sanctions to impose. Defendants request sanctions under Fed.R.Civ.P. 37(c). The 1993 Amendment Advisory Notes characterize this rule as a revision which "provides a self-executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion under subdivision (a)(2)(A)." However, in this case, there was an initial pretrial conference scheduling plan and order pursuant to Rules 16 and 26 which governed and controlled disclosures. [FN2]

> FN2. Plaintiff overlooks this fact when it argues that it had thirty days to rebut evidence under Fed.R.Civ.P. 26(a)(2)(C). Plaintiff ignores the second sentence of the rule which specifically provides that those times only apply in "the absence of other directions from the court or stipulation by the parties." As will be discussed later, the Court's order, not the latter provisions contained in Rule 26(a)(2)(C), governed the parties' expert witness disclosures.

When a dispute arises concerning violation of expert disclosure obligations pursuant to a court approved discovery plan, the Court should first look to Rule 16(f) for determining both compliance and sanctions, as opposed to Rule 37(c). Rule 16(f) specifically speaks to non-compliance with a scheduling or pretrial order. Rule 37(c), on the other hand, is self-executing and will likely come into play later in the court proceedings, often at or near trial. It serves the situation where there is no discovery plan and the timing of the parties' discovery is controlled only by the Federal Rules of Civil Procedure. One difference between Rule 37(c) and Rule 16(f) is that violations of Rule 16(f)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.R.D. 306

212 F.R.D. 306

**(Cite as: 212 F.R.D. 306)**

must be brought to the Court's attention by motion. Both rules permit the Court to impose sanctions contained in Rule 37(b)(2)(B) & (C), along with imposing attorney's fees and reasonable expenses because of any non-compliance. In addition, Rule 16(f) provides for the contempt sanction contained in subsection (b)(2)(D) of Rule 37.

Because there was a court approved discovery plan in this case, the Court looks to Rule 16(f) to determine violations for not disclosing expert reports at the time required under the scheduling order, and to determine sanctions. At this stage, the question is not whether the defendants have been prejudiced, but whether plaintiff has shown good cause for its failure to timely disclose. *Lory v. General Elec. Co.,* 179 F.R.D. 86 (N.D.N.Y.1998); *see also Reliance Ins. Co. v. Louisiana Land and Exploration Co.,* 110 F.3d 253, 257 (5th Cir.1997)(Rule 16(b) only permits modification of scheduling order for good cause). Under Rule 16(f), the Court may impose the full range of sanctions, including precluding the expert's testimony. *Boardman v. National Medical Enterprises,* 106 F.3d 840, 843 (8th Cir.1997); *Lory,* 179 F.R.D. 86.

As noted above, plaintiff approaches this case as if no pretrial order had been entered. It, therefore, relies on the disclosure times set by the latter portions of Rule 26(a)(2)(C) *310 which govern in the absence of a pretrial order. Consequently, plaintiff presents a number of confusing justifications for its actions. The facts show that plaintiff presented two new expert opinions after the time set in the discovery plan. Plaintiff first argues that even though the second-tier disclosure talked about rebuttal opinions, this was in error and that the second-tier disclosure was merely for responsive disclosure. However, plaintiff had as much a role in choosing the words, as did defendants. Moreover, even under plaintiff's argument, the discovery plan simply did not provide a third-tier time for rebuttal experts. To meet this problem, plaintiff relies on the remaining provisions of Rule 26(a)(2)(C) which state that rebuttal experts' disclosures may be made at any time within thirty days of learning the need for rebuttal testimony (according to plaintiff,

irrespective of a court approved discovery plan). Yet, even that justification will not work for Mr. Fredericksen, whose disclosure came outside of the thirty-day period. Therefore, for him, plaintiff turns to the supplementation provisions of Rules 26(e)(1) and 26(a)(3), claiming that it had the right to make these "supplemental" disclosures up to thirty days before trial. [FN3] The Court rejects all of plaintiff's constructions.

> FN3. Plaintiff, again, disregards the discovery plan which required supplementation within thirty days after the close of discovery. Nevertheless, if the new Fredericksen opinion constitutes supplementation, it would have been timely made.

[2] Starting with the alleged rebuttal testimony of Dr. Fields, the discovery plan did not permit a third tier of expert disclosure as plaintiff contends. This was due simply to inadvertence or neglect in the formulation of the discovery plan itself. Nothing prevented plaintiff from putting in a three-tier or even four-tier expert discovery provision. Second, when there is a discovery plan covering expert disclosures, the plan controls and not the explicit provisions of Rule 26(a)(2)(C). Consequently, the Court finds that Dr. Fields' untimely opinion was not permissible under the discovery plan and violated the Court's order.

