UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-10827 DPW

| | |
|---|---|
| THE FIREMAN'S FUND INSURANCE COMPANY as subrogee of JULIA PAVIA<br>　　　Plaintiff | )<br>)<br>)<br>)<br>) |
| v. | )<br>) |
| FALCO CONSTRUCTION CORP.;<br>P & D BUILDERS, INC.;<br>and<br>MICHAEL CARRESI d/b/a CARRESI PLUMBING & HEATING<br>　　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>) |
| v. | )<br>) |
| HEATMASTER, INC.<br>　　　Third Party Defendant | )<br>) |

**SUPPLEMENTAL DISCLOSURES UNDER RULE 26(e) BY THE DEFENDANT, MICHAEL CARRESI d/b/a CARRESI PLUMBING & HEATING**

The defendant, Michael Caressi d/b/a Michael Caressi Plumbing & Heating, supplements his prior disclosures concerning Daniel Slowicki, CFEI, of Fire Science Technologies, Inc. as an expert witness. As grounds for this supplementation, the defendant states that he previously disclosed Daniel Slowicki as an expert witness and produced his report, curriculum vitae and publications in his 26(a) Initial Disclosures served on all parties on August 24, 2005 and served again and filed on October 3, 2005. (Said report, curriculum vitae and publications are attached as "Exhibit A") The defendant also produced Mr. Slowicki's report, curriculum vitae and publications in his response to Falco's request for the production of documents served on November 17, 2005. In addition, the defendant listed Mr. Slowicki as an expert witness and again referenced his report on August 7, 2006 when he served his answers to the interrogatories of Joseph Falco.

The defendant now provides supplementation to the disclosures as follows:

**Compensation to be paid for the study and testimony:**

Daniel Slowicki has been and will be compensated at the rate of $140.00 per hour for his professional time spent in preparing his study and preparing for deposition and/or trial. Mr. Slowicki will be compensated at the rate of $1,400 per day plus expenses for his professional time spent at trial.

**List of cases in which Daniel Slowicki has testified at trial in the last four years:**

April, 2004. Salah Pecci and Arbella Insurance Company v Ford Motor Company, Dedham Superior Court, Dedham, MA.

February, 2005. B'Shara v Arbella Insurance Company, Hampden Superior Court, Springfield, MA

June, 2005. Hoar v Arbella Insurance Company, Hampden Superior Court, Springfield, MA

Dated: October 3, 2006                    Michael Carresi d/b/a,
                                          By his attorney,

                                          /s/ Robert P. Turner
                                          Robert P. Turner, Esquire
                                          BBO#: 504900
                                          LAW OFFICES OF BRUCE R. FOX
                                          27B Midstate Office Park
                                          Auburn, MA 01501
                                          Telephone: (866) 290-7435



**Fire Science Technologies, Inc.™**
Fire & Explosion Analysis
US Toll Free 800-852-5073
E-mail: firesci@earthlink.net

February 18, 2004

Mr. Dennis O'Neill
National Grange Mutual Insurance Company
27 Midstate Drive,
Auburn, MA 01501

Re: Fire at the Pavia Residence
 104 Hammondswood Road,
 Newton, MA
Insured: Mike Carresi
Your Claim No.: MPB06483
Our Case No.: P24005

Dear Mr. O'Neill:

Pursuant to your instructions in an assignment given to us on January 29, 2004, a forensic analysis was constructed conducted of the premises located at 104 Hammondswood Road, Newton, Massachusetts, on February 13, 2004. The purpose of this inspection, which was conducted in accordance with the guidelines established by the National Fire Protection Association in NFPA 921, was to determine the point of origin and/or cause of a fire which occurred between the first and second floors of a porch addition.

The fire building is owned and occupied by Julia Pavia. Our examination was conducted with the prior consent of Richard Ciesla, a private fire investigator retained by the insurance carrier for the homeowner. Our involvement in this case was to ascertain whether or not any activities conducted by our insured, Mike Carresi, 513 Bird Road, Mansfield, Massachusetts, had been responsible for this fire.

