UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE FIREMAN'S FUND INSURANCE )<br>COMPANY as subrogee of JULIA PAVIA )<br>77 San Marin Drive Novado, California, )<br>    Plaintiff )<br> )<br>VS. )<br> )<br>FALCO CONSTRUCTION CORP., )<br>P & D BUILDERS, INC. and )<br>MICHAEL CARRESI d/b/a )<br>CARRESI PLUMBING & HEATING, )<br>    Defendants ) | CIVIL ACTION<br>NO. 05-cv-10827-DPW |

### DEFENDANT/CROSS-CLAIM DEFENDANT, FALCO CONSTRUCTION CORP.'S SUR-REPLY MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MEMORANDUM OF LAW

Now comes the Defendant, Falco Construction Corp. (hereinafter "Falco") by its counsel, and hereby files this Sur-Reply Memorandum in Opposition to Plaintiff's Memorandum of Law.

As grounds therefore, Falco states as follows:

1. On March 27, 2007, the Plaintiff filed a memorandum of law in support of its allegation that, under Massachusetts law, a home improvement general contractor can be found vicariously liable for its subcontractors' work.

2. In support of its allegation, the Plaintiff relies on *Whalen v. Shivek,* 326 Mass. 142, 150 (1950). This reliance is misplaced.

3. Specifically, *Whalen* arose out of an injury to a subcontractor's employee during the performance of inherently dangerous work. Although no direct negligence was ever proven against the defendant general contractor, the Court held that, in the context of

   inherently dangerous construction work, the evidence was sufficient to hold the general contactor liable for an injury sustained by the subcontractor's employee.

4. In the instant case, the Plaintiff alleges that the Defendants negligently constructed a fireplace which resulted in property damage, more than two years after the construction work was completed. The Plaintiff does not allege strict liability of the general contractor based upon inherently dangerous work. Clearly, the holding in *Whalen* is not applicable to allegations of ordinary negligence in a construction defect case involving the construction of a fireplace. The fact that the negligent construction of a fireplace might cause a fire to ignite, thereby causing property damage, is insufficient to render applicable the holding in *Whalen*.

5. Moreover, the Plaintiff relies on *Guliani v. Penny,* 1998 WL 1198695 (Mass.Super. 1998). [See, Exhibit No. 1].

6. First, *Guiliani* is a Superior Court case, and therefore the Court is not bound by said decision. Falco is not aware of any appellate Court decisions that support the argument that a general contractor can be held vicariously liable for its subcontractor's negligence.

7. Further, *Guiliani* was decided on the basis of contract law, and is not applicable to the instant case, wherein P&D alleges that it might be held vicariously liable for Falco's negligence.

8. Moreover, the Court in *Guiliani* relied on Massachusetts G.L. c. 142A, section 9(c) for the proposition that home improvement contractors are "deemed jointly and severally liable for their own negligence and that of any subcontractor."

9. However, G.L. c. 142A, section 9(c), states that a registered contractor "shall be jointly and severally liable for", *inter alia*, "violations of any provision of this chapter, including actions by the registrant's employee, subcontractors or salespersons."

10. Falco submits that the plain meaning of said statute indicates that it is not intended to make the general contractor vicariously liable for the subcontractors' negligence.

11. To the contrary, the statute merely re-states the well settled law in Massachusetts that a general contractor is contractually obligated to complete the work for which it contracted in a workmanlike manner.

12. In addition, Falco submits that the undisputed facts of this case establish that P&D was not passively negligent in the construction of the fireplace. It was actively involved in the design and construction of the subject fireplace. P&D failed to supervise and/or coordinate the work of the subcontractors that constructed the fireplace.

13. As the licensed construction supervisor for the project, P&D Builders' principal, Mr. Rothschild, was responsible for ensuring that the fireplace was constructed in accordance with the Massachusetts Building Code. *780 CMR* R 5.2.15.1

14. Accordingly, P&D is not entitled to tort based common law indemnity as a matter of law because it was actively negligent. *Decker v. Black & Decker Mfg. Co.*, 389 Mass. 35, 40 (1983).

