UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE FIREMAN'S FUND INSURANCE COMPANY as subrogee of JULIA PAVIA 77 San Marin Drive Novado, California, Plaintiff | ) ) ) ) | CIVIL ACTION NO. 05-cv-10827-DPW |
| VS. | ) ) | |
| FALCO CONSTRUCTION CORP., P & D BUILDERS, INC. and MICHAEL CARRESI d/b/a CARRESI PLUMBING & HEATING, Defendants | ) ) ) ) ) | |

## DEFENDANT, FALCO CONSTRUCTION CORPORATION'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF BREACH OF CONTRACT AGAINST THE DEFENDANT AS THERE IS NO EVIDENCE THAT PLAINTIFF'S INSURED CONTRACTED WITH THE DEFENDANT

The Defendant, Falco Construction Corporation ("Falco"), hereby moves this Honorable Court, prior to trial and prior to impaneling a jury in this case, to preclude the Plaintiff from introducing any evidence of or referring to the Plaintiff's breach of contract claim against Falco.

In support hereof, Falco states as follows:

1. This subrogation action arises out of a fire loss that occurred on January 26, 2004 at a residence located at 104 Hammondswood Road, Newton, Massachusetts (hereinafter "subject premises"). Prior to the alleged fire, the Defendants, P&D Builders, Inc. (hereinafter "P&D"), Falco and Michael Carresi d/b/a Carresi Plumbing & Heating (hereinafter "Mr. Carresi") built an addition at the subject premises, which included the construction of a fireplace into which a gas log appliance was inserted. The Plaintiff alleges that the Defendants negligently built the fireplace in a defective and dangerous manner. The

Plaintiff further alleges that the Defendants breached their contracts with the Plaintiff's insured by constructing the gas log fireplace in an unworkmanlike manner.

2.     A motion *in limine* is intended "to prevent irrelevant, inadmissible, or prejudicial matters from being admitted in evidence." Boston v. Board of Education 392 Mass. 788, 796 (1984) quoting Commonwealth v. Hood, 389 Mass. 581, 594 (1983).

3.     It is axiomatic that, in order to establish a *prima facie* case for breach of contract, it is the Plaintiff's burden to prove, *inter alia,* the existence of an agreement between the parties supported by valid consideration. Singarella v. City of Boston, 342 Mass. 385, 387 (1961).

4.     In the instant case, the Plaintiff has failed to show that its insured, Julia Pavia had an agreement with Falco to construct the subject fireplace.

5.     To the contrary, the evidence establishes that the Plaintiff's insured contracted with P&D to construct the subject fireplace. The Plaintiff's insured did not have a contractual relationship with Falco relative to his work at the subject premises. [Exhibit No. 1, Deposition of Julia Pavia, pgs. 1-2, 18, 22 and 28-31].

6.     Instead, P&D subcontracted the construction of the fireplace to various subcontractors. [Exhibit No. 2, Deposition of Philip Rothschild, pgs. 1-5, 186-187, 189-190, 192 and 255-256].

7.     Accordingly, Falco submits that any evidence of or reference to the Plaintiff's breach of contract claim against Falco is irrelevant, inadmissible and unduly prejudicial.

    WHEREFORE, the Defendant, Falco Construction Corp. requests the Court to preclude the Plaintiff from introducing any evidence of or referring to its breach of contract claim against Falco.

Respectfully Submitted,
The Defendant,
Falco Construction Corporation,
By its attorneys,

/s/ David J. Crowley
John F. Toomey, BBO # 500160
David J. Crowley, BBO # 630169
TOOMEY & YUDYSKY LLP
99 Summer Street
Boston, MA 02110
(617) 946-0930

Date: 5/23/07

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the above date.

/s/  David J. Crowley

DC  82192.1  5/23/07

# EXHIBIT NO. 1

UNITED STATES DISTRICT COURT
District of Massachusetts

No. 05-CV-10827-DPW

The Fireman's Fund Insurance
Company, as subrogee of Julie
Pavia, 777 San Marin Drive, Novato,
California,
            Plaintiff

**ORIGINAL**

vs.

Falco Construction Corp., P. & D.
Builders, Inc., and Michael Carresi,
d/b/a Carresi Plumbing & Heating,
            Defendants

vs.

