IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------X
FIREMAN'S FUND INSURANCE  COMPANY
as subrogee of JULIA PAVIA                            CIVIL ACTION NO.
                                                     05-10827 (RBC)
                    Plaintiff,

            vs

FALCO CONSTRUCTION CORP.;
P & D BUILDERS, INC.;
and
MICHAEL CARRESI d/b/a CARRESI
PLUMBING & HEATING

                                                     JUNE 6, 2007

                    Defendants.
-------------------------------------------------------------X

## PLAINTIFF'S OBJECTION TO DEFENDANT FALCO CONSTRUCTION'S
## MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF NEGLIGENCE

Plaintiff, Fireman's Fund Insurance Company, by and through its undersigned

counsel, hereby files its objection to defendant Falco Construction's Motion *in Limine* to

exclude evidence of negligence as against Falco Construction.  In support hereof, the

Plaintiff states as follows:

1.      As noted by defendant Falco, this is a subrogation action resulting from January

26, 2004 fire at the residence of Julia Pavia, located at 104 Hammondswood Road,

Newton.  Prior to the fire, defendant P&D Builders was retained by Ms. Pavia to

construct an addition to the home.  P&D Builders subsequently retained Falco

Construction and Carresi Plumbing as subcontractors on the project.  Falco was to

perform the masonry aspects of the project, including the construction of a fireplace into

which a gas log was inserted and connected by Carresi.  The aforementioned fire

resulted from the improper construction of the fireplace. The plaintiff has alleged, *inter alia,* that Falco was negligent in its construction of the masonry portion of the fireplace.

2.    Defendant Falco, in its motion, correctly states that the plaintiff must establish a duty of care as it related to the construction of fireplaces. However, the defendant Falco further states, incorrectly, that the plaintiff will proffer no expert opinion regarding that duty of care.

3.    Under the facts of this case, the jury would be permitted to find, based on their own lay knowledge, that the construction of the fireplace was so inadequate that it breached the standard of care. See: deConto v. Ametek, 367 Mass. 776, 328 NE 2d 873 (1975); Smith v. Ariens Co., 375 Mass. 620, 377 N.E. 2d 954 (1978); Pongorus v. Saab, 396 Mass. 1005, 486 N.E. 2d 28 (1985). Nevertheless the plaintiff has properly disclosed, and made available for deposition, its expert, Genevieve Bures. Ms. Bures has twenty-five years of fire investigation experience and is a Certified Fire Inspector. (See Exhibit A Deposition Testimony of G. Bures, at pages 10 and 24.) Indeed, Ms. Bures' specialty is fireplace construction and she has taught and continues to teach numerous classes related to fireplace construction, and has done so in forty different states, including Massachusetts. (See Ex. A, pages 12 and 15.)

4.    While Mr. Falco has taken the position that he was hired to build a decorative fireplace only, at least two witnesses have testified that he was aware the fireplace would be used with a gas log insert and therefore as an operating fireplace. (See Deposition Testimony of Julia Pavia attached as Exhibit B at pages 56 and 129 and Deposition Testimony of Philip Rothschild attached as Exhibit C at pages 98 and 107). Accordingly, there is at least a question for the jury to decide regarding what type of

2

structure Mr. Falco was asked to build. Even Mr. Falco would concede that the structure he built was not a fireplace and any mason who built such a "fireplace" had violated any recognized standard of care.

5.    Ms. Bures is prepared to testify concerning the proper construction of a fireplace. To the extent the jury finds that Mr. Falco did agree to build a working fireplace, then they will have the benefit of Ms. Bures' opinions on the deficiencies of what Mr. Falco actually built. Ms. Bures testified, in her deposition, that the fireplace as constructed by Mr. Falco did not meet a single minimum guideline for fireplace construction as listed by the National Fire Protection Association (NFPA). (Ex. A, pg. 35.) She listed examples of the various ways in which the construction was deficient. If the fireplace was intended to be solid fuel burning, the masonry structure should have been started at the foundation of the home, not just below the floor on the second floor. (Ex. A, pg. 39.) Unless the insulation and masonry structure were built significantly thicker, fire brick should have been used, not the red brick installed by Falco. (Ex. A, pg. 38.)