[3] The Court also finds that Mr. Fredericksen's additional opinion does not constitute supplementation. Rule 26(e)(1) requires supplementation when a "party learns that in some material respect the information disclosed is incomplete or incorrect." If the additional or corrective information has not otherwise been made known, a party must disclose at the times set out in Rule 26(a). *But see* n. 2, *supra.* Plaintiff does not argue that Mr. Fredericksen's initial opinion was incorrect, but appears to argue that it was incomplete. The Court cannot accept a definition of supplementation which would essentially allow for unlimited bolstering of expert opinions. Rule 26(e) envisions supplementation when a party's discovery disclosures happen to be defective in some way so

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.R.D. 306

212 F.R.D. 306

**(Cite as: 212 F.R.D. 306)**

Page 6

that the disclosure was incorrect or incomplete and, therefore, misleading. *See Keener v. United States,* 181 F.R.D. 639 (D.Mont.1998). It does not cover failures of omission because the expert did an inadequate or incomplete preparation. *Id.* at 641; *see Schweizer v. DEKALB Swine Breeders, Inc.,* 954 F.Supp. 1495, 1510 (D.Kan.1997)(no reason opinions could not have been stated earlier). To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would reek havoc in docket control and amount to unlimited expert opinion preparation. Therefore, Mr. Fredericksen's second test and opinion was not supplementation, but merely an out-of-time disclosure.

[4] Having rejected plaintiff's legal excuses, the Court turns to the factual basis for plaintiff's good cause argument. After the smoke of plaintiff's argument clears, the facts simply show that plaintiff was surprised by Dr. Pourdeyhimi's testimony. What is more difficult to tell is whether that surprise is justified. In essence, because Dr. Pourdeyhimi conducted a test that might cast doubt on Mr. Fredericksen's test of the shoes, plaintiff decided to bolster its case by getting a new expert and having Mr. Fredericksen conduct another type of test. These expert reports certainly have some aspects of rebuttal testimony about them, but may also be characterized as makeup for initially inadequate or incomplete preparation. In all events, the Court cannot find that plaintiff *311 has advanced just cause for failing to obtain this testimony earlier, and the Court finds plaintiff has violated the scheduling order by attempting to introduce additional expert testimony at times not authorized by the discovery control order.

[5][6][7] Having found a violation of Rule 16(f), the next issue is what kind of sanctions to impose, if any. The Court has broad discretion in employing sanctions. Courts have considered a number of factors. One set of factors looks to: (1) the explanation for the failure to obey the order; (2) the importance of the expert opinion; (3) the prejudice to the opposing party by allowing the disclosures; and (4) the availability of alternative or lesser sanctions. *See Reliance Ins. Co.,* 110 F.3d at 257;

*Tucker v. Ohtsu Tire & Rubber Co., Ltd.,* 49 F.Supp.2d 456, 461 (D.Md.1999); and *Fritter v. Dafina, Inc.,* 181 F.R.D. 215, 217 (N.D.N.Y.1998). Additional relevant factors, include: (1) the interest in expeditious resolution of litigation; (2) a court's need to manage its docket; and (3) public policy favoring disposition of cases on the merits. *Keener,* 181 F.R.D. at 641. The factors involving docket control planning are sufficiently important to alone justify the exclusion of an untimely disclosed expert report or opinion even in absence of prejudice to the opposing party. *Trilogy Communications, Inc. v. Times Fiber Communications, Inc.,* 109 F.3d 739, 745 (Fed.Cir.1997).

Where a plaintiff operates in bad faith or with deliberation, exclusion of evidence is often appropriate. *Quevedo v. Trans-Pacific Shipping, Inc.,* 143 F.3d 1255 (9th Cir.1998)(one and one-half month delay with no explanation); *Trilogy Communications, Inc.,* 109 F.3d 739 (not only untimely but attempt to squeeze in second expert opinion, rebuttal opinion, and affidavit); *Reliance Ins. Co.,* 110 F.3d 253 (only ten days late, prior to the end of discovery period, but intentional delay); *Boardman,* 106 F.3d 840; *McRae v. Publications Intern. Ltd.,* 985 F.Supp. 1036 (D.Kan.1997)(parties warned that expert discovery deadlines would be strictly enforced, exclusion to avoid trial by ambush); *Fritter,* 181 F.R.D. 215 (deliberate delay in testing of over one to two months in order to save costs); *Keener,* 181 F.R.D. 639 (one month and a dramatically different opinion).

[8] In the instant case, the Court does not find deliberate delay or aggravated circumstances, as occurred in the above cases. Moreover, plaintiff argues that defendants will suffer no prejudice because Dr. Pourdeyhimi actually conducted his test prior to the expert discovery exchange. Thus, defendants did not completely rely on Mr. Fredericksen in preparing their case. Also, the new tests are fairly important. It appears that there may be a number of different tests which can be performed in order to reveal the true nature of defendants' shoes, none of which may be definitive, but all of which may help provide an answer.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.R.D. 306

212 F.R.D. 306

**(Cite as: 212 F.R.D. 306)**

Page 7

Therefore, permitting the tests might provide a greater chance that the case would be decided on the merits and that the jury would be adequately informed in order to make a decision. On the other side of the equation, strict adherence to discovery rules are necessary to prohibit not only trial by ambush, but discovery gaming where a party holds back evidence or does not pay sufficient attention in the first instance to develop expert testimony. All of this imposes costs on the court and the opposing parties, both in the short and long run.