Upon our arrival at the building, we observed that the only visible damage on the outside was a broken attic window. The building has a gabled, slate roof, faces northwest to the street, and is surrounded by yards. There was no evidence to indicate that the fire had originated on or had communicated to the outside.

Administrative Office: P.O. Box 149 • Palmer, Massachusetts 01069 • TEL (413) 283-7003 • FAX (413) 283-2900
Singapore Office: 5001 Beach Road, #09-98 Golden Mile Complex • Singapore 199588
Washington Office: P.O. Box 33493 • Seattle, Washington 98133
New York Office: 111 8th Avenue • New York, NY 10011

Upon entering the building we observed that some repairs were ongoing. In addition, a previous investigation had been conducted into the cause of this fire by Jeffrey Lowe of EFI, Inc. Fire damage was confined to the underside of the porch/office addition located at the southeast side of the building. Debris from the fire had already been removed and discarded and a brick had been removed from the front of the firebox of the fireplace on the second floor.

Prior to conducting our inspection of the premises, we were provided with information relative to the discovery of the fire. Genevieve Bures, an independent consultant retained by EFI explained that a two story addition had been added to the original house approximately three years ago. At that time the homeowner decided to install a gas fired fireplace in the second floor office above the porch. Since this was a natural gas installation, no damper was necessary on the smoke shelf. A Mason, identified as Joe Falco, had constructed the fireplace and chimney. Inspection of the chimney from the outside of the building disclosed nothing to indicate that a chimney fire had taken place. In addition, our insured, Mike Carresi, had installed the natural gas fireplace log after the fireplace had been constructed line Mr. Falco.

On January 25, 2004, water pipes in the building burst as the result of freezing. Ms. Pavia, at that time, turned on the gas log in the fireplace to raise the temperature in the building in order to prevent further freezeups. At approximately 2:00 a.m. Ms.Pavia was awakened by the smell of smoke in her second floor bedroom. She left the bedroom and entered the office where she opened the windows in an attempt to get the smoke out of the house. No fire was visible at that time. Upon further investigation Ms. Pavia heard crackling in the ceiling above the first floor porch. She notified the fire department and awaited their arrival. Response time was approximately three minutes to the building.

Ms. Pavia reportedly lit the fireplace after the frozen pipes were discovered but had shut it off before she retired for the night. We were assured that the fireplace was not burning at the time of the incident. The smoke detectors in the building did not activate initially but did sound shortly after the discovery of the fire.

The construction of the porch included two, 2 inch by 8 inch floor joists one atop the other creating a 16 inch void space between the porch ceiling and the office

Fire Science Technologies, Inc.™
Fire & Explosion Analysis

floor. In order to soundproof the area, expanded polyurethane was injected into the joist channels.

Upon the arrival of the fire department, it was discovered that the fire was burning above the porch ceiling directly beneath the fireplace. The ceiling was opened in the foyer in order to ascertain whether or not the fire had communicated horizontally through the joist channels. In addition, the ceiling beneath the fireplace was opened. At that time it was discovered that two of the 2 inch by 16 inch floor joists had been partially incinerated. In addition, the plywood subfloor beneath the fireplace had burned away.

Our examination of the burn patterns from the first floor disclosed that the fire had been concentrated directly beneath the fireplace. The fireplace had been constructed directly on the second floor joists. The mason, Mr. Falco, had placed a sheet of one half inch plywood on top of the floor joists. He then installed a half inch thick section of fireboard. He followed that up with the red brick directly on top of the fireboard. Due to its construction, the red brick firebox was approximately one inch higher than the hearth and floor. In addition, the firebox was in direct contact with the plywood sub-structure, a violation of NFPA 211 Standard for the Installation of Chimneys and Venting System which requires a 2 inch minimum clearance.

The fireplace log that had been installed by our insured was rated for 75,000 BTU's. It was manufactured by Heatmaster, Inc, Angier, North Carolina and was Model DGF-M-24NAT, Serial No. 2027. The gas pipe, valve, and fireplace log displayed no evidence of fire damage whatsoever. In operation, heat from the burning natural gas radiated from the interior of the fireplace into the room. Radiant heat is generated omni-directionally. As a result, heat from the operation of the burner was radiated not only into the room but also into the brick firebox. This, in turn, elevated the temperature of the fireboard and transmitted the heat to the plywood substructure and floor joists where pyrolysis occurred. Our examination disclosed that the fireplace log had been properly installed. The primary defect was the design and construction of the fireplace which allowed the heated masonry and fireboard to come in direct contact with combustible materials. The culpable party, in this instance, was not our insured. Mr. Falco, because he designed and manufactured of the fireplace with disregard to the accepted codes and standards caused this fire.