WHEREFORE, the Defendant/Cross-claim Plaintiff, Falco Construction Corp., requests that the Court enter partial summary judgment in its favor and dismiss Count I of the Defendant/Cross-claim Plaintiff, P&D Builders, Inc.'s Cross-claim.

        Respectfully submitted,
        The Defendant,
        Falco Construction Corp.,
        By its Attorneys,

        /s/ John F. Toomey
        John F. Toomey, BBO # 500160
        David J. Crowley, BBO # 630169
        TOOMEY & YUDYSKY LLP
        99 Summer Street
        Boston, MA 02110
        (617) 946-0930
        tylawyers@tyllp.com

Dated: April 4, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the above date.

/s/ John F. Toomey

DC 80699.1 4/3/07

# EXHIBIT NO. 1

# EXHIBIT NO. 1

Westlaw.

Not Reported in N.E.2d                                                                                                    Page 1

Not Reported in N.E.2d, 1998 WL 1198695 (Mass.Super.)
**(Cite as: Not Reported in N.E.2d)**

C
Guiliani v. PennyMass.Super.,1998.Only the Westlaw citation is currently available.
Superior Court of Massachusetts.
Richard W. GUILIANI,
v.
William PENNY et al.
**Nos. 950175, 950163.**

Aug. 20, 1998.

MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
BORENSTEIN.
*1 This action is an appeal and a cross-appeal from an arbitrators' award against the Defendant and in favor of the Plaintiff. The Defendant is appealing the award of any damages and the Plaintiff is appealing claiming the amount of damages awarded was insufficient. This matter is before the court on Plaintiff's Motion in Limine for a Directed Finding of Liability. Whatever it is titled, since this is really a Motion for Judgment on the Pleadings, and there are for my consideration matters outside the pleadings, this Court, pursuant to Mass.R.Civ.P. 12(c), will treat this motion as a Motion for Summary Judgment, solely on the issue of liability, under Mass.R.Civ .P. 56. For reasons set forth below, this motion is allowed.

BACKGROUND AND FACTS

The following material facts are undisputed. On August 24, 1992, the Plaintiff Guiliani ("Guiliani") and the Defendant Design Build ("Design") entered into a written contract under which Design would build an addition and remodel portions of Guiliani's home. The contract price was $226,436.76 and included the addition of a family room with cathedral ceiling, a bedroom/garage, a porch/dining room, bathrooms and other remodeling. Design prepared the plans and secured a building permit. Construction began on November 2, 1992 and continued until May 1993. During the construction period, Design could not purchase a sized laminated ridge beam, which would be the main support for the family room. Since the specifications and plans called for a sized laminated ridge beam, Design spoke with Guiliani and suggested that they use scissor trusses as the structural support for the family room. Guiliani agreed and Design consulted Kanayo Lala ("Lala"), a registered professional engineer. Lala provided Design with a sketch of two types of scissor trusses, without dimensions, but recommended that Design purchase factory-made trusses. Design built the trusses on site and Paul Domenici ("Domenici"), a framing subcontractor, assembled the trusses in the home. The trusses were constructed using butt-joints, rather than lap-joints and every other truss was missing the horizontal member, as specified in Lala's sketches.

As of May 1993, Guiliani had not received any stamped calculations from Design concerning the structure in the family room and was very concerned about the structural stability in the family room. Guiliani hired Kenneth Kruger ("Kruger"), a registered architect and professional engineer to review the work done by Design Build. In his report Kruger questioned the structural stability of the family room. Kruger suggested to Guiliani that he should hire Lala to prepare specifications and plans for the remedial work which would have to be done in order to alleviate the structural problems. Design refused to do any remedial work due to the fact that Guiliani had not paid in full.

Serious problems concerning the structural stability in the family room arose in January 1994, when roof leaks surfaced throughout Guiliani's home. Guiliani notified Design but did not receive a response. Guiliani then hired another contractor to perform remedial work. The leaks continued throughout the winter months.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d

Page 2

Not Reported in N.E.2d, 1998 WL 1198695 (Mass.Super.)
(Cite as: Not Reported in N.E.2d)

DISCUSSION

*2 This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. *Cassesso v. Commissioner of Correction,* 390 Mass. 419, 422 (1993); *Community Nat'l Bank v. Dawes,* 369 Mass. 550, 553 (1976); Mass.R .Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. *Pederson v. Time, Inc.,* 404 Mass. 14, 16-17 (1989).