Heatmaster, Inc.,
            Third-Party Defendant

**DEPOSITION OF JULIE A. PAVIA**, a witness
called on behalf of the Defendant Falco Construction
Corp., pursuant to the Federal Rules of Civil
Procedure, before Jessica L. Bisaillon, a Registered
Professional Reporter, Certified Shorthand Reporter,
and Notary Public in and for the Commonwealth of
Massachusetts, at the offices of Morrison Mahoney,
LLP, 250 Summer Street, Boston, Massachusetts
02210, on Thursday, February 16, 2006, commencing
at 11:30 a.m.

DUNN & GOUDREAU COURT REPORTING SERVICE, INC.
One State Street, Suite 1150
Boston, Massachusetts 02109
(617) 742-6900

## A P P E A R A N C E S:

The Law Offices of Stuart G. Blackburn
   BY:  Erik Loftus, Esquire
   Two Concorde Way
   Post Office Box 608
   Windsor Locks, Connecticut 06096
   Appearing on behalf of the Plaintiff and
   the deponent

Toomey & Yudysky, LLP
   BY:  David J. Crowley, Esquire
   99 Summer Street
   Boston, Massachusetts 02110
   Appearing on behalf of Falco Construction Corp.

Morrison Mahoney, LLP
   BY:  Curtis L.S. Carpenter, Esquire
   250 Summer Street
   Boston, Massachusetts 02210
   Appearing on behalf of P. & D. Builders, Inc.

The Law Offices of Bruce R. Fox
   BY:  Robert T. Turner, Esquire
   27B Midstate Drive, Suite 100
   Auburn, Massachusetts 01501
   Appearing on behalf of Michael Carresi,
   d/b/a Carresi Plumbing & Heating

Hassett & Donnelly, P.C.
   BY:  Scott T. Ober, Esquire
   484 Main Street, Suite 560
   Worcester, Massachusetts 01608
   Appearing on behalf of Heatmaster, Inc.

```
 1              carpenters, tile.

 2   Q.   Who was the electrician?

 3   A.   It was Michael Mahoney (phonetic).  I think

 4        that's his last name.

 5   Q.   Had you dealt with Mr. Mahoney professionally

 6        before this project?

 7   A.   Yes.

 8   Q.   And who was the plumber?

 9   A.   Michael Carresi.

10   Q.   Had you ever dealt with Mr. Carresi

11        professionally before this project?

12   A.   Yes.

13   Q.   Did P. & D. Builders hire the subcontractors to

14        work at the project?

15   A.   Yes.

16   Q.   Did you hire any of your subcontractors to work

17        at the project?

18   A.   No.

19   Q.   Had Mr. Carresi ever performed any work for you

20        at your home prior to June of 2000?

21   A.   At the Exmoor address?  Yes.

22   Q.   Had Mr. Carresi performed work at any of your

23        homes prior to June of 2000?

24   A.   Yes, yes.
```

```
 1            surrounding it, but he wanted gas logs.
 2    Q.    And that was your husband's request?
 3    A.    Yes.
 4    Q.    When you had a conversation with your husband
 5          about the gas fireplace, did you go to Mr.
 6          Rothschild about having it installed?
 7    A.    Yes.
 8    Q.    And do you recall when that occurred, when you
 9          first went to Mr. Rothschild to discuss having a
10          gas fireplace put in the office?
11    A.    Are you talking time line?
12    Q.    Approximate date.
13    A.    No, I don't remember.
14    Q.    Was it sometime during 2000?
15    A.    Yes.
16    Q.    And how do you know that?
17    A.    Because that's when the majority of the
18          construction in the house was being done.
19    Q.    Do you recall when the construction of the
20          addition was completed?
21    A.    No.
22    Q.    Do you know the year that it was completed?
23    A.    No.
24    Q.    After Mr. Rothschild sent you Exhibit 1, his
```

1           Is it fair to say the gas log fireplace
2       that was installed was not part of the original
3       scope of work for that job?
4    A.  According to the document, yes.
5    Q.  Is that consistent with your memory?
6    A.  Sure.
7    Q.  Is that a yes?
8    A.  Yes.
9    Q.  Did P. & D. Builders actually do any of the
10      construction work at the project?
11   A.  They did all of the construction work at the
12      project.
13   Q.  They self-performed some of the work?
14   A.  Their carpenters, his subcontractors.
15   Q.  Are you familiar with the term "general
16      contractor"?
17   A.  Yes.
18   Q.  What is your understanding of that term?
19   A.  I, as a designer, am usually the general
20      contractor on the jobs that I do, so I'm very
21      familiar with the term.  It's somebody who runs
22      the job.
23   Q.  Somebody who supervises the work of the
24      subcontractors?