6.    Ms. Bures has not been asked to wade through the plethora of conflicting testimony regarding the instructions for construction and/or intended use of the fireplace. As such, she did not specifically opine that Falco Construction violated its duty of care with respect to the construction of the fireplace. However, it is clear that she is qualified to offer expert testimony regarding the construction of fireplaces and that she intends to testify that the structure built in the Pavia residence was significantly deficient to act as a fireplace. The jury will be charged with making the determination of

3

what Mr. Falco (and the other Defendants) had agreed to do. Certainly if they decide

that Mr. Falco agreed to provide an operating fireplace they will have guidance through

Mr. Bures' testimony of the duty of care in building such a fireplace.

WHEREFORE, the Plaintiff respectfully requests this Court to deny the

Defendant Falco Construction's motion to exclude evidence of its negligence due to a

purported lack of expert testimony.

THE PLAINTIFF,

By: /s/ Stuart G. Blackburn
Stuart G. Blackburn, Esq.
Law Offices of Stuart G. Blackburn
Two Concorde Way
P.O. Box 608
Windsor Locks, CT 06096
Tel. 860-292-1116
Fax 860-292-1221
BBO# 549797

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------X
FIREMAN'S FUND INSURANCE  COMPANY
as subrogee of JULIA PAVIA                              CIVIL ACTION NO.
                                                        05-10827 (DPW)

                         Plaintiff,

          vs

FALCO CONSTRUCTION CORP.;
P & D BUILDERS, INC.;
and
MICHAEL CARRESI d/b/a CARRESI
PLUMBING & HEATING

                                                        JUNE 6, 2007

                         Defendants.
-------------------------------------------------------------X

## O R D E R

The foregoing Plaintiff's Objection to Defendant Falco Construction's

Motion *in Limine* to Exclude Evidence of Negligence by the Plaintiff

having been heard by this court, it is hereby so ordered:

### *GRANTED/DENIED*

*By the Court,*

_____

*J/Clerk*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

## CERTIFICATE OF SERVICE

--------------------------------------------------------------X

FIREMAN'S FUND INSURANCE  COMPANY
as subrogee of JULIA PAVIA                    CIVIL ACTION NO.
77 San Marin Drive                            05-10827 (DPW)
Novado, California

                      Plaintiff,

      vs

FALCO CONSTRUCTION CORP.;
P & D BUILDERS, INC.;
and
MICHAEL CARRESI d/b/a CARRESI
PLUMBING & HEATING                            June 6, 2007

                    Defendants.

--------------------------------------------------------------X

I hereby certify that on **June 6, 2007** a copy of the foregoing **Plaintiff's Objection to Defendant Falco Construction's Motion *in Limine* To Exclude Evidence of Negligence** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                    /s/ Stuart G. Blackburn
                    Stuart G. Blackburn (BBO# 549797)
                    Law Offices of Stuart G. Blackburn
                    Two Concorde Way
                    P.O. Box 608
                    Windsor Locks, CT 06096
                    (860) 292-1116
                    (860) 292-1221 facsimile
                    sgblackburn@sbcglobal.net

# EXHIBIT A

Page 1

VOL. I
PAGES 1-92
EXHIBITS 1-6

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

C.A. NO.:  05-CV-10827-DPW

* * * * * * * * * * * * * * * *
THE FIREMAN'S FUND INSURANCE
COMPANY AS SUBROGEE OF JULIA PAVIA
77 SAN MARIN DRIVE NOVADO, CALIFORNIA,
    PLAINTIFF,

VS

FALCO  CONSTRUCTION CORP.,
P&D BUILDERS, INC. AND
MICHAEL CARRESI D/B/A
CARRESI PLUMBING & HEATING,
        DEFENDANTS.
* * * * * * * * * * * * * *

        DEPOSITION OF GENEVIEVE BURES, taken

on behalf of the Defendant, Falco Construction

Corp., pursuant to the applicable provisions of

the Massachusetts Rules of Civil Procedure,

before Bernadette J. D'Alelio, Notary Public

and Court Reporter within and for the

Commonwealth of Massachusetts, at the Offices

of Toomey & Yudysky, 99 Summer Street, Boston,

Massachusetts, on March 22, 2007,

at 10:07 a.m., as follows:

COPY

Page 10

1      Q.    What certification?

2      A.    My certification as a fire

3   investigator through the International

4   Association of Arson Investigators.

5      Q.    Is that the CFI designation?

6      A.    Correct.

7      Q.    What process did you have to go

8   through to become a CFI?