Even though defendants will not suffer prejudice in the sense of not being able to fairly present their case if the new opinions are allowed, [FN4] they nevertheless will suffer some prejudice in the form of additional costs and a loss of the surprise advantage that they had in selecting Dr. Pourdeyhimi and his unexpected test. Plaintiff may be additionally faulted because, although it immediately took steps to procure additional testimony and attempted to do so within the discovery time limits, [FN5] significantly, "plaintiff *312 never sought an extension of time from the district court." *Quevedo,* 143 F.3d at 1258. The Court is disturbed by these considerations and by plaintiff's actions, including its misconstruction of the Federal Rules relating to the disclosure of expert witness testimony as discussed above. The disruption caused by the proliferation of untimely expert testimony is real and attorneys must know such will not be permitted. To that end, the Court finds that the exclusion of Mr. Fredericksen's second test and opinion is well justified for all the reasons noted above, including plaintiff's failure to immediately request court permission for the test and opinion, and the fact that said report was not disclosed to defendants until after discovery ended and was a second violation of the Court's discovery order. *See Lory,* 179 F.R.D. at 87 (may consider using lesser sanctions when non-compliance limited to single instance).

FN4. Defendants will lose the advantage they had because Dr. Pourdeyhimi's new test surprised plaintiff and its expert. This type of prejudice is of a lesser quality than

that which hinders a party from presenting its case on an equal footing.

FN5. At oral argument, plaintiff informed the Court that Mr. Fredericksen's second test and opinion was delayed because of his inability to gain access to a university's laboratories in order to conduct his test.

[9] Dr. Fields' report stands in a slightly different position. Here, although plaintiff failed to immediately request that the Court permit it to prepare additional initial or else rebuttal expert testimony, plaintiff did submit the report prior to the end of discovery and within the thirty-day time period for rebuttal discovery that would have applied had this case been operating without a discovery plan. In other words, the Court finds that plaintiff did act marginally expeditiously with respect to Dr. Fields. The report is important to the merits of the case and the Court believes it will aid in reducing jury confusion or misunderstanding. Plaintiff's inadequate discovery plan submission and expert witness preparation show no sign of being other than simple mistakes with no ulterior motives. The costs to defendants of additional expert witness preparation do not necessarily require the exclusion of new expert opinions. *Tucker,* 49 F.Supp.2d 456 (discovery cutoff rescinded and trial indefinitely delayed). Therefore, the Court will deny defendants' motion for exclusion and consider alternative sanctions.

[10] As noted earlier, Fed.R.Civ.P. 16(f) provides for a range of sanctions for the untimely disclosure of expert witnesses and their reports. When there is a substantial violation of Rule 16(f), even without bad faith, deliberation or other aggravating factors, some sanctions in the form of attorney's fees and cost-shifting is not inappropriate in order to (1) act as a general deterrent to violation of the court's order, (2) encourage adequate pretrial preparation, (3) ensure the party will not profit by its own failures, and (4) eliminate prejudice to the opposing party. *Old Country Toyota Corp. v. Toyota Motor Distributors, Inc.,* 168 F.R.D. 134 (E.D.N.Y.1996).

[11] In the instant case, defendants were forced by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.R.D. 306

212 F.R.D. 306

**(Cite as: 212 F.R.D. 306)**

plaintiff's non-compliance to file two motions to exclude the expert reports. As noted above, plaintiff's need for additional expert opinion arises as much from inadequate preparation as from surprise. Plaintiff makes much of the fact that Dr. Pourdeyhimi did not use an "industry standard" test. On the other hand, plaintiff fails to explain why it did not initially select the best test or tests if the industry standard test is viewed by plaintiff to now be inadequate. In order to protect defendants against prejudice, the Court will require plaintiff to pay the costs and expense of the Fields' deposition, including the expert fees, if any, of Dr. Fields, and the attorney's fees incurred by defendants in connection with these motions, up to the amount of $3,000.00. *Lory,* 179 F.R.D. 86; and *Old Country Toyota Corp.,* 168 F.R.D. 134. In addition, within thirty days from the date of this Order, defendants may name a rebuttal expert to Dr. Fields and produce an expert witness report. Said witness shall be subject to deposition by plaintiff at its own cost.

**IT IS THEREFORE ORDERED** that defendants' motion to exclude the second expert report of Mr. Fredericksen (docket no. 76) is granted.

**IT IS FURTHER ORDERED** that defendants' motion to exclude the expert report of Dr. Fields (docket no. 61) is denied on the condition that plaintiff pay defendants' attorney's fees for bringing both the instant motion and the motion relating to Mr. Fredericksen in the amount not to exceed $3,000.00 and further, that plaintiff submit Dr. Fields for deposition by defendants, with plaintiff paying the cost of the deposition and Dr. *313 Fields' expert witness fees. Within thirty days of the date of this order, defendants may name a rebuttal expert to Dr. Fields and produce an expert report. Plaintiff shall pay the costs for the deposition and any expert fees incurred at the deposition. The above costs are not reimbursable should plaintiff prevail in this action.

212 F.R.D. 306

**Motions, Pleadings and Filings (Back to top)**

• 1:00CV00978 (Docket) (Sep. 27, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.