3



During our conversation with Mr. Falco who was also in attendance at the inspection, we learned that the installation of the fireplace had been approved by the local Building Inspector. Our insured, on the other hand, stated that when he arrived at the building to install the fireplace log he was unable to examine the construction of the fireplace. Since he was assured that the fireplace had been approved, he installed the fireplace log accordingly. Our insured played no part in the design or construction of the fireplace. The installation of the log followed the manufacturers requirements and suggestions which were acceptable under the National Fuel Gas Code. There was nothing to indicate that our insured was in any way responsible for this fire.

At this point the forensic analysis of this loss has been completed. Please advise what further action, if any, you wish us to take in this matter.

Thank you for this opportunity to be of service and we look forward to being of assistance to you again in the near future.

Sincerely yours,

Daniel W. Slowick, CFEI
President

DWS/dd

Fire Science Technologies, Inc. reserves the right to amend and/or supplement this report in the event that new evidence, documentation, or information becomes available.

# QUALIFICATIONS OF DANIEL W. SLOWICK

**EDUCATION:**

Springfield Technical Community College, Springfield, MA
Graduated in 1974
Degree: Associate of Science in Fire Science

John Jay College of Criminal Justice, New York, NY
Graduated in 1976
Degree: Bachelor of Science in Fire Science and Administration

Eastern Connecticut Firemen's Training School, Willimantic, CT
Structural Firefighting (1969)

University of Maryland, College Park, MD
Fire Science Hydraulics (1971)

Springfield Technical Community College, Springfield, MA
Fire Officership I, II and III (1971)

Midlands Technical College, Columbia, SC
Explosive Devices (1978)

International Safety Academy, Houston, TX
Total Loss Control (1978)

The National Underwriter Company, Cincinnati, OH
Property Insurance Training Course (1978)

Bay Path Junior College, Longmeadow, MA
Basic Photography (1981)

Council of International Investigators, Inc.
Annual Seminars since 1985

Associated Locksmiths Association of America
Automobile Ignition Seminar (1992)

International Association of Arson Investigators
Post Blast Investigations Training Seminar (1996)

Page 2

### EDUCATION (cont'd)

National Association of Fire Investigators
Annual Seminar (1998)

National Association of Fire Investigators
Annual Seminar (2000)

### LICENSES AND CERTIFICATIONS:

| | |
|---|---|
| Nov. 1998: | Licensed as a Private Detective by the State of Maine |
| May 1998: | Licensed as a Private Detective by the State of New York |
| July 1995: | Registered as a Certified Fire and Explosion Investigator by the National Association of Fire Investigators |
| July 1990: | Certified as a Wood Heating Technician by the Wood Heating Education and Research Foundation |
| April 1990: | Registered with the Maine State Fire Marshal |
| Oct. 1988: | Licensed as a Private Detective by the State of Vermont |
| Aug. 1984: | Licensed as a Private Detective by the State of New Jersey |
| Feb. 1983: | Licensed as a Private Detective by the State of New Hampshire |
| Jan. 1983: | Licensed as a Private Detective by the State of Connecticut |
| March 1982: | Certified as an International Investigator by the Council of International Investigators |
| Feb. 1981: | Licensed as a Private Detective by the Commonwealth of Massachusetts |



Fire Science Technologies, Inc.™
Fire & Explosion Analysis

Page 3

**EXPERIENCE:**

July 1980 to Present

<u>President and Fire Investigator</u> for Fire Science Technologies, Inc.
Palmer, Massachusetts

Responsibilities and Duties: Fire and Explosion analysis in residential, vehicular, commercial, marine and industrial properties. Conduct background and financial investigations as well as interview insureds. Draft reports on these investigations for presentation as evidence in litigation.