The Plaintiff supports his motion using applicable legal authority and the undisputed facts of this case. Guiliani has demonstrated that Design Build and Penny are liable for the defective design and construction work allegedly performed by themselves or their subcontractors.

M.G.L.c. 142A, Section 9(c) clearly indicates that both Design Build and Penny, as the contractor and contractor's designee, are specifically deemed jointly and severally liable for their own negligence and that of any subcontractors. In addition, under contract law, the party contracting remains liable regardless of who actually performs the contract obligation. See Restatement 2D of Contracts, Section 318(3) (1986). Finally, in *Litter H. Hawkins v. Colonial Floors and Albert Strehlke,* Norfolk County Superior Court Civil Action No. 96-910, January 1998 (Gants, J.), the court held that a flooring company was liable for the defective floor installation by an independent contractor. The court went on to note that "the obligation to fulfill the contract belonged to [the general contractor]. Under contract law, it is irrelevant whom it (the general contractor) directed to perform that obligation, because it remains liable whether the failure was caused by an employee or an independent contractor." Since it is undisputed that Design Build and Penny are the general contractor and Lala and Domenici are subcontractors and/or independent contractors, Design Build and Penny are liable for the actions of both Lala and Domenici as they pertain to Design Build's contract with Guiliani.

In addition to the applicable legal authority, the sworn interrogatories and depositions by Design Build and Penny show that they admit that there were defects in the design and construction of the project and they claim that the two subcontractors were negligent and responsible for the defects. Nowhere is any fault denied, or attributable to Guiliani. In the Defendants' Answers to Lala Interrogatory No. 7, Design Build and Penny claim that all of the damages suffered by Guiliani were the "result of the acts and/or omissions of Lala." The Defendants also admit, in their answer to Domenici's Interrogatory No. 7 that "Domenici failed to adequately review and/or supervise and/or correct Muchio's (Domenici's subcontractor) work resulting in an excess of ice build-up on the roof which Guiliani claims caused substantial damage to his home." Design Build also admits that Domenici "did not use proper nailing, and he chose to eliminate the collar tie board on every other truss." In his deposition, Mr. Penny testified about " problems with the truss system" and "problems with the design." (Penny Dep. Vol. 2:25-26.) He also testified that Domenici did not use lap joints, neglected to install half inch plywood on the inside wall and eliminated a column in the kitchen. (Penny Dep. Vol. 2:101-102.) Finally, in his deposition, Mr. Penny stated that it was his "responsibility to oversee the subcontractors" and "get the job built" as the "general contractor." (Penny Dep. Vol. 1:27-28.)

*3 As this Court has already stated, the acts and omissions of subcontractors are attributable to the general contractor. The fact that Design Build and Penny blame Lala and Domenici for the defects is irrelevant on the issue before me, and does not preclude this Court from finding Design Build and Penny liable. Design Build and Penny may pursue any claims they have against Lala and Domenici but that is a separate issue and should be tried between them. Since Design Build and Penny admit that Lala and Domenici, their agents or contractors, caused all of the damages suffered by Guiliani, Design Build and Penny, as the general contractor, are liable to Guiliani for damages, if any. The Court hereby finds, that on the undisputed facts, liability exists against the Defendant.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                                          Page 3
Not Reported in N.E.2d, 1998 WL 1198695 (Mass.Super.)
**(Cite as: Not Reported in N.E.2d)**

### ORDER

Based upon the foregoing reasons, it is hereby ORDERED that the Plaintiff's Motion for a Directed Finding of Liability, treated as a Motion for Summary Judgment, be ALLOWED.

Mass.Super.,1998.
Guiliani v. Penny
Not Reported in N.E.2d, 1998 WL 1198695 (Mass.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.