1    A.    Yes.

2    Q.    And coordinates the work with the subcontractors?

3    A.    Yes.

4    Q.    And as I understand it, P. & D. Builders did more

5          than act as the general contractor on this job?

6    A.    Yes.

7    Q.    They actually did some of the carpentry work?

8    A.    Yes.

9    Q.    Did they do any other work at the project?

10   A.    Are you defining his subcontractors as working

11         for P. & D., or are you defining them as having

12         their own businesses?

13   Q.    That's a good question.  The subcontractors, as

14         you call them, they didn't work directly for

15         P. & D., did they?

16   A.    I paid P. & D. Builders, and the money was

17         disbursed through P. & D. Builders.

18   Q.    When you typically act as a general contractor in

19         your business, do the subcontractors work for

20         you?

21   A.    On my design jobs, yes, the subcontractors work

22         for me.

23   Q.    And you're responsible for supervising their

24         work?

1    A.    Yes.

2    Q.    I think my question was, other than the carpentry

3          work at the project, did P. & D. self-perform any

4          of the construction work?

5    A.    And again, I ask you, does that mean Phil

6          Rothschild himself, or does that mean the

7          subcontractors?  It's a difficult question to

8          answer when it's being asked that way.

9    Q.    Well, did Mr. Rothschild, P. & D. Builders, have

10         employees that worked at the jobsite?

11   A.    I am thinking that only the carpenters are his

12         employees, so therefore I would assume it not on

13         that question, did P. & D. --

14   Q.    Your understanding is that the carpenters worked

15         as employees for P. & D. Builders?

16   A.    Yes.

17   Q.    And who were the carpenters at the project?

18   A.    For the most part it was David Petronelli and

19         Charles Gubbins.  They were the finish

20         carpenters.  Mike Roach, Mike Conte, and Jim

21         O'Connell were rough carpenters.

22   Q.    Mike Roach, Mike Conte, and Jim O'Connell also

23         worked at the project?

24   A.    Yes.

1    Q.    Were there any other carpenters who worked at the

2          project?

3    A.    No.

4    Q.    And P. & D. Builders hired the subcontractors to

5          work at the project?

6    A.    Yes.

7    Q.    Did you have to approve the subcontractors before

8          they were allowed to work at the project?

9    A.    No.

10   Q.    Did you have any role at all in hiring any of the

11         subcontractors to work at the subject property?

12   A.    The painters, yes.

13   Q.    What company did the painters work for?

14   A.    Folan.

15   Q.    F-o-l-e-n?

16   A.    F-o-l-a-n.

17   Q.    Did you hire any of the other subcontractors at

18         the project?

19   A.    No.

20   Q.    You relied on P. & D. Builders to do that for

21         you?

22   A.    Yes.

23   Q.    Okay.  After the addition was built onto your

24         home, were you able to access the addition from

# EXHIBIT NO. 2

**PHILLIP ROTHSCHILD**
**March 30, 2006**



Page 1

```
 1                  UNITED STATES DISTRICT COURT

 2               FOR THE DISTRICT OF MASSACHUSETTS

 3

 4

 5

 6

 7     *******************************

 8     THE FIREMAN'S FUND INSURANCE

 9     COMPANY as subrogee of JULIA PAVIA,

10                    Plaintiff

11     vs.

12     FALCO CONSTRUCTION CORP., P&DK

13     BUILDERS, INC. and MICHAEL

14     CARRESI d/b/a CARRESI PLUMBING &

15     HEATING,                    C.A. 05-10827DPW

16                    Defendants

17     vs.

18     HEATMASTER, INC.,

19                    Third-party Defendant

20     *******************************

21

22

23

24
```