9      A.    Back when I did it originally are you

10   speaking about?

11      Q.    When you originally joined that

12   organization and received that designation.

13      A.    Actually, I joined the organization

14   years before I became a certified fire

15   investigator.  The process is very long.  They

16   send you out an SOP which looks like the

17   Hartford Connecticut phone book.  You must

18   provide them with documentation going back to a

19   copy of your high school diploma.  Every class

20   that you've attended in fire investigation,

21   every deposition or trial testimony, five years

22   of experience, articles written, classes

23   taught.  You must show them and provide proof

24   to them that you had so many years of

1    kind of thing.  I still teach it.  I had a

2    class scheduled for last week but had an

3    emergency gall bladder operation so class got

4    scrubbed.

5        Q.   One of the classes you teach is on

6    fireplace construction?

7        A.   Yes.

8        Q.   What aspects of fireplace construction

9    are covered in your class?

10       A.   The class actually has to do with

11   fireplaces, chimneys, prefabricated fireplaces,

12   prefabricated chimneys.  Any appliance that

13   burns solid fuel including furnaces.  Solid

14   fuel being coal or wood.

15       Q.   Are the classes that you teach

16   attended by law enforcement personnel?

17       A.   They are.  Building inspectors, fire

18   investigators, competitors.

19       Q.   Your competitors?

20       A.   Absolutely.

21       Q.   And what topics are covered in your

22   class on solid fuel burning appliances?

23       A.   I think I went through it.  It is

24   fireplaces, masonry and prefabricated.  Masonry

Page 15

1    A.    I taught several.  I taught in 40 of

2    the 48 contiguous states.  I keep hoping

3    somebody is going to ask me to go to Hawaii,

4    but I haven't gotten an invitation yet.

5    Q.    What classes do you teach in

6    Massachusetts?

7    A.    The same class.

8    Q.    Was that class taught to building

9    inspectors?

10    A.    No.  I think I did it here for the

11    International Association of Arson

12    Investigators.

13    Q.    Would you briefly describe your

14    educational background?

15    A.    I have a degree in fire science from

16    Capital University in Columbus, Ohio.  I've had

17    no post-graduate work.

18    Q.    And your consulting firm, is that work

19    primarily for lawyers involved in litigation?

20    A.    Thank God, no.

21    Q.    What percentage of your business as a

22    consultant is for lawyers involved in

23    litigation?

24    A.    A very small part.  I wouldn't know

Page 24

1    Q.    Where was that business located?

2    A.    In Cleveland.

3    Q.    Is chimney sweeping a licensed trade

4    in Ohio?

5    A.    Unfortunately it isn't but it should

6    be.

7    Q.    For what period of time did you

8    operate the chimney sweeping business?

9    A.    I came back to Cleveland and I started

10   in March of 1980, but at the same time I was

11   attending classes at the Ohio Fire Academy.  So

12   by 1982 I had sold the chimney sweeping

13   business and I was just doing fire

14   investigation.

15   Q.    What was the name of the business that

16   you were working in 1982 as a fire

17   investigator?

18   A.    It was called Bures Consultant.

19   Q.    And the fire investigations that you

20   were doing for Bures Consultants, were those

21   cause and origin investigations for insurance

22   companies?

23   A.    Yes.

24   Q.    Your CV indicates that you also had a

Page 35

1    sounds cruel, but you asked the question.

2    There was nothing that in any way, shape, or

3    form would have met one guideline.

4        Q.   What guideline were you using?

5        A.   I used the minimum which is national

6    fire codes.

7        Q.   Did you consult or review the

8    Massachusetts building code in your

9    investigation?