March 1979 to January 1981:

<u>Fire and Explosion Investigator</u> for Connell Consultants, Ltd.
Great Neck, New York

Responsibilities and duties: Fire and Explosion analysis in residential, vehicular, commercial, marine and industrial properties. Conduct background and financial investigations as well as interview insureds. Draft reports on these investigations for presentation as evidence in litigation.

March 1978 to March 1979:

<u>Fire Loss Control Staff Analyst</u> for the Nationwide Mutual Insurance Companies, Columbus, Ohio

Responsibilities and duties: Review all fire claims over $50,000 and design, implement and evaluate fire control programs including arson and commercial fire prevention to reduce losses in the insured properties.



Page 4

**EXPERIENCE** (cont'd)

July 1978 to January 1979:

<u>Consultant</u> to the Franklin County Sheriff's Department, Columbus, Ohio

Responsibilities and duties: Under Federal grant, to develop and video tape training programs in fire investigation to be used by all police departments in the county.

June 1976 to March 1978:

<u>Director of Fire Science</u> for the State of South Carolina, <u>Associate Professor in Fire Science</u> and <u>Fire Investigator</u>, Columbus, South Carolina.

Responsibilities and duties: Develop a comprehensive two-year college curriculum dealing with all aspects of fire prevention and fire investigation and apply the curriculum to five technical colleges located throughout the state. Interview, hire, train and evaluate instructors in the curriculum. Recruit students and establish a working relationship with all fire departments in order to conduct actual fire investigations in structural fires as part of the program.

February 1977 to March 1978:

<u>Consultant</u> to the South Carolina Fire Advisory Board by appointment of Honorable James Edwards, Governor of South Carolina.

October 1973 to June 1976:

<u>Instructor</u> for the Minutemen Fire Volunteers, Inc., Ware, Massachusetts

Responsibilities and duties: Train firefighters in the proper method handling hazardous fire material fires. Instruct in various fire-related fields including structural fire fighting, fire prevention and fire investigation.



Page 5

### EXPERIENCE (cont'd)

December 1970 to February 1974:

<u>Sales Manager and Serviceman</u> for Fire Fighting Equipment, Ltd.,
Palmer, Massachusetts.

Responsibilities and duties: Sales, installation, service and inspection of all type of portable and fixed fire extinguishing systems. Conduct fire inspections and formulate fire prevention programs to eliminate hazardous conditions.

January 1969 to June 1976:

<u>Structural Firefighter</u> for the Palmer Fire District No. 1
Palmer, Massachusetts.

Responsibilities and duties: Structural firefighting, advanced to driver and engineer. Conduct routine inspections and supervised foreground operations and investigations at minor fires.

### PROFESSIONAL INVOLVEMENT:

Active member:
- National Fire Protection Association (NFPA)
   Fire Service Section
- International Association of Arson Investigators
- Society of Fire Protection Engineers
- Council of International Investigators
- Institute of Professional Investigators
- Associated Locksmiths of America
- National Association of Fire Investigators

### PUBLICATIONS:

*Investigating Vehicle Fires,* May 1983, "The Councillor."
Council of International Investigators, Akron, Ohio



Fire Science Technologies, Inc.™
Fire & Explosion Analysis

Page 6

**WORK FOR HIRE:**

    Basic Fire Loss Control Course (November, 1978)
    Welding and Cutting Fire Prevention Guide (July, 1978)
    Smoke Detectors (July, 1978)
    Masonry Fire Places and Chimneys (August, 1978)
    Church Fire Prevention Program (January, 1979)
    Flammable and Combustible Liquids
    Storage Cabinets for Combustible Liquids (January, 1979)

**SEMINAR LECTURER:**

    SCI International Security, LTD., India
    Securex Annual Seminar, Singapore
    Council of International Investigators, Inc., New Delhi, India
    Council of International Investigators, Inc., Las Vegas, Nevada
    Arbella Mutual Insurance Company
    Hanover Insurance Company
    Vermont Mutual Insurance Company
    New London County Mutual Insurance Company
    Great American Insurance Company

Revised 1/12/02



Fire Science Technologies, Inc.™
Fire & Explosion Analysis