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**PHILLIP ROTHSCHILD**
**March 30, 2006**



Page 2

1

2

3

4

5

6

7

8

9

10

11         DEPOSITION OF: PHILLIP ROTHSCHILD

12             MORRISON, MAHONEY, LLP

13               250 Summer Street

14            Boston, Massachusetts

15       March 30, 2006         10:20 a.m.

16

17

18

19

20

21             Darlene M. Coppola

22        Registered Professional Reporter

23         Certified Professional Reporter

24

**PHILLIP ROTHSCHILD**
**March 30, 2006**

Page 3

1   APPEARANCES:

2   Representing the Plaintiff:

3       LAW OFFICES OF STUART G. BLACKBURN

4       Two Concord Way

5       P.O. Box 608

6       Windsor Locks, CT   06096

7       BY:   STUART G. BLACKBURN, ESQ.

8       860.292.1116

9       fax 860.292.1221

10

11  Representing P & D Builders:

12      MORRISON, MAHONEY, LLP

13      250 Summer Street

14      Boston, MA   02210

15      BY:   CURTIS L.S. CARPENTER, ESQ.

16      617.439.7589

17      fax 617.342.4841

18

19

20

21

22

23

24

**PHILLIP ROTHSCHILD**
**March 30, 2006**

Page 4

1    APPEARANCES:

2    Representing Michael Carresi d/b/a Carresi

3    Plumbing & Heating:

4        THE LAW OFFICES OF BRUCE R. FOX

5        27B Midstate Drive

6        Suite 100

7        Auburn, MA    01501

8        BY:   ROBERT P. TURNER, ESQ.

9        866.290.7435

10        fax 508.832.5716

11

12    Representing Heatmaster, Inc.:

13        HASSETT & DONNELL, PC

14        484 Main Street

15        Suite 560

16        Worcester, MA    01608

17        BY:   SCOTT T. OBER, ESQ.

18        508.791.6287

19        fax 508.791.2652

20

21

22

23

24

**PHILLIP ROTHSCHILD**
**March 30, 2006**

Page 5

1    APPEARANCES:

2    Representing Falco Construction Corp.:

3          TOOMEY & YUDYSKY, LLP

4          99 Summer Street

5          Boston, MA    02110

6          BY:  DAVID J. CROWLEY, ESQ.

7          617.946.0930

8          fax 617.946.0989

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**PHILLIP ROTHSCHILD**
**March 30, 2006**

Page 186

1 | by a solid fuel burning fireplace?

2 |     A It's a gas fireplace or wood,

3 | either one.

4 |     Q Prior to the work at the Pavia

5 | house, the construction of the addition, were

6 | you familiar with the code requirements for a

7 | solid fuel burning fireplace?

8 |     A No.

9 |     Q Did you know that there were

10 | certain code requirements for a solid fuel

11 | burning fireplace?

12 |     A Yes.

13 |     Q Do you own a copy of the

14 | Massachusetts Building Code?

15 |     A Yes.

16 |     Q But prior to the Pavia job, you

17 | had never made yourself familiar with those

18 | provisions relating to solid fuel burning

19 | fireplaces?

20 |     A No.

21 |     Q And with regard to the

22 | construction of the addition at the Pavia

23 | house, you were the general contractor for

24 | that job?

**PHILLIP ROTHSCHILD**
**March 30, 2006**

Page 187

1      A Yes.

2      Q What were your duties and

3  responsibilities as the general contractor?

4      A To do the demolition work, the

5  excavation, the framing, the finish work,

6  insulation, plaster and the finish work.

7      Q That was the scope of work for

8  you?

9      A Yes.  We did the kitchen,

10  bathrooms, anything that needed to be done

11  other than the fireplace.

12      Q So it's your position that the

13  fireplace was excluded from your scope of

14  work as the general contractor?

15      A Yes.

16      Q The work that you did supervise

17  as the general contractor, did you hire the

18  subcontractor for that work?

19      A Yes, some of it, the

20  electrician, plumber, plasterer, insulation

21  people and Falco was hired to do the brick

22  work.

23      Q On the work that you acted as

24  the general contractor, did you coordinate

**PHILLIP ROTHSCHILD**
**March 30, 2006**

Page 189

1          Q What did you do?

2          A I told her, Julie, I said, I

3    don't really want anything to do with the

4    fireplace, that's on your nickel, I said to

5    her.