10       A.   I did not.

11       Q.   Do you know whether the MFPA standards

12   have been adopted in Massachusetts?

13       A.   If Massachusetts has fire departments,

14   then they've adopted MFPA.

15       Q.   Do you know whether there are any

16   differences between the MFPA standards and the

17   Massachusetts building code?

18       A.   Quite possibly there are.  I know

19   there are differences in Ohio.  MFPA are the

20   minimum.

21       Q.   According to your investigation, the

22   fireplace did not meet the minimum requirements

23   of MFPA standards?

24       A.   It also did not meet the minimum

Page 38

1    Q.    How was it deficient?

2    A.    The code is very specific about the

3    materials that the fireplace is made of and the

4    clearance requirements between those materials

5    and combustibles and the surround was touching

6    the red bricks.

7    Q.    Would somebody have to perform some

8    framing work to separate the wooden surround

9    from the red brick for the fireplace?

10    A.    Actually, the red brick was wrong.  We

11    would have to start at ground zero to make

12    connections on that, that pseudo fireplace.

13    Q.    What was wrong with the red brick?

14    A.    You can't use that inside a

15    fireplace.  You have to use fire brick.  I

16    suppose I should correct that.  You could use

17    red brick if you wanted to make the jams and

18    the back wall 12 inches thick, a solid masonry

19    with no combustibles surrounding it.  You

20    wouldn't necessarily have to use fire brick,

21    but you would have to meet those minimum

22    requirements.

23    Q.    If the fireplace was to be built

24    correctly, would the masonry portion of the

1    fireplace have to start in the basement of the

2    property and extend up through the first floor

3    and the second floor to the office where the

4    fireplace was?

5        A.    The minimum code is very clear as far

6    as foundations for masonry fireplaces.  You are

7    exactly right, it doesn't start at the floor.

8        Q.    Where would it have to start?

9        A.    It should start at the foundation.  In

10   fact, fireplaces should have its own foundation

11   and not be tied into the foundation of the

12   structure.

13       Q.    So that if the fireplace was to be

14   constructed properly, a self-supporting

15   structure starting at the foundation would have

16   had to have been built?

17       A.    Correct.

18       Q.    And that foundation would have been

19   extended through the first floor of the

20   building up to the second floor where the

21   fireplace was built?

22       A.    That's correct.

23       Q.    If the fireplace was to be built

24   properly, would a masonry chimney have to be

# EXHIBIT B

UNITED STATES DISTRICT COURT
District of Massachusetts

No. 05-CV-10827-DPW

The Fireman's Fund Insurance
Company, as subrogee of Julie
Pavia, 777 San Marin Drive, Novato,
California,
            Plaintiff

        vs.

Falco Construction Corp., P. & D.
Builders, Inc., and Michael Carresi,
d/b/a Carresi Plumbing & Heating,
            Defendants

        vs.

Heatmaster, Inc.,
            Third-Party Defendant

        **DEPOSITION OF JULIE A. PAVIA,** a witness
called on behalf of the Defendant Falco Construction
Corp., pursuant to the Federal Rules of Civil
Procedure, before Jessica L. Bisaillon, a Registered
Professional Reporter, Certified Shorthand Reporter,
and Notary Public in and for the Commonwealth of
Massachusetts, at the offices of Morrison Mahoney,
LLP, 250 Summer Street, Boston, Massachusetts
02210, on Thursday, February 16, 2006, commencing
at 11:30 a.m.

DUNN & GOUDREAU COURT REPORTING SERVICE, INC.
One State Street, Suite 1150
Boston, Massachusetts 02109
(617) 742-6900

1            on-site when Mr. Falco began his work?

2    A.    Yes.

3    Q.    It was?

4    A.    Yes.

5    Q.    And how do you know that?

6    A.    Because I brought them back from a trip to visit

7            my brother in North Carolina.

8    Q.    Where did you store them?

9    A.    The one for the office was right next to where

10            the fireplace was going to be.