6          Q Did you ever put anything in

7    writing to memorialize your conversation with

8    Julie Pavia excluding the fireplace work from

9    your scope of work?

10          A Other than on the paperwork

11    there where it says no fireplace, I'm not

12    sure where those are now, but it does say it

13    somewhere in there.

14          Q In the exhibits marked today?

15          A Yes.

16          Q That's the only place?

17          A Yes.

18          Q Did you hire Mr. Falco to do the

19    masonry work for the fireplace?

20          A I hired him, Mr. Falco, to do

21    the masonry -- no, to do the masonry work for

22    the addition.

23          Q Who hired Mr. Falco to do the

24    masonry work on the fireplace?

**PHILLIP ROTHSCHILD**
**March 30, 2006**

Page 190

1        A Well, he was instructed what to

2    do by Julie, but I hired him to do the other

3    part of the work.  I don't know if you could

4    gel it together or what, but ...

5        Q The work that you hired Mr.

6    Falco to do was to put the brick on the

7    exterior of the property?

8        A Yes, and patch in the holes, the

9    windows and stuff that came out.

10        Q Somebody else hired him to do

11    the brick work for the fireplace?

12        A He was paid by me.  No one else

13    actually hired him to do that.  He just did

14    what she told him to do, she meaning Julie.

15    She designed it, gave it to him to build.

16        Q But you paid Mr. Falco for the

17    work?

18        A Yes.

19        Q Did you pay Mr. Falco in a lump

20    sum for the work that did he on the exterior

21    and the fireplace?

22        A I think -- no, I paid him

23    separate payments, I think three payments or

24    two payments; two payments.

**PHILLIP ROTHSCHILD**
**March 30, 2006**

Page 192

1        Q That was a flat fee?

2        A Yes.

3        Q Did Mr. Falco have anybody

4    assist him with the fireplace work?

5        A Well, yes, his son.

6        Q What is his son's name?

7        A Joe Junior.

8        Q Other than Mr. Falco and Joe

9    Junior, did any other Falco employees work on

10    the Pavia job?

11        A Yes.

12        Q Who else did?

13        A His other son.

14        Q What is his name?

15        A Steve, I think.

16        Q Steven worked on the fireplace?

17        A No, he mixed all the mortar and

18    worked outside.

19        Q Before the fireplace was built,

20    did you go to the City of Newton building

21    inspector to amend the scope of the building

22    permit that you pulled?

23        A Yes.

24        Q If you weren't the general

**PHILLIP ROTHSCHILD**
**March 30, 2006**

Page 255

1    you enough?

2        A Right.

3                MR. BLACKBURN:  Thank you.

4    Nothing further.

5                MR. CROWLEY:  A few follow-up

6    questions.

7

8

9        EXAMINATION BY MR. CROWLEY:

10       Q You paid Mr. Falco for the work

11   on the fireplace?

12       A Yes.

13       Q Was that by check?

14       A Yes.

15       Q And in turn, were you paid by

16   Miss Pavia for the work on the fireplace?

17       A Yes.

18       Q Did you bill Miss Pavia for Mr.

19   Falco's work plus 20 percent profit on that

20   work?

21       A Yes, I think that's what it was.

22       Q So that you profited from the

23   work Mr. Falco did on the job?

24       A Yes.

**PHILLIP ROTHSCHILD**
**March 30, 2006**

Page 256

1      Q So with that in mind, do you

2   feel you had a responsibility to supervise

3   and inspect Mr. Falco's work on the

4   fireplace?

5          A Yes.

6          Q And did you do that?

7          A No, because I figured they're

8   all professionals, they know what they need

9   to do, they know how to do it.  They've done

10   it for 20 some odd years.  I shouldn't have

11   to -- if I have to stand over somebody, I

12   don't want them around.

13      Q As a general contractor, you

14   understood you were responsible ultimately

15   for the work your subcontractors did?

16          A Yes.

17          Q Correct?

18          A Yes.

19                  MR. CROWLEY:  I don't have

20   anything further.

21                  MR. OBER:  A couple quick

22   follow-ups.

23

24