11    Q.    How was the fireplace stored?  Was it in the box?

12    A.    Yes.

13    Q.    Who brought the box up to the office?

14    A.    Charles Gubbins.

15    Q.    Do you know whether the construction of the

16            fireplace had begun prior to Mr. Gubbins bringing

17            the gas unit up to the office?

18    A.    No, it had not.

19    Q.    Was there a fireplace in your bedroom that you

20            intended to have the gas log unit installed into?

21    A.    Yes.

22    Q.    That was an existing fireplace?

23    A.    Yes.  But as I stated before, that I did not know

24            that code said you cannot have gas logs in

```
 1        where the fireplace was going so that he could

 2        open it up and read the instruction manual.

 3   Q.   Well, did you ever tell Mr. Falco that a gas log

 4        unit was going to go in that fireplace?

 5   A.   Yes.  And I know that Phil Rothschild did too.

 6   Q.   You told Mr. Falco that information?

 7   A.   I sad the gas logs that are going in there are

 8        sitting next to you in that box there.

 9   Q.   When did this conversation take place?

10   A.   Before he was finishing construction on the job.

11        Before he was starting construction on the job.

12   Q.   Who else was present for that conversation with

13        Mr. Falco?

14   A.   I'm not sure anybody else was in the room.  That

15        may have been one of my wanderings through the

16        office.

17   Q.   And this conversation occurred before Mr. Falco

18        started his work on the fireplace?

19   A.   Yes.

20   Q.   And do you recall whether Mr. Carresi had been to

21        the property to do his work on the fireplace

22        before you had the conversation with Mr. Falco?

23   A.   No, I don't recall that.  I know that he was in

24        and out of that place constantly, because there
```

# EXHIBIT C

**PHILLIP ROTHSCHILD**
**March 30, 2006**



Page 1

```
 1              UNITED STATES DISTRICT COURT

 2            FOR THE DISTRICT OF MASSACHUSETTS

 3

 4

 5

 6

 7   *********************************

 8   THE FIREMAN'S FUND INSURANCE

 9   COMPANY as subrogee of JULIA PAVIA,

10              Plaintiff

11   vs.

12   FALCO CONSTRUCTION CORP., P&DK

13   BUILDERS, INC. and MICHAEL

14   CARRESI d/b/a CARRESI PLUMBING &

15   HEATING,                C.A. 05-10827DPW

16              Defendants

17   vs.

18   HEATMASTER, INC.,

19              Third-party Defendant

20   *********************************

21

22

23

24
```

**PHILLIP ROTHSCHILD**
**March 30, 2006**

Page 98

1  the master bedroom, that never got done?

2       A Right.

3       Q Was the gas fireplace log

4  assembly on site when Mr. Falco was building

5  the fireplace?

6       A I think it came right after he

7  started.

8       Q How long did it take him to

9  build the fireplace?

10      A I think four or five days, I

11  think.

12      Q And who was it that showed him

13  where the fireplace was supposed to go?

14      A Mrs. Pavia.

15      Q Were you there?

16      A No, I don't think I was there

17  the day she showed him.

18      Q Before that had you and Mrs.

19  Pavia discussed where the fireplace was going

20  to go?

21      A She said she would like to --

22  no, she would like to either -- well, yes, we

23  did; this corner or that corner.  I said,

24  well, you got to make up your mind and tell

**PHILLIP ROTHSCHILD**
**March 30, 2006**

Page 107

1    A The two of them.

2    Q Who's the two?

3    A Mike Carresi and Mrs. Pavia.

4    Q Mike Carresi and Julia Pavia

5    were talking about what?

6    A Talking about the way the

7    fireplace had to be built off of her sketch.

8    They were discussing how they were going to

9    do it.

10    Q And that discussion included the

11    fact that there was going to be a gas log

12    insert put in there?

13    A Yes.

14    Q Mr. Falco was present for that?

15    A Yes.

16    Q Did that discussion include any

17    conversation between Mrs. Pavia, Mr. Carresi

18    or Mr. Falco about how the fireplace needed

19    to be constructed in order to accommodate

20    that gas log assembly?

21    A I'm not sure because I left

22    probably two or three minutes after that

23    conversation.

24    Q You left and the three of them

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI